1

2

3

4

5

6                       UNITED STATES DISTRICT COURT

7                       EASTERN DISTRICT OF CALIFORNIA

8

MELVIN JONES, JR.,                    )   1:05-CV-0148 OWW DLB
9                                      )
                    Plaintiff,         )   MEMORANDUM OPINION AND ORDER
10                                     )   DISCHARGING ORDER TO SHOW
     v.                                )   CAUSE RE DISMISSAL (DOC. 18);
11                                     )   GRANTING DEFENDANTS TOZZI and
MICHAEL A. TOZZI et al.,               )   HOLLENBACK'S MOTION TO
12                                     )   DISMISS (DOC. 8); DENYING
                    Defendants.        )   PLAINTIFF'S MOTION FOR
13                                     )   DEFAULT JUDGMENT (DOC. 14);
                                       )   AND DENYING PLAINTIFF'S
14 _____ )   MOTION TO AMEND THE COMPLAINT
                                       )   (DOC. 16)
15

16                          I.   __INTRODUCTION__

17        This case, one of __four__ filed in this court by Plaintiff

18 Melvin Jones regarding his family law case in state court,[1] was

19 transferred to this court on March 16, 2005, as a related case.

20 *See* Doc. 15, filed March 21, 2005.  On March 29, 2005, Plaintiff

21 was ordered to show cause why this case should not be dismissed.

22 Also before the court are Defendants Tozzi and Silveria's motion

23 to dismiss the complaint (Doc. 8, filed Mar. 9, 2005);

24 _____

25        [1]    *Jones v. State of California,* 1:04-cv-6566, was
   voluntarily dismissed by Plaintiff on February 28, 2005; *Jones v.*
26 *Strangio*, 1:04-cv-6567, was dismissed with prejudice on March 16,
   2005; *Jones v. Strangio*, 1:05-cv-00410, was also dismissed with
27 prejudice on April 20, 2005.  Neither of the latter two cases
   stated claims cognizable in federal court.
28

                                    1

1   Plaintiff's motion for default judgment as to Defendants

2   Hollenback and Jensen (Doc. 14, filed Mar. 14, 2005); and

3   Plaintiff's motion file a second amended complaint (Docs. 16 & 19

4   and Plaintiff's proposed second amended complaint lodged Apr. 20,

5   2005).

6

7                   **II.   PROCEDURAL HISTORY**

8        Plaintiff filed his initial complaint on February 3, 2005.

9   Doc. 1.  Then, prior to the filing of any responsive pleading by

10  Defendant, Plaintiff filed a first amended complaint on March 3,

11  2005.  Doc. 7.  The first amended complaint names as defendants:

12  Michael A. Tozzi, the Executive Officer of Stanislaus County

13  Superior Court; Superior Court Judge Marie Sovey-Silveria; and

14  attorneys Leslie Jensen and John Holenback.  The amended

15  complaint generally alleges that (1) Defendants' conduct in

16  connection with his family law dispute in state court violated

17  Plaintiff's constitutional and statutory rights in violation of

18  42 U.S.C. § 1983 and (2) Defendants conspired together to violate

19  Plaintiff's constitutional and statutory rights, in violation of

20  42 U.S.C. § 1985 and § 1986.  *Id.*  To summarize, the complaint

21  makes the following allegations:

22  (1)  There existed potential conflicts of interest between

23       several of the Defendants.  The failure of Defendants to

24       disclose these conflicts violated Plaintiff's Fourteenth

25       Amendment Rights.  *Id.* at ¶15.

26  (2)  Defendants' conduct throughout the family law proceedings

27       violated various provisions of the California Rules of

28       Court, State Bar Ethical Standards, and provisions of the

                                  **2**

1  California Code of Civil Procedure.  As a result,

2  Plaintiff's Fourteenth Amendment Rights were violated.  *Id*.

3  at ¶¶ 16-33.

4  (3)  Defendants conspired to violate Plaintiff's civil rights.

5  Specifically, Plaintiff alleges that Defendant Silveria

6  interrupted a proceeding in the family matter before Judge

7  Jack Jacobsen and used non-verbal gestures and conduct that

8  were "sensed and observed by Plaintiff to be harassment,

9  reprisal [and] retaliatory in furtherance of conspiracy."

10 Similarly, Plaintiff alleges that Michael Tozzi's issuance

11 of a declaration in support of Mediator Don Strangio

12 [presumably one of the declarations submitted to this court

13 in a related lawsuit] was also in "furtherance of the

14 conspiracy."  *Id*. at ¶¶ 33-34.

15 (4)  Plaintiff demands judgment in the amount of $1,600,000 in

16 damages and $4,100,000 in punitive damages.

17

18 Defendants Tozzi and Silveria moved to dismiss this

19 complaint on March 9, 2005.[2]  Doc. 8.  Plaintiff opposed this

20 motion, Doc. 13, filed Mar. 14, 2005, and moved for default

21 judgment against defendants Jensen and Hollenback.  Doc. 14,

22 filed Mar. 14, 2005.  Plaintiff then (improperly) filed an

23 additional "counter motion" in opposition to Defendants Tozzi and

24 Silveria's motion to dismiss, along with a motion to amend the

25 _____

26        [2]    On April 20, 2005, Defendants Jensen and Hollenback
filed a motion to join the motion to dismiss filed by Defendants
27 Tozzi and Sovey-Silveria.  Docs. 25, 26 & 27.  Their motion was
not set for hearing, however, because it was improperly noticed.
28 See Doc. 30, filed April 20, 2005.

**3**

complaint a second time.  Doc. 16, filed Mar. 24, 2005.  This motion to amend is still pending.  Four days later, on March 28, 2005, Plaintiff lodged yet another "second amended complaint" to "supercede" the second amended complaint that was attached to his motion for leave to amend.  Doc. 19, filed Mar. 28, 2005.

On March 18, 2005, the district court issued an order dismissing Plaintiffs related case, *Jones v. Strangio*.  *See* Doc. 72, 1:04-cv-06567.  In light of that dismissal, the district court ordered Plaintiff to show cause why <u>this</u> case should not be dismissed as well.  Doc. 18, filed Mar. 29, 2005.  Plaintiff responded to the order to show cause on April 20, 2005.  Doc. 29. At the same time, Plaintiff filed *yet another proposed amended complaint* intended to supercede the complaint lodged on March 24, 2005.  *See* Proposed Second Amended Complaint lodged Apr. 20, 2005.  This complaint contains numerous new allegations that Defendants made racially derogatory remarks to plaintiff as part of a conspiracy to violate his constitutional rights in contravention of 42 U.S.C. §§ 1981, 1985, and 1986.

Plaintiff bases his response to the order to show cause almost entirely on the new factual and legal allegations contained within this proposed second amended complaint.  *See* Doc. 29, at 1.  Plaintiff asserts that:

> Dismissal of [this] case at the pleading stage would give rise to further violation(s) of Plaintiff's Civil and Constitutional rights, would foreclose justice to Plaintiff; and in the case of defaulted defendants' Jensen, and Hollenback, this Court would be acting as their de facto attorney, and would give defendants who have lost their voice a de facto new opportunity to speak - as such Plaintiff objects.  Both said defendants have failed to answer, and plead their innocence.

*Id*.  Plaintiff's veiled threats against the court will not be

**4**

1  countenanced.  He has shown a pattern of suing every attorney,

2  judge, and quasi-judicial officer who has had any contact with

3  his case.

### III.   __FACTUAL BACKGROUND__

### A.   The Child Custody Dispute

6      This case arises out of a child custody dispute between

7  Plaintiff and Kea Chhay, the mother of Plaintiff's minor child.

8  Although the record contains limited information about the

9  underlying family law case, it appears to have first been filed

10  in Santa Clara Superior Court.  During a hearing held on November

11  15, 2001, the presiding judge in Santa Clara warned Plaintiff

12  that he would be declared a vexatious litigant if he filed

13  additional motions in that case.  The case was subsequently

14  transferred to Stanislaus County

15      Don Strangio, formerly a defendant in *Jones v. Strangio*,

16  1:04-CV-06567, and *Jones v. Strangio*, 1:05-CV-00410, is a

17  licensed psychologist and marriage and family therapist in the

18  state of California.  Strangio was appointed, as required by law,

19  by the court to mediate the dispute between Plaintiff and Chhay.

20  During the initial mediation session, held July 9, 2002,

21  Plaintiff requested a private child custody evaluation.  Three

22  potential evaluators, including Steven Carmichael, also formerly

23  a defendant in the *Jones v. Strangio* cases, were identified to

24  the parties.  Of the three, only Carmichael was agreeable to both

25  parties at the initial mediation.  The state court then issued an

26  order referring the parties to Carmichael, who was appointed to

27  conduct for a private custody evaluation.

28

**5**

**B.    The Alleged Conflict of Interest**

It is not disputed that Carmichael rents office space, along with a number of other mental health professionals, in a building in which Dr. Strangio has a partial ownership interest. Carmichael and Strangio, with several other professionals, share this office space, a common telephone number, and support staff. Outside the common office is a sign that reads "Psychological Associates."  Their practices are independent; there is no co-mingling of any business-related accounts; they do not file joint tax returns; Carmichael has no ownership interest in the building; and the income Strangio realizes from his private practice is in no way affected by the income Carmichael earns from his own practice.

Leslie Jensen served as Ms. Chhay's attorney in the family law case.  Plaintiff alleges that Dr. Strangio counseled Jensen on at least one occasion regarding personal matters.

Plaintiff apparently raised some or all of his conflict of interest objections with the state court.  In response to a letter sent by Plaintiff on May 12, 2003, Defendant Michael A. Tozzi, the Executive Officer of the Stanislaus Superior Court, wrote:

> It is common for mental health professionals in this community to rent communal office space and share overhead expenses/ phone numbers/ and addresses. Psychological Associates [is] in an office with ten professionals including Dr. Carmichael and Dr. Strangio.  However, their practices are independent from each other.  They do not benefit from the work that the other does.  The Court has no concern about a potential conflict of interest in the situation you question, nor any other referral by Dr. Strangio.

When the Court refers a case for private child custody evaluation, the list of qualified evaluators is limited to those licensed mental health professionals who have the specific training required by law.... That list currently consists of approximately five psychologists, Licensed Clinical Social Workers, and Marriage and Family Therapists in addition to the ten independent contract mediators.  Dr. Carmichael is one of those five who are not associated with the court.

Dr. Strangio and Dr. Carmichael are publicly listed in the phone book and had you accepted the referral for Dr. Carmichael to perform the child custody evaluation as ordered on October 8, 2002, you would have likely observed both in the office.  There is no attempt to hide this relationship.

I trust that this resolves the questions you had.

Doc. 1, Ex. C.

## IV.   **LEGAL ANALYSIS**

### A.   **Defendants Tozzi and Silveria's Motion to Dismiss**

#### 1.   **Standard of Review for a Motion to Dismiss**

In deciding whether to grant a motion to dismiss, a court must "take all of the allegations of material fact stated in the complaint as true and construe them in the light most favorable to the nonmoving party."  *Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  In general, "a *pro se* complaint will be liberally construed and will be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).  However, "a liberal interpretation of a [pro se] complaint may not supply essential elements of the claim that were not initially pled."  *Id.*

#### 2.   **Plaintiff's Procedural Due Process Claims Fail as a Matter of Law**

At the outset, it appears that Plaintiff has attempted to set forth procedural due process claims that are strikingly

**7**

similar to those alleged and dismissed in his previous lawsuits.
For example, Plaintiff again alleges that a conflict of interest
existed between Don Strangio and Steven Carmichael, the mediator
and custody evaluator, respectively, in Plaintiff's family law
case.  Plaintiff also re-alleges the existence of a conflict
between Defendant Jensen and Strangio.  As the district court
explained in *Jones v. Strangio*:

> In the context of Plaintiff's factual allegations, it
> appears that he is essentially arguing that Defendants'
> alleged conflict of interest (and Defendants' failure
> to disclose these alleged conflicts) amounts to a
> violation of his procedural due process rights under
> the United States Constitution.
> ***
> To state such a claim, plaintiff must demonstrate that
> no "meaningful postdeprivation remedy" is available
> under state law.  *See Hudson v. Palmer*, 468 U.S. 517,
> 531 (1984) (holding a claim under § 1983 for
> deprivation of property without due process invalid
> absent a showing that no meaningful postdeprivation
> remedy was available).  In California, appellate and
> post-judgment tort remedies can provide a meaningful
> remedy for the violations alleged in Plaintiff's
> complaint.  *See* Cal. Gov't Code § 900.  Plaintiff's
> complaint contains no allegation he has pursued any
> state judicial review of those claims or why such
> remedies would be inadequate.

*Jones v. Strangio*, 1:04-CV-6567, Doc. 72 at 28-29.  Plaintiff has
again failed to state a procedural due process claim.  He has
utterly failed to plead any facts that suggest he exhausted his
state remedies.  As such, his procedural due process claims, if
any are stated, are **DISMISSED** for failure to state a claim.

//

//

//

//

//

//

### B.   Domestic Relations Exception[3]

The domestic relations exception is a judicially created doctrine that "divests the federal courts of power to issue divorce, alimony and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  In the Ninth Circuit, district courts <u>must</u> refuse jurisdiction if the primary issue concerns child custody issues or the status of parent and child or husband and wife.  *See Coats v. Woods*, 819 F.2d 236 (9th Cir. 1987); *Csibi v. Fustos*, 670 F.2d 134, 136-37 (9th Cir. 1982).

The <u>Coats</u> case is most directly on point.  In a series of complaints filed in federal court, the plaintiff in Coats named as defendants her former husband, his new wife, their attorney, the court-appointed attorney for their two children, a court-appointed psychologist, two court commissioners, two Superior Court judges, the Orange County Superior Court, the County of Orange Costa Mesa Police Department, the Newport-Mesa School District, and an organization called United Fathers.  819 F.2d at 236-37.  Coates sued these individuals under 42 U.S.C. § 1983, alleging that defendants wrongfully deprived her of the custody of her two children.  The district court abstained from hearing the cases on the ground that "the actions, involving

---

[3]   Defendants in this action also argue that the Rooker-Feldman doctrine precludes jurisdiction in this case.  As explained in orders issued in Plaintiff's related cases, *Rooker-Feldman* bars a district court from hearing "challenges to state court decisions in particular cases arising out of judicial proceedings" or deciding questions "inextricably intertwined" with state court proceedings.  *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).  Whether, under the specific facts alleged in this case, Rooker-Feldman operates as a bar to this court's jurisdiction is a close question.  As the claims against Defendants Tozzi and Silveria are easily dismissed on other grounds, Rooker-Feldman will not be discussed herein.

child custody, implicated domestic relations issues,
traditionally an area of state concern." *Id*.  The Ninth Circuit
affirmed, approving the district court's reliance "on the
abstention doctrine under which federal courts traditionally
decline to exercise jurisdiction in domestic relations cases when
the core issue involves the status of parent and child or husband
and wife."  The Ninth Circuit went on to reason that:

> This case, while raising constitutional issues, is at
> its core a child custody dispute....If the
> constitutional claims in the case have independent
> merit, the state courts are competent to hear them.
> Given the state courts' strong interest in domestic
> relations, we do not consider that the district court
> abused its discretion when it invoked the doctrine of
> abstention.

Id. at 237.

     The issue presented is whether plaitniff's new allegations,
all arising from his child custody dispute in state court, change
the nature of the case to one that is not at its core a child
custody dispute.  Reading Plaintiff's pro se complaint liberally,
Plaintiff arguably alleges that Defendants violated his
substantive due process rights:  "The Supreme Court has long
protected, under substantive due process principles, the
integrity of the family unit and the right of parents to raise
their children." *Abebe v. Ashcroft*, 379 F.3d 755, 763 (9th Cir.
2004)(citing *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)).
However, if any such claim is contained in any of the filed or
lodged versions of Plaintiff's complaints, a district court would
be barred from hearing such a claim by the domestic relations
exception because, in Plaintiff's case, it directly concerns
child custody issues.  Plaintiff's substantive due process

**10**

claims, if any are stated, are **DISMISSED** for lack of jurisdiction under the domestic relations exception.

The only possible remaining § 1983 claim is an equal protection claim that Defendants impeded Plaintiff's access to the judicial system because of Plaintiff's race.  Plaintiff also attempts to allege that Defendants conspired to violate his equal protection rights in contravention of 42 U.S.C. §§ 1985 and 1986. Such claims would not be barred by the domestic relations exception, as they concern Plaintiff's access to the judicial system, rather than the subject matter of the underlying family law dispute.  As explained below, however, Plaintiff's § 1983 claims based on equal protection and his claims under §§ 1985 and 1986 against Defendants Tozzi and Silveria must be dismissed on other grounds.

   C.   **Absolute Immunity**[4]

      1.   **Absolute Judicial Immunity of Judge Silveria**

The federal courts have long recognized the doctrine of judicial immunity, a "comparatively sweeping form of immunity" for acts performed by judges related to the "judicial process." *Forrester v. White,* 484 U.S. 219, 225 (1988).  This immunity is "absolute" and operates to protect judges against civil claims, even if it is alleged that such action was "driven by malicious or corrupt motives."  *In re Castillo,* 297 F.3d 940, 947 (9th Cir.

_____

   [4]   Defendants Tozzi and Silveria also argue that the Eleventh Amendment shields them from liability in official capacity claims brought under § 1983.  Plaintiff appears to concede this and emphasizes that his claims are also brought against Tozzi and Silveria in their individual capacities.

**11**

2002); see also *Forrester,* 484 U.S. at 227-28.  Plaintiffs complaint alleges that Judge Silveria was motivated by such a "malicious or corrupt motive" -- racial bias.  Even assuming all of Plaintiff's sweeping, conclusory (and somewhat implausible) allegations to be true, Judge Silveria is still immune because she was acting in connection with the judicial process.

### 2.    Absolute Quasi-Judicial Immunity of Defendant Tozzi.

As established in parallel proceedings, "[a]bsolute judicial immunity is not reserved solely for judges, but extends to nonjudicial officers for all claims relating to the exercise of judicial functions."  *Castillo*, 297 F.3d at 947 (citing *Burns v. Reed,* 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part)).  The United States Supreme Court is "quite sparing in [its] recognition of absolute immunity, and [has] refused to extend it any further than its justification would warrant."  *Antoine v. Byers & Anderson,* 508 U.S. 429, 433 n.4 (1993).  Nevertheless, the "traditional common-law protections extended to the judicial process," remain protected. *Forrester,* 484 U.S. at 225.  For example, quasi-judicial immunity has been extended to:

> military and naval officers in exercising their authority to order courts-martial .... to grand and petit jurors in the discharge of their duties as such; to assessors upon whom is imposed the duty of valuing property for the purpose of a levy of taxes; to commissioners appointed to appraise damages when property is taken under the right of eminent domain; to officers empowered to lay out, alter, and discontinue highways; to highway officers in deciding that a person claiming exemption from a road tax is not in fact exempt, or that one arrested is in default for not having worked out the assessment; to members of a township board in deciding upon the allowance of claims; to arbitrators, and to the collector of customs in exercising his authority to sell perishable property, and in fixing upon the time for notice of sale.

*Burns,* 500 U.S. at 499-500 (emphasis added).  Quasi-judicial immunity has been extended to "non jurists who perform functions closely associated with the judicial process." *Castillo*, 297 F.3d at 948 (citing *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985)).

To determine whether a particular non-judicial officer is entitled to quasi-judicial immunity, a court must "look to the nature of the function performed and not just the identity of the actor performing it." *Castillo*, 297 F.3d at 949.  Specifically, a court must first "inquire as to the immunity historically accorded [that official] at common law, during the development of the common-law doctrine of judicial immunity."  Id. (citing Antoine, 508 U.S. at 437).  The court must then "consider whether the particular functions of the [official] at issue in the case were functions involving the exercise of discretionary judgment." *Id.*  The Supreme Court has granted this form of immunity to certain individuals who have a sufficiently close nexus to the adjudicative process, including:

> (1) prosecutors, when initiating a prosecution and presenting the state's case, (2) prosecutors, when taking acts and making decisions in preparation for the initiation of a prosecution or trial, (3) administrative law judges and agency hearing officers, when performing adjudicative functions within a federal agency, (4) agency officials, when performing functions analogous to those of a prosecutor, (5) agency attorneys, in arranging for the presentation of evidence in the course of an administrative adjudication, and (6) *individuals, when acting within the scope of their duties, who participate in the judicial process*, such as grand jurors, petit jurors, advocates, and witnesses.

*Castillo*, 297 F.3d at 948 (internal citations omitted).

13

Here, Tozzi, as court executive officer, allegedly sent a letter to Plaintiff addressing Plaintiffs concern that a conflict of interest might exist between Don Strangio and Steven Carmichael.  Tozzi determined that no such conflict existed and informed Plaintiff of this determination.  *See* Doc. 1, Ex. C. Tozzi was participating in the judicial process when he made the determination and sent Plaintiff correspondence on the subject. He is entitled to absolute immunity for the acts alleged.

### D.   Motion for Default Judgment

Plaintiff filed his initial complaint on February 3, 2005. According to the Proof of service, Defendant Hollenback was personally served on February 15, 2005, making his answer due March 7, 2005, while Defendant Jensen was personally served on February 17, 2005, with her answer due on March 9, 2005.  *See Docs*. 10 and 11, filed Mar. 14, 2005.  Having received no responsive pleading, Plaintiff moved for default judgment on March 14, 2005 and set a hearing on the motion for April 11, 2005.  Plaintiff did not, however, request that the clerk enter default against Defendants.  On April 5, 2005, Defendants Jensen and Hollenback filed a joint motion to dismiss the complaint. Doc. 20.  On April 28, 2005, Jensen and Hollenback filed an opposition to Plaintiff's motion for default judgment.  Doc. 38.

Plaintiff's motion for default judgment must be denied. Prior to moving for default judgment, a plaintiff must first request that the clerk enter default against a defendant.  *See* Fed. R. Civ. P. 55(a).  Only after the entry of default by the clerk may the court issue default judgment.  No default was entered.

**14**

**E.   Motion to Amend the Complaint**

Plaintiff has established a pattern of filing multiple complaints without leave to amend and without providing justification for the amendment.   Federal Rule of Civil Procedure 15(a) provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Under Rule 15(a), Plaintiff's first amended complaint is properly part of the record because it was filed prior to the filing of a responsive document by any Defendant.   However, Plaintiffs' proposed second amended complaint lodged on March 24, 2005, and the several proposed second amended complaints lodged thereafter are not yet part of the record.   Plaintiff moved for leave to amend on March 24, 2005.   Doc. 16.   Thereafter, Plaintiff lodged several superceding complaints, the most recent of which was lodged on April 20, 2005.

A district court shall grant leave to amend freely "when justice so requires."   However, the Ninth Circuit has outlined four reasons why a Court may refuse to grant leave to amend: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party.   *Forsyth v. Humana, Inc.*, 114 F.3d 1467 (9th Cir. 1997).

//

//

**15**

### 1.   Standard of Review When Determining Futility

A complaint may be deemed futile if it would fail to state a claim under Federal Rule of Civil Procedure, Rule 12(b)(6). *Miller v. Rykoff-Sexton*, Inc., 845 F.2d 209, 214 (9th Cir. 1988). As with a motion to dismiss, a court determining the futility of the proposed amendment must construe all pleaded facts in the complaint as true and must draw all inferences in favor of the plaintiff.

### 2.   Claims Brought Under 42 U.S.C. § 1983

Plaintiff's proposed amended complaint does not mention § 1983, but to the extent that such a claim can be implied from the facts as alleged, such claims would be futile with respect to Defendants Jensen and Hollenback.  Section 1983 applies only to individuals acting under color of state law.  Jensen and Hollenback are private individuals, not state actors, and therefore cannot be liable under § 1983.

### 3.   Claims Brought Under 42 U.S.C. § 1985 and § 1986

Section 1985 prohibits several forms of conspiracies to deprive individuals of the rights and privileges held by a citizen of the United States.  Sub-sections 1985(1) and 1985(2), which deal with conspiracies to impede federal officials in the performance of their duties and conspiracies to obstruct justice, do not appear to be applicable on the facts presented.  Section 1985(3), entitled "depriving persons of rights or privileges," may be applicable to the facts as alleged in Plaintiff's proposed second amended complaint.  Section 1985(3) is divided into three

**16**

parts.  The first part prohibits conspiracies to deprive "any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).[5]  The second part prohibits conspiracies to interfere with federal elections, *generally Bretz v. Kelman*, 773 F.2d 1026, 1028 n.3 (9th Cir. 1985), and is not implicated in this case. The third clause provides a cause of action in federal court for the victim of conspiracies prohibited by § 1985(3).

To state a claim under the first part of §1985(3) (conspiracies to deprive an individual of equal protection of the laws or equal privileges and immunities), plaintiff must show "discriminatory animus."  In other words, Plaintiff must allege that the conspiracy was motivated by racial discrimination. *Griffen v. Breckenridge*, 403 U.S. 88, 101-102 (1971); *see also Kush v. Rutledge*, 460 U.S. 719, 725 (1983).  In addition, Plaintiff must allege "(1) a conspiracy, (2) to deprive any person (or class of persons) of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act performed by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or a

---

[5]   The first clause of § 1985(3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws....

**17**

deprivation of any right or privilege of a citizen of the United States." *Griffen,* 403 U.S. at 102-103.

In the Ninth Circuit, conspiracy claims are subject to a heightened pleading standard. To survive a motion to dismiss a conspiracy allegation requires more than a conclusory accusations that Defendants conspired to deprive Plaintiff of his civil rights. In other words, bare allegations that one defendant "conspired" with another are insufficient. *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126-27 (9th Cir. 1989). Rather, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 679 n. 6 (9th Cir.2001) (holding that plaintiffs must allege facts which are "specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity." Plaintiff may meet the heightened pleading standard by alleging "which defendants conspired, how they conspired and now the conspiracy led to a deprivation of his constitutional rights...." *Harris*, 126 F.3d at 1196.

In this case, Plaintiff has failed to meet this burden. First, Plaintiff appears to allege that defendants violated a number of state rules of procedure, ethics rules, and rules of court. Plaintiff asserts that these violations were in

**18**

furtherance of the conspiracy.  But these violations do not

demonstrate a conspiracy motivated by race discrimination as is

required under § 1985.  Plaintiff does allude to race

discrimination in a few factual allegations.  For example,

Plaintiff alleges that:

> On 10/08/2002 – Court was not in session, nor was
> mediation in session.  Plaintiff observed Defendant
> Strangio, and co-conspirator Jensen out-side of dept.
> 13 engaged in conversation. Strangio and Jensen
> confirmed to Plaintiff that they were not discussing
> Plaintiff's family law case, and that there [sic]
> conversation was non-court related.  Defendant
> Strangio, and co-conspirator Jensen made comments of
> which indicate personal animus, and class-based animus,
> and were furtherance of the out of court conspiracy.

Proposed Second Amended Complaint, at ¶19.  In addition,

plaintiff alleges that:

> ...Jensen threatened Plaintiff that he would get his
> black-ass kicked if he continued to make trouble for
> the Court and if Plaintiff continued to [sic] with the
> contempt proceedings; said threat, intimidation, was
> furtherance of the conspiracy.

*Id*. at ¶29.  Although these accusations mention race

discrimination, Plaintiff fails to allege "which defendants

conspired, how they conspired and how the conspiracy led to a

deprivation of his constitutional rights." *Harris*, 126 F.3d at

1196.  He simply alleges that several of the defendants did or

said things that were, in Plaintiff's opinion, racially

derogatory.  Without more, such comments do not amount to a

conspiracy actionable under § 1985(3).

Plaintiff also attempts to state claims under 42 U.S.C.

§ 1986, which provides for recovery of damages against persons

who, having the knowledge and power to do so, fail to prevent the

commission of a conspiracy pursuant to § 1985.  But, Plaintiff

**19**

cannot maintain a claim under § 1986 unless there is also a valid claim under § 1985. *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983); *see also Martinez v. Nygaard,* 644 F. Supp. 715, 730 (D. Or. 1986).

Accordingly, the § 1985 and § 1986 claims stated in plaintiff's proposed amended complaint are futile as currently stated because they fail to state a claim upon which relief may be granted.

### 4.   Claims Brought Under 42 U.S.C. § 1981

Plaintiff's proposed amended complaint also asserts claims under 42 U.S.C. § 1981.  Section 1981 provides:

> (a) Statement of equal rights.
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.  This provision prohibits private individuals as well as state actors from discriminating against an individual on the basis of his or her race with respect to that individual's

**20**

right "to sue, be parties, give evidence, and to the full and equal benefit of all laws..." *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982).  As with claims brought under sections 1985 and 1985, section 1981 claims require proof of intentional race discrimination.

Plaintiff alleges, among other things, that Defendants deprived him of his right to sue, his right to be party to a proceeding, and his right to make and enforce contracts.  As previously discussed few of Plaintiff's allegations do mention race as a motivation.  Unless a specific exception applies (such as the heightened pleading standards applicable to a conspiracy claim), the pleading requirements for a civil rights claim are not difficult to meet.  *See Swierkiewicz v. Sorema*, 534 U.S. 506, 510-511 (2002).  There is no general requirement that the plaintiff plead facts establishing a prima facie case of discrimination.  *Id*.  Plaintiff's proposed second amended complaint arguably states a claim under § 1981 sufficient to survive a motion to dismiss.  However, because Plaintiff's § 1985 claim is futile, Plaintiff will not be permitted to file his lodged proposed second amended complaint.  Plaintiff's motion to amend the complaint is DENIED.

### F.   Defendants Hollenback and Jensen's Pending Motion to Dismiss

Also pending before the court is Defendants Hollenback's and Jensen's motion to dismiss the First Amended Complaint, currently set for hearing on June 6, 2005.  Doc. 32.  This motion will remain on calendar.  Plaintiff may not file any amended complaint until the motion to dismiss has been heard and decided.

**21**

## V.   CONCLUSION

For the reasons set forth above:

(1)   The order to show cause (Doc. 18) is **DISCHARGED.**

(2)   Defendants Tozzi and Silveria's motion to dismiss is **GRANTED** and Defendants Tozzi and Silveria are **DISMISSED AS DEFENDANTS** from this case (Doc. 8).

(3)   Plaintiff's motion for default judgment is **DENIED (Doc. 14).**

(4)   Plaintiff's motion to amend the complaint is **DENIED (Doc. 16).**

(5)   Plaintiff may not file any amended complaint until the pending motion to dismiss **(Doc. 32)** has been heard and decided.


**SO ORDERED.**

Dated: May 11, 2005



                              **/s/ Oliver W. Wanger**

                              **Oliver W. Wanger**
                    **UNITED STATES DISTRICT JUDGE**