**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MELVIN JONES, JR.,** ) | **1:05-CV-0148 OWW DLB** |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION AND ORDER** |
| ) | **RE PLAINTIFF'S MOTION FOR** |
| v. ) | **SUMMARY JUDGMENT (DOC. 104)** |
| ) | |
| **MICHAEL A. TOZZI et al.,** ) | **DEFENDANT'S MOTION FOR LEAVE** |
| ) | **TO LATE-FILE AN OPPOSITION** |
| Defendants. ) | **(DOC. 120) AND PLAINTIFF'S** |
| ) | **MOTION TO STRIKE THAT** |
| ) | **OPPOSITION (DOC. 117)** |
| ) | |
| ) | **PLAINTIFF'S MOTION TO AMEND** |
| _____ ) | **THE COMPLAINT (DOC. 166)** |

### I. INTRODUCTION

Before the court for decision are several related motions: (1) Plaintiff Melvin Jones' Motion for Summary Judgment and related filings (Docs. 104, 106, 108, 112, 115, 132, 148); (2) Defendant John Hollenback's motion to late-file his opposition to the same (Doc. 120); Plaintiff's motion to strike the late-filed opposition (Doc. 117); and Plaintiff's request for leave to file a second amended complaint (Doc. 166). Also pending are numerous motions related to discovery (e.g., protective orders, motions to compel, etc.). Such motions are to be heard and decided by the

**1**

presiding United States Magistrate Judge.[1]

## II. **PROCEDURAL HISTORY**

This case arises out of a child custody dispute between Plaintiff and Kea Chhay, the mother of Plaintiff's minor child. The case was first filed in Santa Clara Superior Court, but was later transferred to Stanislaus County. Additional background concerning the state proceedings is set forth in various memorandum opinions in this case and related cases.[2]

Plaintiff filed his initial complaint on February 3, 2005. (Doc. 1.) Then, prior to the filing of any responsive pleading by Defendant, Plaintiff filed a first amended complaint on March 3, 2005. (Doc. 7.) The first amended complaint named as defendants: Michael A. Tozzi, the Executive Officer of Stanislaus County Superior Court; Superior Court Judge Marie Sovey-Silveria; and attorneys Leslie Jensen and John Holenback.

---

[1] Plaintiff also points out in his "reply to opposition per hearing on 12-12-2005" that various motions and/or filings remain pending in this case. (Doc. 148 at 4.) Many of the filings to which Plaintiff refers are "requests for judicial notice" in which Plaintiff makes legal assertions and quotes at length from various court documents and judicial decisions. (See e.g., Docs. 116, 119, 129.) This is not a proper use of a request for judicial notice, which is generally used to seek admission of documents that are judicially noticeable under Federal Rule of Evidence 201 and contains matters not subject to dispute. Plaintiff's practice of using a request for judicial notice for other purposes confuses the record. It is not necessary for the court to take judicial notice of published judicial decisions or of documents that are part of the record of this case. Plaintiff may simply cite to these sources in his legal papers.

[2] See *Jones v. California*, 1:04-CV-065676; *Jones v. Strangio*, 1:04-CV-06567; and *Jones v. Strangio*, 1:05-CV-00410.

**2**

Defendants Tozzi and Silveria moved to dismiss this complaint on March 9, 2005.[3] (Doc. 8.) Plaintiff opposed this motion (Doc. 13, filed Mar. 14, 2005), and moved for default judgment against defendants Jensen and Hollenback. (Doc. 14, filed Mar. 14, 2005.) Plaintiff then (improperly) filed an additional "counter motion" in opposition to Defendants Tozzi and Silveria's motion to dismiss, along with a motion to amend the complaint a second time. (Doc. 16, filed Mar. 24, 2005.) This motion to amend is still pending. Four days later, on March 28, 2005, Plaintiff lodged yet another "second amended complaint" to "supercede" the second amended complaint that was attached to his motion for leave to amend. (Doc. 19, filed Mar. 28, 2005.)

On March 18, 2005, an order issued dismissing Plaintiffs related case, *Jones v. Strangio*. (*See* Doc. 72, 1:04-cv-06567.) In light of that dismissal, the district court ordered Plaintiff to show cause why <u>this</u> case should not be dismissed as well. (Doc. 18, filed Mar. 29, 2005.) Plaintiff responded to the order to show cause on April 20, 2005. (Doc. 29.) At the same time, Plaintiff filed yet another (third) proposed amended complaint intended to supercede the complaint lodged on March 28, 2005. (*See* Proposed "Second Amended Complaint" lodged Apr. 20, 2005.) This complaint contained numerous new allegations that Defendants made racially derogatory remarks to plaintiff as part of a conspiracy to violate his constitutional rights in contravention

---

[3] On April 20, 2005, Defendants Jensen and Hollenback filed a motion to join the motion to dismiss filed by Defendants Tozzi and Sovey-Silveria. (Docs. 25, 26 & 27.) Their motion was not set for hearing, however, because it was improperly noticed. (*See* Doc. 30, filed April 20, 2005.)

**3**

1  of 42 U.S.C. §§ 1981, 1985, and 1986.

2  A memorandum opinion and order dated May 11, 2005 dismissed
3  all claims against Defendants Tozzi and Silveria, denied
4  Plaintiff's motion for default judgment against Defendants Jensen
5  and Hollenback, and denied Plaintiff's motion for leave to amend
6  the complaint a second time. (Doc. 47.)

7  On June 22, 2005, Defendants Jensen and Hollenback's motion
8  to dismiss was granted, affording Plaintiff one final opportunity
9  to amend the complaint. (Doc. 61.) A separate memorandum
10 opinion, dated June 29, 2005, denied Plaintiffs' April 9, 2005
11 motion for sanctions. (Doc. 65.) On July 6, 2005, Plaintiff
12 voluntarily dismissed Defendant Jensen from the case. (Doc. 66.)
13 Plaintiff then filed a second amended complaint alleging that
14 Defendant Hollenback directed racially derogatory remarks at
15 Plaintiff with the goal of deterring Plaintiff's participation in
16 legal proceedings related to Plaintiff's family law case. (*See*
17 Doc. 67, filed July 6, 2005.

18 Defendant Hollenback then moved to dismiss the second
19 amended complaint on a variety of grounds. (Doc. 78, filed Sept.
20 8, 2005.) Defendant Hollenback also moved for sanctions,
21 alleging that Plaintiff made false statements in his amended
22 complaint. (Doc. 91, filed Sept. 27, 2005.) Both motions were
23 denied. (Doc. 103.)

24 Plaintiff then filed a motion for summary judgment. (Doc.
25 104, filed Oct. 31, 2005.) Defendant failed to timely file an
26 opposition. The court then issued a warning to Defendant about a
27 litigant's obligation to file an opposition or statement of non-
28 opposition at least fourteen days prior to the hearing pursuant

**4**

1  to Local Rule 78-230(c).  (Doc. 118.)  Defendant then filed a
2  proposed opposition along with a request for leave to late-file
3  the opposition.  (Doc. 120, filed Dec. 5, 2005.) Plaintiff
4  objected to granting Defendant leave to file this opposition and
5  submits that he is entitled to judgment as a matte of law.
6  (Docs. 115, 116, 119, 128 & 129.)
7       A hearing on the motion for summary judgment was set for
8  December 12, 2005.  Mr. Jones and counsel for Mr. Hollenback
9  appeared, but decision on the motion for summary judgment was
10 delayed to give Mr. Jones an opportunity to conduct discovery
11 related to Defendant's assertion that the late-filing of his
12 opposition was due to excusable neglect.  (Doc. 133.)
13      Ms. Jensen, counsel to Defendant at the time the opposition
14 was late-filed, submitted a declaration and supporting documents
15 indicating that she was out of the country on vacation when the
16 opposition was due and that, in part as a result of her absence,
17 she and defendant mistakenly failed to file the opposition in a
18 timely manner.  (Doc. 139, filed Dec. 27, 2005.)
19      Plaintiff continues to object to the court's consideration
20 of this late-filed opposition.  (See Doc. 148.)
21
22              **III. SUMMARY OF PLAINTIFF'S ALLEGATIONS**
23      The second amended complaint alleges that Defendant
24 Hollenback became involved with Plaintiff's family law dispute in
25 December 2003 as counsel for Ms. Chhay.  (Doc. 67 at ¶44.)
26 Plaintiff filed contempt charges against Ms. Chhay in early 2004.
27 (*Id*. at ¶ 45.)  Plaintiff alleges that on April 22, 2004,
28 Defendant Hollenback told Plaintiff that he "called the
   Stanislaus County Housing Authority and told them what a lazy

                                  **5**

low-life black piece of shit you are...you get nigger justice." (*Id*. at ¶ 47.)  Plaintiff also alleges that Defendant Hollenback stated that "he would knock the teeth out of his black greasy face...and rattle them out of his jive-monkey ass if he showed up for the contempt hearings."  (*Id*. at ¶48.)  Plaintiff asserts that "as a direct and proximate cause of the defendant's threats, [he] withdrew [the] contempt charges...."  (*Id*. at ¶ 51.)  The complaint further alleges that the statute of limitations on the contempt charges expired in July 2004.  (*Id*. at ¶ 54.)  As a result, "Mr. Jones' access to the judicial system was deprived."  (*Id.*)

In addition to his own declarations, Mr. Jones presents the declaration of his mother, Rosalind F. Jones, who states that she witnessed Defendant Hollenback make the above-described statements to Plaintiff.  (Doc. 106.)

The complaint alleges that Defendant's alleged conduct deprived Plaintiff of his civil rights in violation of 42 U.S.C. § 1981 in seven different ways.  Specifically, the complaint alleges that Defendant:

(1) deprived Plaintiff of his "federal <u>right to sue</u> on account of his race and ethnicity";

(2) deprived Plaintiff of his federal <u>right to enforce contracts</u> on account of his race and ethnicity";

(3) deprived Plaintiff of his "federal <u>right to be a party to proceedings</u> on account of his race and ethnicity";

(4) deprived Plaintiff of his "federal <u>right to give evidence</u> at proceedings on account of his race and ethnicity";

(5) deprived Plaintiff of his "federal <u>right to full</u>

**6**

|   |     |                                                                |
|---|-----|----------------------------------------------------------------|
|   |     | <u>benefit</u> of proceedings on account of his race and       |
|   |     | ethnicity";                                                    |
|   | (6) | deprived Plaintiff of his "federal <u>right to equal</u>       |
|   |     | <u>benefit of all proceedings</u> on account of his race and   |
|   |     | ethnicity"; and                                                |
|   | (7) | deprived Plaintiff of his "federal <u>right to equal</u>       |
|   |     | <u>benefit of all laws</u> on account of his race and          |
|   |     | ethnicity."                                                    |

(*Id*. at ¶64-77 (emphasis added).)

The parties also make reference to a letter sent by Mr. Jones to the court presiding over his family law case entitled "Notice of Withdrawal of Contempt Hearing Without Prejudice." The Notice states:

> I Melvin Jones hereby declare that I am the Plaintiff and moving party and Kea Chhay is the Defendant. I hereby request that the amended contempt charges #23-25 be withdrawn without prejudice for the following reasons:
>
> 1.) Due to the matter(s) set-forth in my letter to the Honorable Judge Wray Ladine dated 4-23-04, sent regular mail on 4-23-04 and sent via Express mail #ER 899883487 US.
>
> 2.) To allow appropriate time for formal investigation by the Commission on Judicial Performance regarding matters set forth in said letter and my detailed formal complaint.
>
> 3.) My overwhelming concern for the safety of myself, and my perspective witness' [sic] appearing on my behalf.
>
> 4.) Due to my concern that further violation(s) of my Civil and Constitutional Rights will occur.
>
> I declare under the penalty of perjury and under the Laws of the State of California that the foregoing is true and correct.
>
> Dated this 7th Day of May, 2004

**7**

```
                              /s/ Melvin Jones
                              Melvin Jones, Jr.
                              Plaintiff
```

(Doc. 87, Attachment E.)


### IV.  **LEGAL ANALYSIS**

#### A.  **Motion for Leave to Late-File Opposition**.

Defendant Hollenback concedes that his opposition was due November 21, 2005.  He asserts that the papers were "completed and ready to be filed and served," but that Defendant's attorney, Leslie F. Jensen, "had gone out of the country on vacation during the Thanksgiving week.  Her first day back at her office was Monday, November 28, 2005."  Defendant apparently prepared the responsive papers himself, but did not feel it was "appropriate to send documents to the court that would carry Ms. Jensen's 'electronic signature' until she had been afforded an opportunity to review such documents."  (Doc. 120 at ¶4-5.)

Of course, this does not explain why Defendant did not file the previously-prepared documents on November 28 or thereabouts. Rather, Defendant waited until just after the court issued a notice warning Defense counsel of her obligation under the local rules to file either an opposition or a statement of non-opposition.  (Doc. 118.)  Where a party fails to timely oppose a motion, Local Rule 78-230(c) provides that the party will not "be entitled to be heard in opposition to a motion at oral arguments...."  It is the practice of the court to inquire of a party that does not file opposition to a dispositive motion whether the party intended to respond or does not oppose the

**8**

motion.

However, Defendant has requested leave to late-file the opposition. The Ninth Circuit has "repeatedly held that a motion for summary judgment cannot be granted simply because the non-moving party violated a local rule." *Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1081-82 (9th Cir. 2000). Cases should be decided on their merits whenever reasonably possible. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). **Plaintiff has shown no actual prejudice or inconvenience resulting from the two day delay.** Defendant presents a plausible, albeit weak, excuse for his oversight. In view of the strong preference of the law that cases be tried on their merits and lack of prejudice to plaintiff, the motion for leave to late-file Defendant's opposition is **GRANTED.** Plaintiff's motion to strike the opposition is **DENIED.** Defendant is warned, however, that future failures to comply with court deadlines will not be countenanced.

**B.   Motion for Summary Judgment.**

**1.   Standard of Review.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Even in an unopposed motion for summary judgment, the moving party nevertheless bears the burden of showing it is entitled to judgment as a matter of law.

**2.   42 U.S.C. § 1981.**

Plaintiff's second amended complaint relies exclusively upon 42 U.S.C. § 1981 to establish subject matter jurisdiction. Section 1981 provides:

> (a) Statement of equal rights.
>
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> (b) "Make and enforce contracts" defined
>
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> (c) Protection against impairment
>
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.  This provision prohibits private individuals as well as state actors from discriminating against an individual on the basis of his or her race with respect to that individual's right "to sue, be parties, give evidence, and to the full and equal benefit of all laws..."  *See General Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982).

"Section 1981 cannot be construed as a general proscription of racial discrimination... for it expressly prohibits discrimination only in the ***making and enforcement of contracts***." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176 (1989)(emphasis added); *see also Georgia v. Rachel*, 384 U.S. 780,

791 (1966) ("The legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of rights").

> In this respect, [Section 1981] prohibits discrimination that infects the legal process in ways that prevent one from enforcing contract rights, by reason of his or her race, and this is so whether this discrimination is attributed to a statute or simply to existing practices. It also covers wholly private efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions, in enforcing the terms of a contract.

*Patterson,* 491 U.S. at 177 (1989).

Here, Plaintiff suggests that bringing a contempt proceeding in state court against Ms. Chhey was an effort to enforce the family law visitation contract he and Ms. Chhey signed. But, as previously noted in the order on Defendant's motion to dismiss, Doc. 103, **neither party offers any legal authority supporting or refuting the proposition that such a contract is protected by section 1981.** Some authority suggests that a wide range of contracts are covered by the provision. *See Runyon v. McCrary*, 427 U.S. 160 (1976) (section 1981 reached discrimination in private education where private schools denied admission to minority children thereby interfering with parents' right to contract for educational services). The court has been unable to locate any cases imposing liability under § 1981 in circumstances that are even remotely comparable to the facts of this case. Nevertheless, for the purposes of this motion, § 1981 is applied to a private party accused of interfering with an individual's efforts access a state court to enforce a private child custody settlement contract.

**11**

1    In order to establish a claim under § 1981, it must be shown
2 that "(1) the plaintiff is a member of a racial minority; (2) an
3 intent to discriminate on the basis of race by the defendant; and
4 (3) the discrimination concerned one or more of the activities
5 enumerated in the statute (i.e., the right to make and enforce
6 contracts, sue and be sued, give evidence, etc.)." *Mian v.*
7 *Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d
8 Cir. 1993); *see Green v. State Bar of Tex.*, 27 F.3d 1083, 1086
9 (5th Cir. 1994).
10    It is not disputed that Plaintiff is African American,
11 satisfying the first element.  Plaintiff alleges that on April
12 22, 2004, Defendant Hollenback told Plaintiff that he "called the
13 Stanislaus County Housing Authority and told them what a lazy
14 low-life black piece of shit you are...you get nigger justice."
15 (*Id*. at ¶47.)  Plaintiff also alleges that Defendant Hollenback
16 stated that "he would knock the teeth out of his black greasy
17 face...and rattle them out of his jive-monkey ass if he showed up
18 for the contempt hearings." (*Id*. at ¶48.)  Plaintiff asserts
19 that "as a direct and proximate cause of the defendant's threats,
20 [he] withdrew [the] contempt charges...." (*Id*. at ¶51.)  This
21 evidence arguably satisfies Plaintiff's prima facie burden.
22    Beyond the prima facie case requirement, Plaintiff suggests
23 that the court should apply the familiar *McDonnell Douglass*
24 burden shifting approach, whereby defendant would be required to
25 respond to a prima facie showing by presenting a legitimate
26 nondiscriminatory reason for the allegedly wrongful treatment.
27 This approach has been applied in § 1981 cases concerning
28 employment discrimination.  *See Doe v. Kamehameha Schools*, 416

**12**

F.3d 1025 (9th Cir. 2005).  However, no authority is offered that suggests the burden shifting approach is appropriate for a denial of court access for contract enforcement.  The *McDonnell Douglass* burden shifting approach is designed to assist in the analysis of cases where direct evidence of discrimination is **absent**.  *Vaughn v. Edel*, 918 F.2d 517, 520 (5th Cir. 1990).

Here, Plaintiff complains that Defendant uttered racial slurs and threats against him in an effort to dissuade Plaintiff from accessing the court system.  Plaintiff relies upon <u>direct</u> evidence of discriminatory intent.  *See Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (9th Cir. 1993) (direct evidence existed where employer used the term "nigger" to refer to plaintiff).

Direct evidence, such as the use of racial slurs, does not necessarily entitle Plaintiff to a judgment as a matter of law.  The essential question is whether Plaintiff can establish that Defendant intentionally discriminated against him on the basis of race to deprive Plaintiff of contract rights enforcement or access to the courts.  This burden "remains with plaintiff at all times."  *Kamehameha*, 416 F.3d at 1038.

There are several ways a Defendant may be able to avoid liability.  For example, in an employment discrimination case where direct evidence is present, the employer can counter "by showing by a preponderance of the evidence that they would have acted as they did without regard to the plaintiff's race."  *Vaughn*, 918 F.2d at 521.  Modifying this test for the circumstances of this case, Defendant may counter by showing that Plaintiff would have withdrawn the contempt proceedings anyway.

**13**

Alternatively, Defendant may escape liability by convincing a jury that, as he maintains, the allegedly discriminatory actions never took place at all. This appears to be the approach taken by Defendant at this stage in the proceedings. Defendant has "categorically denied" making any racially derogatory statements to Plaintiff. (Doc. 120 at ¶8). This creates a dispute as to a material fact as to the racial animus element of the claim.

Plaintiffs motion for summary judgment must be **DENIED**.

### C. <u>Motion to Amend</u>.

Plaintiff requests leave to amend his complaint again, to add twenty-one (21) state law tort claims (5 counts of intentional interference with a contractual relationship; 15 counts of intentional infliction of emotional distress; and one count of slander). (Doc. 166.)

//
//
//
//
//
//
//
//
//
//
//
//

Plaintiff insists that the current trial date, of April 26, 2006, will "remain un-affected" by any amendment. Plaintiff grossly underestimates the potential impact of an amended pleading. Defendant insists he will require additional time to respond to the claims. Plaintiff may amend his complaint, but, as a condition of amending the complaint, the case schedule will be amended accordingly. A status conference will be held March 2, 2006 at 8:45 a.m.

### V.   CONCLUSION

For the reasons set forth above:

(1) Defendant's request to late-file his opposition (Doc. 120) is **GRANTED.**

(2) Plaintiff's Motion to Strike Defendant's Opposition (Doc. 117) is **DENIED.**

(3) Plaintiff's motion for summary judgment (Doc. 104) is **DENIED.**

(4) Plaintiff's Motion for leave to amend the complaint (Doc. 166) is **GRANTED.**

(5) A status conference will be held March 2, 2006 in Courtroom Three at 8:45 a.m.

**SO ORDERED.**

Dated: February 15, 2006

/s/ OLIVER W. WANGER

_____

**Oliver W. Wanger**

**15**

**UNITED STATES DISTRICT JUDGE**

16