UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN JONES, JR.,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL A. TOZZI et al.,<br><br>                    Defendants. | 1:05-CV-0148 OWW DLB<br><br>**MEMORANDUM DECISION AND ORDER RE NUMEROUS OUTSTANDING MOTIONS.** |

## I.   INTRODUCTION

Before the court for decision are several related motions: (1) Plaintiff's motion re: the recusal of Magistrate Judge Dennis L. Beck (2) Plaintiff's motion to file a third amended complaint alleging new claims against dismissed Defendant Leslie Jensen; (3) Defendant John Hollenback's motion to dismiss the operative second amended complaint; (4) Defendant John Hollenback's motion to strike state law claims from the second amended complaint pursuant to California's anti-SLAPP statute; (5) previously dismissed defendant Leslie Jensen's motion to strike state law claims pursuant to California's anti-SLAPP statute; and (6) what appears to be Plaintiff's own motion to strike pursuant to the anti-SLAPP statute.

## II.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of a child custody dispute between Plaintiff and Kea Chhay, the mother of Plaintiff's minor child. The case was first filed in Santa Clara County Superior Court, but was later transferred to Stanislaus County.  Additional background concerning the state proceedings is set forth in various memorandum opinions in this case and related cases.[1]

Plaintiff filed his initial complaint on February 3, 2005. (Doc. 1.)  Then, prior to the filing of any Defendant's responsive pleading, Plaintiff filed a first amended complaint on March 3, 2005.  (Doc. 7.)  The first amended complaint named as defendants:  Michael A. Tozzi, the Executive Officer of Stanislaus County Superior Court; Superior Court Judge Marie Sovey-Silveria; and attorneys Leslie Jensen and John Holenback.

Defendants Tozzi and Silveria moved to dismiss on March 9, 2005.  (Doc. 8.)  Plaintiff opposed this motion (Doc. 13, filed Mar. 14, 2005), and moved for default judgment against defendants Jensen and Hollenback.  (Doc. 14, filed Mar. 14, 2005.) Plaintiff then (improperly) filed an additional "counter motion" in opposition to Defendants Tozzi and Silveria's motion to dismiss, along with a motion to amend the complaint a second time.  (Doc. 16, filed Mar. 24, 2005.)  Four days later, on March 28, 2005, Plaintiff lodged yet another "second amended complaint" to "supercede" the second amended complaint that was attached to his motion for leave to amend.  (Doc. 19, filed Mar. 28, 2005.)

---

[1]    *See Jones v. California*, 1:04-CV-065676; *Jones v. Strangio*, 1:04-CV-06567; and *Jones v. Strangio*, 1:05-CV-00410.

1    On March 18, 2005, an order issued dismissing Plaintiff's

2    related case, *Jones v. Strangio*.  (*See* Doc. 72, 1:04-cv-06567.)

3    In light of that dismissal, the district court ordered Plaintiff

4    to show cause why <u>this</u> case should not be dismissed as well.

5    (Doc. 18, filed Mar. 29, 2005.)  Plaintiff responded to the order

6    to show cause on April 20, 2005.  (Doc. 29.)  At the same time,

7    Plaintiff filed yet another (third) proposed amended complaint

8    intended to supercede the complaint lodged on March 28, 2005.

9    (*See* Proposed "Second Amended Complaint" lodged Apr. 20, 2005.)

10   This complaint contained numerous, entirely new, allegations that

11   Defendant Hollenback made racially derogatory remarks to

12   Plaintiff as part of a conspiracy to violate his constitutional

13   rights in contravention of 42 U.S.C. §§ 1981, 1985, and 1986.

14   A memorandum decision and order, dated May 11, 2005,

15   dismissed all claims against Defendants Tozzi and Silveria on

16   immunity grounds, denied Plaintiff's motion for default judgment

17   against Defendants Jensen and Hollenback, and denied Plaintiff's

18   motion for leave to amend the complaint a second time.  (Doc.

19   47.)

20   On June 22, 2005, Defendants Jensen and Hollenback's motion

21   to dismiss was granted, affording Plaintiff one final opportunity

22   to amend the complaint.  (Doc. 61.)  A separate memorandum

23   decision, dated June 29, 2005, denied Plaintiff's April 9, 2005

24   motion for sanctions.  (Doc. 65.)  On July 6, 2005, Plaintiff

25   voluntarily dismissed Defendant Jensen from the case.  (Doc. 66.)

26   Plaintiff then filed a second amended complaint alleging that

27   Defendant Hollenback made racially derogatory remarks to

28   Plaintiff with the goal of deterring Plaintiff's participation in

**3**

legal proceedings related to Plaintiff's family law case.  (*See* Doc. 67, filed July 6, 2005.

Defendant Hollenback moved to dismiss the second amended complaint on a variety of grounds. (Doc. 78, filed Sept. 8, 2005.)  Defendant Hollenback also moved for sanctions, alleging that Plaintiff made false statements in his amended complaint. (Doc. 91, filed Sept. 27, 2005.)  Both motions were denied. (Doc. 103.)

<u>Plaintiff</u> filed a motion for summary judgment. (Doc. 104, filed Oct. 31, 2005.)  Defendant failed to timely file an opposition.  The court then issued a warning to Defendant about a litigant's obligation to file an opposition or statement of non-opposition at least fourteen days prior to the hearing pursuant to Local Rule 78-230(c).  (Doc. 118.)  Defendant filed a proposed opposition along with a request for leave to late-file the opposition. (Doc. 120, filed Dec. 5, 2005.)  Plaintiff objected to granting Defendant leave to file this opposition and submitted that he is entitled to judgment as a matter of law.  (Docs. 115, 116, 119, 128 & 129.)  Plaintiff continued to insist on a speedy trial.

A hearing on the motion for summary judgment was held December 12, 2005.  The district court granted Defendant's request to late file-his opposition and denied Plaintiff's motion for summary judgment, but granted Plaintiff's motion for leave to amend the complaint to add state law claims.  (Doc. 185, filed February 15, 2006.)

Plaintiff filed his second amended complaint on February 8, 2006.  (Doc. 182.)  The second amended complaint alleges that

Defendant Hollenback became involved in Plaintiff's family law dispute in December 2003 as counsel for Ms. Chhay. (Doc. 67 at ¶44.) Plaintiff filed contempt charges against Ms. Chhay in early 2004 to enforce a court order. (*Id*. at ¶ 45.) Plaintiff alleges that on April 22, 2004, Defendant Hollenback told Plaintiff that he "called the Stanislaus County Housing Authority and told them what a lazy low-life black piece of shit you are...you get nigger justice." (*Id*. at ¶ 47.) Plaintiff also alleges that "after the child support trial and out of court" Defendant Hollenback stated that "he would knock the teeth out of his black greasy face...and rattle them out of his jive-monkey ass if he showed up for the contempt hearings." (*Id*. at ¶48.) Plaintiff asserts that "as a direct and proximate cause of the defendant's threats, [he] withdrew [the] contempt charges...." (*Id*. at ¶ 51.) The complaint further alleges that the statute of limitations on the contempt charges expired in July 2004. (*Id*. at ¶ 54.) As a result, "Mr. Jones' access to the judicial system was deprived." (*Id*.)

The complaint alleges that Defendant's conduct deprived Plaintiff of his civil rights in violation of 42 U.S.C. § 1981 in seven different ways. Specifically, Defendant:

(1)  deprived Plaintiff of his "federal <u>right to sue</u> on account of his race and ethnicity";

(2)  deprived Plaintiff of his federal <u>right to enforce contracts</u> on account of his race and ethnicity";

(3)  deprived Plaintiff of his "federal <u>right to be a party to proceedings</u> on account of his race and ethnicity";

**5**

(4)  deprived Plaintiff of his "federal <u>right to give</u>
     <u>evidence</u> at proceedings on account of his race and
     ethnicity";

(5)  deprived Plaintiff of his "federal <u>right to full</u>
     <u>benefit</u> of proceedings on account of his race and
     ethnicity";

(6)  deprived Plaintiff of his "federal <u>right to equal</u>
     <u>benefit of all proceedings</u> on account of his race and
     ethnicity"; and

(7)  deprived Plaintiff of his "federal <u>right to equal</u>
     <u>benefit of all laws</u> on account of his race and
     ethnicity."

(*Id.* at ¶64-77 (emphasis added).)

The second amended complaint also included a number of state law claims:

| | |
|---|---|
| **Count 8:** | Slander Per Se |
| **Counts 9-11:** | Intentional Interference with Contractual Relations |
| **Counts 12-14:** | Intentional Infliction of Emotional Distress |
| **Counts 15-22:** | Negligent Infliction of Emotional Distress |

Plaintiff included Leslie Jensen as a defendant in many of the claims in the second amended complaint, without first obtaining leave to reinstate Leslie Jensen as a defendant.

Plaintiff at one point presented an affidavit from his mother, Rosalind Jones. (Doc. 108.) Ms. Jones's statements in the affidavit corroborate Plaintiff's accusations that Hollenback made racially derogatory statements to Plaintiff. (*Id.* at 3.)

**6**

1  Defendant sought to conduct further discovery regarding Ms.
2  Jones' statements and to depose her.  Throughout December 2005
3  and January 2006, the parties engaged in discovery disputes over
4  the method, timing, and circumstances of any such discovery.  As
5  is the normal practice in this district, these discovery disputes
6  were heard before a United States Magistrate Judge, in this case
7  Magistrate Judge Dennis L. Beck.  After a hearing on February 3,
8  2006, Judge Beck issued an order denying Plaintiff's motion for a
9  protective order and granting Defendant's motion to compel Ms.
10 Jones to participate in an oral deposition.  (Doc. 181, filed
11 February 8, 2006.)  Shortly after the adverse rulings, Plaintiff
12 moved to recuse Judge Beck from participating in this case.  (*See*
13 Doc. 179.)

14     A few weeks after filing his second amended complaint,
15 Plaintiff moved yet again for leave to amend, again alleging both
16 federal and state law claims against both Hollenback and Jensen.
17 (*See* Doc. 190, third amended complaint, filed Feb. 22, 2006.)

18     Defendant Hollenback moves to dismiss all the claims in the
19 second amended complaint.  (Docs. 191 & 2.)  Defendant Jensen
20 objects to being reinstated as a defendant.  (Doc. 209.)  Both
21 Defendants move to strike all of the state law claims pursuant to
22 California's anti-SLAPP statute.  (Docs 194 & 197.)  Plaintiff,
23 in a series of confusingly organized documents, appears to (1)
24 oppose the motions to dismiss and to strike and (2) assert his
25 own anti-SLAPP motion to strike.

26 //

27 //

28 //

1      III.   <u>**STANDARDS OF REVIEW**</u>

2      A.   <u>**Motion to Dismiss.**</u>

3      In deciding whether to grant a motion to dismiss, a court

4  must "take all of the allegations of material fact stated in the

5  complaint as true and construe them in the light most favorable

6  to the nonmoving party." *Rodriguez v. Panayiotou*, 314 F.3d 979,

7  983 (9th Cir. 2002).  In general, "a *pro se* complaint will be

8  liberally construed and will be dismissed only if it appears

9  beyond doubt that the plaintiff can prove no set of facts in

10  support of his claim which would entitle him to relief." *Pena v.*

11  *Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).  However, "a liberal

12  interpretation of a [pro se] complaint may not supply essential

13  elements of the claim that were not initially pled."  *Id*.

14      B.   <u>**Motion to Strike**</u>.

15      Both Hollenback and Jensen move to strike the state law

16  claims against them under California's "Anti-SLAPP" statute,

17  California Code of Civil Procedure Section 425.16, which provides

18  in relevant part:

19           A cause of action against a person <u>arising from</u>
         any act of that person in furtherance of the
20           person's right of petition or free speech under
         the United States or California Constitution in
21           connection with a public issue shall be subject to
         a special motion to strike, unless the court
22           determines that the plaintiff has established that
         there is a probability that the plaintiff will
23           prevail on the claim.

24                          * * *

25           As used in this section, "act in furtherance of a
         person's right of petition or free speech under
26           the United States or California Constitution in
         connection with a public issue" includes:

27

28

**8**

1    (1) any written or oral statement or writing
     made before a legislative, executive, or
2    judicial proceeding, or any other official
     proceeding authorized by law;

3
     (2) any written or oral statement or writing
4    made in connection with an issue under
     consideration or review by a legislative,
5    executive, or judicial body, or any other
     official proceeding authorized by law;

6
     (3) any written or oral statement or writing
7    made in a place open to the public or a
     public forum in connection with an issue of
8    public interest;

9    (4) or any other conduct in furtherance of
     the exercise of the constitutional right of
10   petition or the constitutional right of free
     speech in connection with a public issue or
11   an issue of public interest.

12   Cal. Code Civ. Pro. § 425.16(b)(1) & (e)(emphasis added).

13        A court considering a motion to strike under the anti-SLAPP

14   statute must engage in a two-part inquiry.  First, a defendant

15   must make an initial prima facie showing that the plaintiff's

16   suit "aris[es] from" activity protected by the anti-SLAPP

17   statute.  Brill Media Co. v. TCW Group, Inc., 132 Cal. App. 4th

18   324, 329 (2005); Cal. Code Civ. Pro. § 425.16(b)(1).  In

19   performing this analysis, the California Supreme Court has

20   stressed, "the critical point is whether the plaintiff's cause of

21   action itself was based on an act in furtherance of the

22   defendant's right of petition or free speech."  City of Cotati v.

23   Cashman, 29 Cal. 4th 69, 78 (2002) (emphasis in original).

24        If the defendant is able to make this threshold showing, the

25   burden shifts to the plaintiff to demonstrate a probability of

26   prevailing on the challenged claims.  In practice, a plaintiff

27   must show that the claim is "both legally sufficient and

28   supported by a sufficient prima facie showing of facts to sustain

1  a favorable judgment if the evidence submitted by the plaintiff

2  is credited." *Jarrow Formulas, Inc. v. LaMarche,* 31 Cal. 4th

3  728, 744 (2003).  Claims which satisfy this burden are "not

4  subject to being stricken as a SLAPP."  *Id.*

5

6                    **IV.   <u>LEGAL ANALYSIS</u>**

7    **A.   <u>Motion to Recuse Magistrate Judge Beck</u>.**

8        Plaintiff moves to have Magistrate Judge Beck removed from

9  participation in this case.  Plaintiff relies on 28 U.S.C. § 455,

10  which requires any judge or magistrate judge of the United states

11  to "disqualify <u>himself</u> in any proceeding in which his

12  impartiality might reasonably be questioned."  § 455 (emphasis

13  added).  Specifically, Plaintiff concludes that Magistrate Judge

14  Beck has expressed a "self-proclaimed bias" in favor of defense

15  counsel.  The only ground provided by Plaintiff to show the

16  nature of this "self-proclaimed bias" is Plaintiff's suggestion

17  that "Magistrate [Judge] Beck appeared to state on [the] record

18  his long term relationship with the law offices of McCormick,

19  Barstow, Sheppard, Wayte & Carruth LLP."  (Doc. 206,

20  "Clarification of Doc. 179 - Extrajudicial Bias.")  No evidence

21  of any relationship between Magistrate Judge Beck and the

22  McCormick law firm is provided.  Nor is a transcript excerpt of

23  such an alleged "statement" furnished by Plaintiff.  An adverse

24  ruling against a party does not provide a basis for recusal of a

25  judge.  *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

26  Plaintiff had no issues with Magistrate Judge Beck until rulings

27  adverse to Plaintiff were made.  Plaintiff has provided no

28  evidence of a basis to disqualify Magistrate Judge Beck.

**B.** __Previously Dismissed Defendant Jensen's Objection to Being Named in the Operative Second Amended Complaint.__

On January 24, 2006, Plaintiff sought leave of court to amend his complaint to add state law claims against defendant Hollenback.  No mention was made in this request for leave to rejoin previously dismissed Defendant Leslie Jensen, nor of Plaintiff's desire to re-assert claims against her.  At oral argument on January 30, 2006, the district court indicated intent to grant Plaintiff leave to amend pursuant to his request, with the understanding that the time for trial would be delayed.  (I Doc. 185 at 14, Memorandum decision filed February 15, 2006.)  On February 8, 2006, Plaintiff filed a second amended complaint setting forth not only additional claims against  Defendant Hollenback, but also purporting to assert new federal and state law claims against Ms. Jensen.  (*See* Doc. 182 at 22.)  Jensen objects and moves to strike any allegations in the second amended complaint against her.  (Doc. 209, filed March 16, 2006.)

The amendment of pleadings is governed by Federal Rule of Civil Procedure 15(a), which provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires....

Leave to amend should be "freely given," "[i]n the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

1  prejudice to the opposing party by virtue of allowance of the

2  amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S.

3  178, 182 (1962).

4      Here, although Plaintiff obtained leave of court to file

5  additional claims against Defendant Hollenback, he never obtained

6  such leave to rejoin the previously dismissed Defendant Jensen.

7  He made no motion to explain why his prior dismissal of Jensen

8  should not be binding.  Leave to amend may be denied where a

9  party unduly delays alleging facts or legal theories of which he

10 or she was previously aware.  *Royal Ins. Co. of Am. v. Southwest*

11 *Marine*, 194 F.3d 1009, 1017-18 (9th Cir. 1999).  Here, Plaintiff

12 now seeks to assert (for the first time) that Jensen also made

13 racially derogatory remarks toward Plaintiff, an allegation he

14 has never mentioned in the almost two years that this dispute has

15 been pending.  It is inconceivable that Plaintiff has not had

16 full knowledge of any such facts for over two years.  Plaintiff

17 has been afforded multiple opportunities to amend the complaint.

18 No explanation is provided why the claim has never been advanced.

19 A district court has discretion to deny leave to amend under such

20 circumstances.  *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir.

21 1980).  Unjustified delay, unjustified failure to ever mention

22 this purported claim, unjustified failure to allege the claim

23 while Jensen was a party to the case are all grounds to deny

24 leave to rejoin Jensen as a defendant.

25      Previously dismissed Defendant Jensen's motion to strike her

26 status as a defendant is **GRANTED**.

27 //

28 //

**12**

1      **C.    Plaintiff's motion to file a third amended complaint**.

2              On February 16, 2006, Plaintiff moved again to amend the

3      complaint.  (Doc. 187; Doc. 217, Corrected Proposed Third Amended

4      Complaint.)  Plaintiff has been warned in the past that his

5      practice of filing multiple complaints unfairly creates a moving

6      target for opposing parties and necessary burdens on an overtaxed

7      court.  Defendants are entitled to have their motions to dismiss

8      and to strike heard as to the second amended complaint.

9      Plaintiff has provided no explanation as to why he could not have

10     included information contained in the third amended complaint in

11     the previously-filed second amended complaint.  This is in

12     substance the fifth time Plaintiff has endeavored to alter the

13     facts of his lawsuit.  Plaintiff's request for leave to file a

14     third amended complaint is **DENIED.**

15

16     **D.    Hollenbak's Motion to Dismiss: The Federal Claim Under
       42 U.S.C. § 1981**.

17             Plaintiff's second amended complaint relies upon 42 U.S.C. §

18     1981 to establish federal subject matter jurisdiction.  Defendant

19     Hollenback moves to dismiss this allegation on the ground that

20     Plaintiff has failed to state a claim under section 1981.

21             Section 1981 provides:

22             (a) Statement of equal rights.

23             All persons within the jurisdiction of the United
               States shall have the same right in every State and
24             Territory to make and enforce contracts, to sue, be
               parties, give evidence, and to the full and equal
25             benefit of all laws and proceedings for the security of
               persons and property as is enjoyed by white citizens,
26             and shall be subject to like punishment, pains,
               penalties, taxes, licenses, and exactions of every
27             kind, and to no other.

28

**13**

    (b) "Make and enforce contracts" defined

    For purposes of this section, the term "make and
    enforce contracts" includes the making, performance,
    modification, and termination of contracts, and the
    enjoyment of all benefits, privileges, terms, and
    conditions of the contractual relationship.

    (c) Protection against impairment

    The rights protected by this section are protected
    against impairment by nongovernmental discrimination
    and impairment under color of State law.

42 U.S.C. § 1981.  This provision prohibits private individuals

as well as state actors from discriminating against an individual

on the basis of his or her race with respect to that individual's

right "to sue, be parties, give evidence, and to the full and

equal benefit of all laws..."  *See General Bldg. Contractors*

*Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 391 (1982).

     In order to establish a claim under § 1981, a plaintiff must

establish that (1) he or she is a member of a racial minority;

(2) the defendant intended to discriminate against plaintiff on

the basis of race; and (3) the discrimination concerned one or

more of the activities enumerated in the statute (i.e., the right

to make and enforce contracts, sue and be sued, give evidence,

etc.)."  *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d

1085, 1087 (2d Cir. 1993); *see Green v. State Bar of Tex.*, 27

F.3d 1083, 1086 (5th Cir. 1994).

     Plaintiff continues to suggest that his section 1981 clam

may rest on deprivations separate and distinct from those founded

on contract.  For example, Plaintiff alleges that Defendant

Hollenback's actions deprived him of his federal right "to sue,"

"to be a party to proceedings," "to give evidence at proceedings"

"to full benefit of proceedings,""to equal benefit of all

**14**

proceedings," and "to equal benefit of all laws" on account of
Plaintiff's race and ethnicity.  (*See* Compl. at ¶¶64-77.)   But,
section 1981 has not been construed as a "general proscription of
racial discrimination..."  *Patterson v. McLean Credit Union*, 491
U.S. 164, 176 (1989).   Its reach has been limited and interpreted
to prohibit discrimination "only in the ***making and enforcement of
contracts***."  *Id.* (emphasis added); *see also Georgia v. Rachel*,
384 U.S. 780, 791 (1966) ("The legislative history of the 1866
Act clearly indicates that Congress intended to protect a limited
category of rights").

> In this respect, [Section 1981] prohibits
> discrimination that infects the legal process in ways
> that prevent one from enforcing contract rights, by
> reason of his or her race, and this is so whether this
> discrimination is attributed to a statute or simply to
> existing practices. It also covers wholly private
> efforts to impede access to the courts or obstruct
> nonjudicial methods of adjudicating disputes about the
> force of binding obligations, as well as discrimination
> by private entities, such as labor unions, in enforcing
> the terms of a contract.

*Patterson,* 491 U.S. at 177.  The Supreme Court emphasized in
*Patterson* that "one cannot seriously contend that the grant of
the other rights enumerated in § 1981 [that is, other than the
right to make contracts,] i.e., the rights to  sue, be parties,
give evidence, and enforce contracts' accomplishes anything other
than the removal of legal disabilities to sue, be a party,
testify or enforce a contract. Indeed, it is impossible to give
such language any other meaning."  *Id*. at 178.  The Supreme Court
recently reiterated that "a plaintiff cannot state a claim under
§ 1981 unless he has (or would have) rights under [an] existing
(or proposed) contract that he wishes 'to make and enforce.'"
*Domino's Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1252 (2006).

**15**

1     Plaintiff continues to insist that bringing the contempt

2  proceeding in state court against Ms. Chhey was an effort to

3  enforce a family law visitation "contract" between Plaintiff and

4  Ms. Chhey.  Doubt has previously been expressed as to whether

5  imposing liability under section 1981 is appropriate in this

6  case.  The legal issue has not been squarely raised or adequately

7  addressed by any party in any prior proceeding.[2]  Defendant now

8  challenges the sufficiency of the complaint on the ground that

9  the family law visitation agreement is <u>not</u> a contract.

10     In California, a contract is defined as an agreement to do

11 or not to do a particular thing.  Cal. Civ. Code § 1549.  In

12 order for a contract to exit, (1) there must be two or more

13 parties capable of contracting, (2) they must consent, (3) to a

14 lawful object, and (4) there must be "sufficient cause or

15 consideration."  Cal. Civ. Code § 1550.

16 //

17 //

18 //

19 //

20

---

21     [2]   Plaintiff argues that the merits of the section 1981
   claim have been addressed by the district court and suggests that
22 this motion to dismiss is therefore not properly before the
   court.  This is incorrect for two reasons.  First, although
23 Defendants did previously challenge the sufficiency of the § 1981
   claim, they did so in response to a previously-filed complaint.
24 Plaintiff subsequently moved for and was granted leave to amend.
   Upon the filing of an amended complaint, Defendant is entitled to
25 file new Rule 12 motions.  Second, the sufficiency of the § 1981
   claim was never completely resolved by the district court.
26 Specific questions were raised as to whether the custody and
   visitation document constituted a contract covered by § 1981.
27 (*See* Doc. 185 at 11.)

28

**16**

The header for the document in question provides as follows:

Melvin Jones, Jr. vs. Kea Chhay
   Petitioner          Respondent

Case # 285954      Hearing Date: December 10, 2002

This order applies to the following minor child:

Lauren Jones DOB 9/01/97

(Doc. 193-2 at 3 (page 1 of 5 of the document).   The first paragraph provides:

> 1.   The following custody and visitation orders are imposed by the Court based upon the agreement of the parties.   This order shall supersede all prior orders.

(*Id.*)   The subsequent five pages of text contain various provisions pertaining to the custody and visitation arrangement. Plaintiff relies heavily on the fact that the first paragraph contains the language "based upon the agreement of the parties." This, Plaintiff suggests, is evidence that the document is a contract. Hollenback objects that the "findings and order" that constituted the custody/visitation agreement in no way depends on the parties' mutual consent to the custody arrangement and its related provisions.

Even assuming the truth of Plaintiff's assertion that the order was based upon an agreement between Plaintiff and Chhay, that agreement was reduced to an order of the family court.   Once the order was entered, any agreement was merged in the order and a party can no longer bring a breach of contract action to enforce the agreement.   The only remedy is by way of a contempt proceeding.   *See In re Marriage of Lane*, 165 Cal. App. 3d 1143, 1148 (1985)("[A]s to orders made and not complied with, the

**17**

1    [aggrieved party] should enforce her rights via contempt or

2    execution and not by way of a breach of contract cause of

3    action."); *see also In re Marriage of Lynn*, 101 Cal. App. 4th

4    120, 130 (2002)(where marital settlement agreement is merged into

5    a judgment of dissolution, "it ceases to have any independent

6    legal significance [and] the parties' rights and obligations are

7    governed by the judgment alone.").  Under the doctrine of merger,

8    the "contract" has been merged into the order which governs the

9    parties' rights and obligations.

10        Plaintiff's conduct admits this, as he was in the process of

11   prosecuting a contempt action when the alleged racially

12   derogatory remarks were purportedly made.  As additional support

13   for his contention that the custody and visitation order is not a

14   contract, Hollenback points out that such orders are modifiable

15   at any time by the court if such modification would serve the

16   best interest of the child.

17        The visitation and custody order is not a contract.

18   Accordingly, Plaintiff's efforts to "enforce" the order are not

19   protected by section 1981.  Defendant Hollenback's motion to

20   dismiss the 1981 claim is **GRANTED WITH PREJUDICE**.[3]

21        The only conceivable basis for Plaintiff's claim for private

22   _____

23        [3]    Plaintiff correctly notes that a civil rights plaintiff
     is not required to plead facts in support of each of the prima
24   facie elements of a claim of discrimination.  *Swierkiewicz v.
     Sorema*, 534 U.S. 506 (2002).  However, *Swierkiewicz* does not
25   shield Plaintiff entirely from a motion to dismiss based on the
     facts <u>actually pled</u> in the complaint.  A court may nevertheless
26   dismiss a complaint "if it is clear that no relief could be
     granted under any set of facts that could be proved consistent
27   with the allegations."  *See id.* at 506.

28

party racial discrimination is section 1985.  As previously explained in general terms to Plaintiff (*see* Doc. 47 at 16-17), section 1985 prohibits several forms of conspiracies to deprive individuals of the rights and privileges held by a citizen of the United States.  Under the facts currently pled, the second clause of sub-section 1985(2), "Obstructing justice; intimidating party, witness, or juror," appears to be applicable:

> ...if two or more persons <u>conspire</u> for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws [an action for damages exists];

42 U.S.C. § 1985(2).[4]

The elements of a cause of action under this clause of section 1985(2) are: (1) that defendants (or defendant and non-defendant co-conspirators) conspired, (2) for the purpose of

---

[4] The first clause of § 1985(2) applies only to conduct tending influence participation in federal court proceedings:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in <u>any court of the United States</u> from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror...

(emphasis added).

**19**

depriving any person of equal protection of the laws, (3) that defendant(s) acted in furtherance of the conspiracy, and (4) that Plaintiff was injured or deprived of a civil right. *Griffen v. Breckenridge,* 403 U.S. 88, 102-103 (1971).  In addition, because this clause requires "intent to deny to any citizen the equal protection of the laws," Plaintiff must set forth an allegation of "class-based animus."  *See Bretz v. Kelman*, 773 F.2d 1026, 1029 (1985)(applying the class based animus standard from *Kush v. Rutledge*, 460 U.S. 719 (1983) to the second clause of § 1985(2)).  In other words, Plaintiff must allege that he was denied access to a state court proceeding because of his membership in a protected class.   Plaintiffs currently operative complaint contains such an allegation.

Critically, section 1985(2) only applies to <u>conspiracies</u>.  In the Ninth Circuit, conspiracy claims are subject to a heightened pleading standard.  To survive a motion to dismiss a conspiracy allegation requires more than a conclusory accusations that Defendant conspired to deprive Plaintiff of his civil rights.  In other words, bare allegations that one defendant "conspired" with another are insufficient. *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997); *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992); *Woodrum v. Woodward County*, 866 F.2d 1121, 1126-27 (9th Cir. 1989).  Rather, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989); *see also Lee v. City of Los Angeles*, 250 F.3d 668,

679 n.6 (9th Cir.2001) (holding that plaintiffs must allege facts which are "specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity."  Plaintiff may meet the heightened pleading standard by alleging "which defendants conspired, how they conspired and now the conspiracy led to a deprivation of his constitutional rights...." *Harris*, 126 F.3d at 1196.   Thus far, Plaintiff has failed to meet this burden.[5]

Plaintiff will be afforded one final opportunity to amend to assert section 1985 and 1986 claims against Defendant Hollenback.

**E.   Hollenback's Motion to Dismiss: the State Law Claims**.

A validly asserted federal claim is a prerequisite to the exercise of supplemental jurisdiction over state law claims. Defendant Hollenback argues that all of the state law claims should be dismissed on a variety of grounds.

> **1.   *Defendant's argument that all state-law claims are barred by the litigation privilege.***

California Civil Code § 47(b) provides in pertinent part.

> A privileged publication or broadcast is one made:
>
> (a)   In the proper discharge of an official duty.
>
> (b)   In any...(2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding

---

[5]   Plaintiff has in the past and continues to attempt to state a claims under 42 U.S.C. § 1986, which provides for recovery of damages against persons who, having the knowledge and power to do so, fail to prevent the commission of a conspiracy pursuant to § 1985.  Plaintiff cannot maintain a claim under § 1986 unless there is also a valid claim under § 1985.  *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983).

authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows:

(1) An allegation or averment contained in any pleading or affidavit filed in an action for marital dissolution or legal separation made of or concerning a person by or against whom no affirmative relief is prayed in the action shall not be a privileged publication or broadcast as to the person making the allegation or averment within the meaning of this section unless the pleading is verified or affidavit sworn to, and is made without malice, by one having reasonable and probable cause for believing the truth of the allegation or averment and unless the allegation or averment is material and relevant to the issues in the action.

* * *

(c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information....

The most relevant portion of section 47 is subsection b, which provides absolute privilege for any "publication or broadcast" made in any judicial proceeding.  California courts have given this privilege an "expansive reach." *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993).  It extends to any communication that bears "some relation to any ongoing or anticipated lawsuit." *Id*. at 1194.  The privilege also applies to a wide range of causes of action.  The California Supreme Court noted "the only exception to [the application of [section 47(b) to tort suits has been for malicious prosecution." *Id*.  The California courts have applied the privilege to claims of abuse of process, *Pollock v. Univ. of So. Cal.*, 112 Cal. App. 4th 1416 (2003), fraud, *Carden v.*

22

*Getzoff*, 190 Cal App. 3d 907 (1987), invasion of privacy, *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985), *and interference with contract*, *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990).

Critically, the privilege only applies to communicative acts, not noncommunicative conduct. *Rubin,* 4 Cal. 4th at 1195-96. For example, an attorney's act of counseling his or her client is covered, even if it is alleged that the attorney made misrepresentations during the course of such communications. *Id.* However, pure conduct, such as eavesdropping, is not covered. *Id.*

Under certain circumstances, section 47 is only applicable if communications are made "without malice." The "without malice" language is used twice in section 47. It first applies as an exception to the litigation privilege for certain communications made during the course of "marital dissolution or legal separation." *See* Cal. Civ. Code § 47(b)(1). It appears again in section 47(c), which provides:

> A privileged publication or broadcast is one made:
>
> In a communication, <u>without malice</u>, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information.

(emphasis added). Subsection (c) operates to protect against liability for communications made outside the context of litigation (i.e., statements that would not qualify for protection under subsection (b)). The statute gives an example of such a communication:

> This subdivision applies to and includes a
> communication concerning the job performance or
> qualifications of an applicant for employment, based
> upon credible evidence, made without malice, by a
> current or former employer of the applicant to, and
> upon request of, one whom the employer reasonably
> believes is a prospective employer of the applicant.

Cal. Civ. Code § 47(c).  With respect to communications falling under the scope of subsection (c), the privilege only applies in the absence of evidence of malice.  Neither of these exceptions applies here.  The "without malice" language is inapplicable.

Defendant Hollenback contends that the alleged derogatory statements that form the basis of all of Plaintiff's claims, which were uttered in the context of a judicial or quasi judicial proceeding, were therefore made in furtherance of Ms. Chhay's litigation goals, and, thus, are privileged under California law.

No cases have been located which address whether the litigation privilege applies under the alleged circumstances presented here.  The general rule is that the litigation privilege applies where a particular communication is "logically related" to a judicial or quasi-judicial proceeding."  *Silberg v. Anderson*, 50 Cal. 3d 205, 219-20 (1990).  *See Mann v. Quality Old Time Serv., Inc.,* 120 Cal. App. 4th 90, 108 (2004) (privilege does not apply to allegedly defamatory statements made to a corporation's customers because there was no evidence that the statements had "any relationship" to a judicial proceeding or related investigation).

> The connection or logical relation which a
> communication must bear to litigation in order for the
> privilege to apply, is a functional connection. That is
> to say, the communicative act...must function as a
> necessary or useful step in the litigation process and
> must serve its purposes. This is a very different thing
> from saying that the communication's content need only
> be related in some way to the subject matter of the
> litigation....

**24**

> And as for furthering the objects of the litigation,...[this is] satisfied only by communications which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case. Notably...A party's pleadings obviously satisfy this test.

*Kashian v. Harriman*, 98 Cal. App. 4th 892, 920-21 (2002)(internal citations and quotations omitted).

One California case has addressed somewhat similar factual circumstances.  In *Soliz v. Williams*, 74 Cal. App. 4th 577 (1999), a number of parties were litigating before a particular state court judge.  Pursuant to a court order, the parties were participating in a settlement conference in the courthouse, apparently in the presence of the presiding judge.  During the lunch hour, the parties continued to work on developing a settlement.  Some participants were gathered in the hallway when, according to one of the parties, the judge suddenly burst into the hall "pointing his finger" at a party, "angrily yelling that [the parties'] settlement demand was 'bullshit,' and, if they thought there was money in the case, they had 'shit for brains.'" *Id*. at 187.  Applying the litigation privilege contained within section 47(b)(2), the *Soliz* court found that the judge was absolutely immune from damages for the remarks made in the hallway.

The facts as alleged here are similar to those in *Soliz*. Plaintiff alleges that Defendant made racially derogatory statements to him in the hallway of the courthouse. Specifically, Plaintiff alleges that Defendant said he had "called the Stanislaus County Housing Authority and told them what a lazy low-life black piece of shit you are...you get nigger

justice." (*Id.* at ¶ 47.)  Plaintiff also alleges that Defendant Hollenback stated that "he would knock the teeth out of his black greasy face...and rattle them out of his jive-monkey ass if he showed up for the contempt hearings." (*Id.* at ¶48.)  Plaintiff asserts that "as a direct and proximate cause of the defendant's threats, [he] withdrew [the] contempt charges...."  The statements, if true, are certainly reprehensible, but are also connected to the litigation.  The first statement suggests that Defendant called a county housing agency and made derogatory statements to the agency concerning Plaintiff.  Such communications between Hollenback and the county housing agency are arguably connected to the child custody dispute and serve the purpose of furthering Ms. Chhay's interests to show Plaintiff was not a suitable custodial parent.  Similarly, the second statement -- the alleged threat to "rattle" out Plaintiff's teeth if he showed up for the contempt proceeding, is also logically connected to the child custody dispute as it seeks to deter Plaintiff from participating in the custody and contempt proceeding.  The litigation privilege bars all state law claims based upon these statements.

Plaintiff asserts that the alleged derogatory statements in this case cannot be covered by the litigation privilege because they were unlawful.  This is a logical assertion, but is contrary to the law:

> [C]ommunications made in connection with litigation do not necessarily fall outside the privilege simply because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal. This is assuming, of course, that the communications are "logically related" to the litigation.

*Kashian*, 98 Cal. App. 4th at 921.  Hollenback's alleged
statements were made to influence the housing authority's
decision about availability of housing.  The alleged threat to
deter Plaintiff from participating in the contempt proceeding
also directly concerns the family law court case.

Defendant's motion to dismiss **all** of the state law claims
pursuant to the litigation privilege is **GRANTED WITH PREJUDICE.**

### 2.   Count 8 – Slander Per Se and the Statute of Limitations.

Even if the litigation privilege did not bar all of the
state law claims, the statute of limitations would bar
Plaintiff's slander per se cause of action.  The statute of
limitations for a slander action is one year.  Cal. Code Civ.
Pro. § 340(c).  Under limited circumstances, the one year time
limit does not begin to run until plaintiff discovers, or with
reasonable diligence should discover, all of the facts
constituting the action.  This exception only applies, however,
if the defamation was committed in an inherently secretive
manner.  *See Shively v. Bozanich*, 31 Cal. 4th 1230, 1248-50
(2003).

Here, according to Plaintiff's allegations, Defendant
Hollenback made the allegedly defamatory statements directly to
Plaintiff on April 22, 2004.  The notice imparted by such words
was immediate.  There is no basis to apply the delayed discovery
rule to extend the statute of limitations beyond one year.
Plaintiff did not file his defamation claim until February 8,
2006, more than one year after he became aware of the statement.

The defamation claim is time-barred.

Defendant Hollenback's motion to dismiss the slander per se claim on statute of limitations grounds is **GRANTED WITH PREJUDCE.**

### 3. Counts 9-11 - Intentional Interference with Contractual Relations.

Counts nine through eleven of Plaintiff's second amended complaint allege that Defendant Hollenback intentionally interfered with Plaintiff's contractual relations. The elements of a cause of action for intentional interference with contractual relations are: (1) A valid contract; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. *Quelimane Co. v Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). As discussed above, the findings and order regarding custody/visitation is not a contract. Moreover, representing an adverse party in a dispute over a contested custody case that produced a visitation agreement that merged into a court order left no "contract" with which to interfere. Defendant Hollenback's motion to dismiss counts nine through eleven must be **GRANTED WITH PREJUDICE.**

//

//

//

//

28

**4.   Counts 12-14 - Intentional Infliction of Emotional Distress.**

Counts twelve through fourteen of the second amended complaint allege that Hollenback's conduct constitutes intentional infliction of emotional distress.  The elements of this claim are (1) outrageous conduct by the defendant; (2) defendant's intentional act causing (or reckless disregard of the probability of causing) severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.  *See Hernandez v. Gen. Adjustment Bureau*, 199 Cal. App. 3d 999, 1007 (1988).  Ordinarily, mere profanity, obscenity, abuse, indignity, insult or threats, without aggravating circumstances, is not sufficiently outrageous.  *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128-29 (1989).  However, there is authority that suggests some kinds of statements, if sufficiently outrageous or if uttered by a person in a particular position vis-a-vis the complainant, may satisfy the outrageousness requirement.

> On the spectrum of offensive conduct, outrageous conduct is that which is the most extremely offensive. Depending on the idiosyncracies of the plaintiff, offensive conduct which falls along the remainder of the spectrum may be irritating, insulting or even distressing but it is not actionable and must simply be endured without resort to legal redress....
>
> ...The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests.

*Id*. at 1129.  Whether a particular statement is sufficiently outrageous is a question of fact best decided on summary judgment

1   or at trial.  *See id.* at 1128 ("[T]he standard for judging

2   outrageous conduct does not provide a 'bright line' rigidly

3   separating that which is actionable from that which is not.

4   Indeed, its generality hazards a case-by-case appraisal of

5   conduct filtered through the prism of the appraiser's values,

6   sensitivity threshold, and standards of civility."). Plaintiff's

7   complaint satisfies the liberal notice pleading standard of

8   Federal Rule of Civil Procedure 8 with respect to the issue of

9   outrageousness.  Racially discriminatory remarks as alleged

10  satisfy the outrageousness requirement.  However, as discussed

11  above, **this claim and all the other state law claims must be**

12  **dismissed because the underlying conduct is protected by the**

13  **litigation privilege**.[6]  Moreover, Defendants argue that this and

14  the other claims are subject to California's anti-SLAPP statute,

15  the application of which would require a more stringent measure

16  of proof than normally required by Rule 8.  The negligent

17  infliction of emotional distress claim is **DISMISSED WITH**

18  **PREJUDICE.**

19  //

20  //

21  //

22  //

23

---

24        [6]     Defendant makes an alternative argument for dismissal
    concerning the harm element.  Specifically, Defendant points out
25  that Plaintiff's only claim of harm is that Defendant's conduct
    impacted his custody/visitation "contract."  Defendant argues
26  that, because there was no "contract," there can be no such harm.
    This is an overly restrictive reading of Plaintiff's complaint.
27  Whether the custody and visitation order is viewed as a contract
    or an order, Plaintiff's inability to pursue his rights under it
28  has the potential to cause him harm.

### 5.   Counts 15-22 - Negligent Infliction of Emotional Distress.

Counts 15-22 allege that Defendant's actions constituted negligent infliction of emotional distress.  Under California law, this is not a separate tort, but rather permits the recovery of emotional distress damages in the context of an otherwise valid negligence claim.  To establish a negligence claim, plaintiff must show that (1) defendant owed him a duty of care, (2) defendant breached that duty, and (3) the breach caused him (4) damages.  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.,* 48 Cal. 3d 583, 588 (1989).  Here, Plaintiff has not pled the fundamental elements of a negligence claim, nor does it appear that he could do so, as Defendant Hollenback never has been in a fiduciary relationship with Plaintiff nor is there any suggestion that Hollenback otherwise would owe Plaintiff a duty of care that would form the basis of a negligence claim.  Attorneys do not owe any duty of care to adverse third parties in a litigation.  *Weaver v. Superior Court*, 95 Cal. App. 3d 166, 178 (1979); *Parnell v. Smart*, 66 Cal. App. 3d 833, 837-38 (1977).  Moreover, the conduct alleged is intentional and wholly inconsistent with a negligence claim.

### 6.   Defendant's Argument that All of Plaintiff's State Law Claims Are Barred by Cal. Code Civ. Pro. § 340.6.

Defendant offers the additional argument that all of the state law claims raised in this case are barred by the statute of limitations contained within California Code of Civil Procedure § 340.6(a), which provides, in pertinent part:

> An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first.

Defendant suggests that this provision is not limited to causes of action against an attorney by the attorney's client.   In *Knoell v. Petrovich*, 76 Cal. App. 4th 164 (1999), a California court refused to permit a third party (i.e., a non-client) to invoke this provision to toll the statute of limitations in a defamation action.   Defendant attempts to distinguish *Knoell*, but cites no cases in support of his interpretation of the provision. In light of *Knoell* and the fact that Plaintiff's claims can be dismissed or stricken on other grounds, § 340.6 does not apply to the circumstances of this case.

In sum, all of Plaintiff's state law claims are **DISMISSED WITH PREJUDICE.**

### F.   **Defendants' Jensen and Hollenback's Motions to Strike Pursuant to California's Anti-SLAPP Statute**.

As discussed above, all of Plaintiff's state law claims have been dismissed on various grounds.   Accordingly, Defendants' motions to strike pursuant to California's anti-SLAPP Statute are **DENIED AS MOOT.**   Arguendo, the following general discussion of application of the anti-SLAPP statute is provided.

//

//

//

32

### 1. Legal Background on California's Anti-SLAPP Statute.

A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a <u>defendant</u> must make an initial *prima facie* showing that the plaintiff's suit "aris[es] from" activity protected by the anti-SLAPP statute. *Brill Media,* 132 Cal. App. 4th at 329; Cal. Code Civ. Proc. § 425.16(b)(1). A cause of action does not "arise from" protected activity simply because it is filed after protected activity took place. *Cashman*, 29 Cal. 4th at 76-77. Nor does the fact "[t]hat a cause of action arguably may have been triggered by protected activity" necessarily mean that it arises from such activity. *Cashman*, 29 Cal. 4th at 78. The trial court must instead focus on the substance of the plaintiff's lawsuit in analyzing the first prong of a special motion to strike. *Scott v. Metabolife Intern., Inc.*, 115 Cal. App. 4th 404, 413-414 (2004); *see also Cashman,* 29 Cal. 4th at 78. In performing this analysis, the California Supreme Court has stressed, "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *Cashman,* 29 Cal. 4th at 78 (emphasis in original). In other words, "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." *Id.*

If the defendant is able to make this threshold showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims. In practice, a plaintiff must show that the claim is "both legally sufficient and

1  supported by a sufficient prima facie showing of facts to sustain

2  a favorable judgment if the evidence submitted by the plaintiff

3  is credited." *Jarrow*, 31 Cal. 4th at 738.  Claims for which

4  Plaintiff is able to satisfy this burden are "not subject to

5  being stricken as a SLAPP."

6           **2.   Application to the Claims in this Case.**

7       The burden-shifting of the anti-SLAPP statute must be

8  applied to any "publication or broadcast" made in any judicial

9  proceeding.  California courts have given this privilege an

10  "expansive reach." *Rubin*, 4 Cal. 4th at 1193-94.  It extends to

11  any communication that bears "some relation to any ongoing or

12  anticipated lawsuit." *Id*. at 1194.

13  The alleged derogatory statements made by Defendant Hollenback

14  satisfy this requirement.  The burden-shifting approach must be

15  applied to the remaining state law claims in this case.

16       The state law claims in the second amended complaint are as

17  follows:

18           **Count 8:**        Slander Per Se

19           **Counts 9-11:**    Intentional Interference with
                                Contractual Relations
20

21           **Counts 12-14:**   Intentional Infliction of Emotional
                                Distress
22
             **Counts 15-22:**   Negligent Infliction of Emotional
                                Distress
23

24       All of the state law claims have already been dismissed on

25  privilege grounds.  Alternatively, Count 8 has been dismissed on

26  statute of limitations grounds, and Counts 9-11 have been

27  dismissed because there is no contract at issue here.  Counts 15-

28  22 have been dismissed because no tort action of this nature

                                **34**

exists independent of a separate negligence claim, which requires a duty of care and unintentional conduct.  Plaintiff has not and cannot plead the existence of a duty of care owed by Defendant, an opposing attorney, to Plaintiff as a party to litigation. Even if the litigation privilege did not apply, none of Plaintiff's state law claims would survive this motion to strike because Plaintiff cannot possibly establish their legal sufficiency as required under *Jarrow,* 31 Cal. 4th at 738.

Although Counts 12-14 (intentional Infliction of Emotional Distress) have been dismissed pursuant to California's litigation privilege, these claims were not analyzed separately in the context of the motion to dismiss.  These claims are analyzed under the anti-SLAPP statute.

> **3.   Counts 12-14 - Intentional Infliction of Emotional Distress Analyzed Pursuant to the Anti-SLAPP Statute's Burden Shifting Approach.**

The elements of this claim are (1) outrageous conduct by the defendant; (2) defendant's intentional act causing (or reckless disregard of the probability of causing) severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.  *See Hernandez v. Gen. Adjustment Bureau*, 199 Cal. App. 3d 999, 1007 (1988).  Ordinarily, mere profanity, obscenity, abuse, indignity, insult or threats, without aggravating circumstances, is not sufficiently outrageous.  *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1128-29 (1989).  However, there is authority that suggests some kinds of statements, if sufficiently outrageous or if uttered by a person in a particular position vis-a-vis the complainant, may satisfy the outrageousness requirement.

On the spectrum of offensive conduct, outrageous conduct is that which is the most extremely offensive. Depending on the idiosyncracies of the plaintiff, offensive conduct which falls along the remainder of the spectrum may be irritating, insulting or even distressing but it is not actionable and must simply be endured without resort to legal redress....

...The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives the defendant actual or apparent power to damage the plaintiff's interests.

*Id.* at 1129.

Whether a particular statement is sufficiently outrageous is a question of fact. *See id.* at 1128.   In the context of this anti-SLAPP motion, Plaintiff must show that the claim is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow,* 31 Cal. 4th at 738.   Claims for which Plaintiff is able to satisfy this burden are "not subject to being stricken as a SLAPP." that is appropriate for determination in an anti-SLAPP motion.   The language plaintiff alleges defendant used is unacceptable racial disparagement having no value as speech and is entitled to no protection under the law.   Such language is prima facie outrageous.

Nevertheless, because Counts 12-14 must be dismissed pursuant to California's litigation privilege, Plaintiff cannot possibly establish that these claims would be legally sufficient as is required under *Jarrow,* 31 Cal. 4th at 738.

//

//

//

G.   **Plaintiff's Motion to Strike**.

Plaintiff has filed a document entitled "Plaintiff's: Anti-SLAPP special motion to strike, [and] motion for fees (425.16(c)) which advances a number of arguments that suggest Plaintiff misunderstands the nature and effect of the anti-SLAPP statute. (Doc. 204.)

First, Plaintiff suggests that California's anti-SLAPP statute cannot be applied here because it conflicts with federal law and violates Plaintiff's own free speech rights. (*See id*. at 7-8.)  To clarify, Defendant Hollenback has moved to dismiss both the federal section 1981 claim and several of the state law allegations for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Both Defendants have also filed separate motions to strike pursuant to California's anti-SLAPP statute.  These anti-SLAPP motions to strike apply only to the state law claims.  It is Plaintiff who elected to belatedly allege state law claims in this federal forum Plaintiff correctly points out that California's anti-SLAPP statute cannot override federal civil rights law.  However, the anti-SLAPP statute is properly applied to Plaintiff's state law claims, which are governed by California law.  None of the doctrines of state law upon which Plaintiff bases his state law allegations have been preempted by federal law, nor has California's anti-SLAPP statute.  The Ninth Circuit has specifically ruled that the California's anti-SLAPP statute is not preempted by the Federal Rules of Civil Procedure and is applicable in federal cases where supplemental claims are pled under California law.  *See United States v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971 (9th

1   Cir. 1999).

2       Second, Plaintiff attempts to reverse the burden of proof by

3   calling Hollenback the "plaintiff" and referring to himself as

4   the "defendant" in the context of his own anti-SLAPP motion.

5   Doc. 204 at 20-22.  A critical element is missing with respect to

6   Plaintiff's anti-SLAPP motion -- an existing claim to strike.

7   Neither Hollenback nor Jensen have asserted any claims (let alone

8   state law claims) against Plaintiff.

9       In Plaintiff's motion to strike and related opposition

10  papers, Plaintiff has cut and pasted large portions of inapposite

11  caselaw into his filing, often providing no citation to the case

12  from which he cuts and pasts.  He has also appended various

13  arguments pertaining to the case language in hand-written text.

14  This is an extremely unorthodox and confusing method of

15  presentation, but, to the extent possible, the arguments

16  presented have been analyzed.  Plaintiff quotes extensively from

17  two cases, *Briggs v. Eden Council for Hope and Opportunity*, 19

18  Cal. 4th 1106 (1999) and *Condit v. National Enquirer, Inc.*, 248

19  F. Supp. 2d 945 (E.D. Cal. 2002).  But, Plaintiff misunderstands

20  and misapplies the holdings from these cases.

21      Plaintiff relies heavily on the extensive discussion in

22  *Briggs* of the "public issue" requirement applicable in certain

23  anti-SLAPP cases.  But, critically, *Briggs* was concerned with

24  clause (4) of subdivision (e) of the anti-SLAPP statute.  The

25  entire subdivision (e) provides:

26          As used in this section, "act in furtherance of a
            person's right of petition or free speech under the
27          United States or California Constitution in connection
            with a public issue" includes: (1) any written or oral
28          statement or writing made before a legislative,

**38**

> executive, or judicial proceeding, or any other
> official proceeding authorized by law; (2) any written
> or oral statement or writing made in connection with an
> issue under consideration or review by a legislative,
> executive, or judicial body, or any other official
> proceeding authorized by law; (3) any written or oral
> statement or writing made in a place open to the public
> or a public forum in connection with an issue of public
> interest; (4) or any other conduct in furtherance of
> the exercise of the constitutional right of petition or
> the constitutional right of free speech in connection
> with a public issue or an issue of public interest.

Cal. Code Civ. Pro. § 425.16(e).

Here, by contrast, clause (2) concerning written or oral statements made in connection with an issue under consideration by a judicial body, is implicated. *Briggs* specifically noted that the California legislature "thought it unnecessary to add an 'issue of public interest' limitation to these clauses." *Id*. at 1122-23. Therefore, whatever the subject matter of the litigation, any written or oral statements made in connection with an issue under consideration or review by a judicial body are covered by the anti-SLAPP statute. There is no requirement that the subject matter be one of public interest. *Condit* similarly concerned interpretation of section 425.16(e)(3) and (4).

**V.   CONCLUSION**

For the reasons set forth above:

(1)   Plaintiff's motion for leave to file his proposed third amended complaint is **DENIED**;

(2)   Defendant Jensen's motion to strike her as a defendant from the operative second amended complaint is **GRANTED**;

1   (3) Defendant Hollenback's motion to dismiss is **GRANTED** as

2     to all claims (federal and state).

3   (4) Defendant Hollenback's motion to strike is **DENIED AS**

4     **MOOT.**

5  Plaintiff shall have one <u>final</u> opportunity to frame a

6 complaint under 42 U.S.C. §§ 1985 and 1986 in accordance with

7 this decision.  Any amended complaint must be filed within **twenty**

8 **(20)** days following the date of service of this order.

9

10 **SO ORDERED.**

11 Dated: June 2, 2006

12        /s/ OLIVER W. WANGER

13       _____

14         **Oliver W. Wanger**
         **UNITED STATES DISTRICT JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**40**