FILED

AUG 2 4 2006

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
            DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN JONES, JR., <br><br>         Plaintiff, <br><br>   v. <br><br> MICHAEL A. TOZZI et al., <br><br>         Defendants. | 1:05-CV-0148 OWW DLB <br><br> MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT |

### I.   INTRODUCTION

Before the court for decision is yet another round of potentially dispositive motions in this case.  Defendant Hollenback moves to dismiss Plaintiff's fifth amended complaint, or, in the alternative, for summary judgment on all of Plaintiff's claims.  (Doc. 235.)

### II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a child custody dispute between Plaintiff and Kea Chhay, the mother of Plaintiff's minor child. The case was first filed in Santa Clara Superior Court, but was later transferred to Stanislaus County.  Additional factual background concerning the state proceedings is set forth in

1

various memorandum opinions in this case and related cases.[1]

Plaintiff filed his initial complaint on February 3, 2005. (Doc. 1.)  Then, prior to the filing of any responsive pleading by Defendant, Plaintiff filed a first amended complaint on March 3, 2005.  (Doc. 7.)  The first amended complaint named as defendants:  Michael A. Tozzi, the Executive Officer of Stanislaus County Superior Court; Superior Court Judge Marie Sovey-Silveria; and attorneys Leslie Jensen and John Holenback.

Defendants Tozzi and Silveria moved to dismiss on March 9, 2005.  (Doc. 8.)  Plaintiff opposed this motion (Doc. 13, filed Mar. 14, 2005), and moved for default judgment against Defendants Jensen and Hollenback.  (Doc. 14, filed Mar. 14, 2005.)  Plaintiff then (improperly) filed an additional "counter motion" in opposition to Defendants Tozzi and Silveria's motion to dismiss, along with a motion to amend the complaint a second time.  (Doc. 16, filed Mar. 24, 2005.)  Four days later, on March 28, 2005, Plaintiff lodged yet another "second amended complaint" to "supercede" the second amended complaint that was attached to his motion for leave to amend.  (Doc. 19, filed Mar. 28, 2005.)

On March 18, 2005, an order issued dismissing Plaintiff's related case, *Jones v. Strangio*.  (*See* Doc. 72, 1:04-cv-06567.)  In light of that dismissal, the district court ordered Plaintiff to show cause why <u>this</u> case should not be dismissed as well. (Doc. 18, filed Mar. 29, 2005.)  Plaintiff responded to the order to show cause on April 20, 2005.  (Doc. 29.)  At the same time,

---

[1]     *See Jones v. California*, 1:04-CV-065676; *Jones v. Strangio*, 1:04-CV-06567; and *Jones v. Strangio*, 1:05-CV-00410.

2

Plaintiff filed yet another (third) proposed amended complaint intended to supercede the complaint lodged on March 28, 2005. (*See* Proposed "Second Amended Complaint" lodged Apr. 20, 2005.) This complaint contained numerous new allegations that Defendants made racially derogatory remarks to Plaintiff as part of a conspiracy to violate his constitutional rights in contravention of 42 U.S.C. §§ 1981, 1985, and 1986.

A memorandum decision and order dated May 11, 2005 dismissed all claims against Defendants Tozzi and Silveria on immunity grounds, denied Plaintiff's motion for default judgment against Defendants Jensen and Hollenback, and denied Plaintiff's motion for leave to amend the complaint a second time.  (Doc. 47.)

On June 22, 2005, Defendants Jensen and Hollenback's motion to dismiss was granted, affording Plaintiff one final opportunity to amend the complaint.  (Doc. 61.)  A separate memorandum decision, dated June 29, 2005, denied Plaintiff's April 9, 2005 motion for sanctions.  (Doc. 65.)  On July 6, 2005, Plaintiff voluntarily dismissed Defendant Jensen from the case.  (Doc. 66.) Plaintiff then filed a second amended complaint alleging that Defendant Hollenback directed racially derogatory remarks to Plaintiff with the goal of deterring Plaintiff's participation in legal proceedings related to Plaintiff's family law case.  (*See* Doc. 67, filed July 6, 2005.

Defendant Hollenback moved to dismiss the second amended complaint on a variety of grounds.  (Doc. 78, filed Sept. 8, 2005.)  Defendant Hollenback also moved for sanctions, alleging that Plaintiff made false statements in his amended complaint. (Doc. 91, filed Sept. 27, 2005.)  Both motions were denied.

3

1 │ (Doc. 103.)

2 │     Plaintiff filed a motion for summary judgment.  (Doc. 104,
3 │ filed Oct. 31, 2005.)  Defendant failed to timely file an
4 │ opposition.  The court then issued a warning to Defendant about a
5 │ litigant's obligation to file an opposition or statement of non-
6 │ opposition at least fourteen days prior to the hearing pursuant
7 │ to Local Rule 78-230(c).  (Doc. 118.)  Defendant filed a proposed
8 │ opposition along with a request for leave to late-file the
9 │ opposition.  (Doc. 120, filed Dec. 5, 2005.)  Plaintiff objected
10 │ to granting Defendant leave to file this opposition and submitted
11 │ that he is entitled to judgment as a matter of law.  (Docs. 115,
12 │ 116, 119, 128 & 129.)  Plaintiff continued to insist on a speedy
13 │ trial.

14 │     A hearing on the motion for summary judgment was held
15 │ December 12, 2005.  The district court granted Defendant's
16 │ request to late file-his opposition and denied Plaintiff's motion
17 │ for summary judgment, but granted Plaintiff's motion for leave to
18 │ amend the complaint to add state law claims.  (Doc. 185, filed
19 │ February 15, 2006.)

20 │     Plaintiff filed his second amended complaint on February 8,
21 │ 2006 (Doc. 182.), alleging that Defendant Hollenback became
22 │ involved with Plaintiff's family law dispute in December 2003 as
23 │ counsel for Ms. Chhay.  (Doc. 67 at ¶44.)  Plaintiff filed
24 │ contempt charges against Ms. Chhay in early 2004 to enforce a
25 │ court order.  (Id. at ¶ 45.)  Plaintiff alleges that on April 22,
26 │ 2004, Defendant Hollenback told Plaintiff that he "called the
27 │ Stanislaus County Housing Authority and told them what a lazy
28 │ low-life black piece of shit you are...you get nigger justice."

1    (*Id.* at ¶ 47.)   Plaintiff also alleges that "after the child

2    support trial and out of court" Defendant Hollenback stated that

3    "he would knock the teeth out of his black greasy face...and

4    rattle them out of his jive-monkey ass if he showed up for the

5    contempt hearings."   (*Id.* at ¶48.)   Plaintiff asserts that "as a

6    direct and proximate cause of the defendant's threats, [he]

7    withdrew [the] contempt charges...."   (*Id.* at ¶51.)   The

8    complaint further alleges that the statute of limitations on the

9    contempt charges expired in July 2004.   (*Id.* at ¶54.)   As a

10   result, "Mr. Jones' access to the judicial system was deprived."

11   (*Id.*)

12       The second amended complaint alleged that Defendant's

13   alleged conduct deprived Plaintiff of his civil rights in

14   violation of 42 U.S.C. § 1981 and also included included a number

15   of state law claims (Slander Per Se, Intentional Interference

16   with Contractual Relations, Intentional Infliction of Emotional

17   Distress, and Negligent Infliction of Emotional Distress).

18   Plaintiff included Leslie Jensen as a defendant in many of the

19   claims in the second amended complaint, without first obtaining

20   leave to reinstate Leslie Jensen as a defendant.

21       Plaintiff at one point presented an affidavit from his

22   mother, Rosalind Jones.   (Doc. 108.)   Ms. Jones's statements in

23   the affidavit corroborate Plaintiff's accusations that Hollenback

24   made racially derogatory statements to Plaintiff.   (*Id.* at 3.)

25   Defendant sought to conduct further discovery regarding Ms.

26   Jones' statements.   Throughout December 2005 and January 2006,

27   the parties engaged in formal discovery disputes over the method,

28

                                    5

timing, and circumstances of any such discovery.  As is the
normal practice in this district, these discovery disputes were
heard before a United States Magistrate Judge, in this case, the
assigned Magistrate Judge, Dennis L. Beck.  After a hearing on
February 3, 2006, Judge Beck issued an order denying Plaintiff's
motion for a protective order and granting Defendant's motion to
compel Ms. Jones to participate in an oral deposition.  (Doc.
181, filed February 8, 2006.)  Shortly after the adverse ruling,
Plaintiff moved to recuse Judge Beck from participating in this
case.  (*See* Doc. 179.)

A few weeks after filing his second amended complaint,
Plaintiff moved yet again for leave to amend, again alleging
federal and state law claims against both Hollenback and Jensen.
(*See* Doc. 190, third amended complaint, filed Feb. 22, 2006.)

Defendant Hollenback moved to dismiss all the claims in the
second amended complaint (Docs. 191 & 2), and Defendant Jensen
objected to being reinstated as a defendant after her dismissal.
(Doc. 209.)  Both Defendants moved to strike all of the state law
claims pursuant to California's anti-slapp statute.  (Docs 194 &
197.)  Plaintiff opposed the motions to dismiss and to strike,
and asserted his own anti-slapp motion to strike.  A memorandum
decision and order dated June 2, 2006 (1) denied Plaintiff's
motion for leave to file his third amended complaint; (2) granted
Defendant Jensen's motion to strike her as a defendant from the
operative second amended complaint; (3) granted Defendant
Hollenback's motion to dismiss all the claims in the case
(federal and state); (4) and denied as moot the motions to
strike.  (Doc. 228.)  Plaintiff was given "one <u>final</u> opportunity

6

1   to frame a complaint under 42 U.S.C. § 1985 and 1986."   (*Id.*)

2       Plaintiff filed his fifth amended complaint ("FAC") on June
3   13, 2006, which is summarized below.  (Doc. 230.)  Plaintiff then
4   moved to set a scheduling conference and set that motion for
5   hearing on July 17, 2006.  (Doc. 19, 2006.)  Subsequently,
6   Defendant Hollenback moved to dismiss the FAC on numerous grounds
7   or, in the alternative, for summary judgment.  (Doc. 234, filed
8   June 29, 2006.)  Plaintiff opposes the motion to dismiss, arguing
9   that he has satisfied the pleading requirements.  Plaintiff also
10  opposes summary judgment with his own affidavits, but he requests
11  that decision on the motion for summary judgment be delayed until
12  he has had an opportunity to conduct discovery.  No party clearly
13  explains the extent of discovery that has taken place thus far,
14  although the record appears to indicate that Plaintiff has at
15  least served some requests for admissions on Defendant
16  HOllenback.  Plaintiff represented during oral argument that in
17  the one and one-half years this case has been pending he has not
18  yet taken adequate discovery because (1) he only recently
19  advanced the specific legal theory upon which his claims now rest
20  and (2) he lacks the financial capacity to pursue certain forms
21  of discovery. (*See* Doc. 243, Ex. D.)

22

23

24      **III.   SUMMARY OF THE OPERATIVE FIFTH AMENDED COMPLAINT**

25      Plaintiff's FAC appears to allege that Defendant Hollenback
26  participated in four separate conspiracies, along with various
27  other individuals, to deprive Plaintiff of his civil rights in
28  violation of 42 U.S.C. §§ 1985 and 1986.  Three of the alleged

7

1  conspiracies are at least tangentially related to Plaintiff's
2  efforts to litigate in state court (the "state court
3  conspiracies"; the fourth is distinct, in that it alleges a
4  conspiracy to impede access to federal court (the "federal court
5  conspiracy").

6       First, Plaintiff describes an alleged conspiracy between
7  Hollenback and Leslie Jensen.  (FAC, ¶¶ 45-58.)  It is not easy
8  to determine the nature of the alleged conspiracy from the text
9  of the complaint, but it appears that Plaintiff is asserting
10 that, together, Jensen and Hollenback through threats and
11 intimidation: (a) impeded Plaintiff's access to state court,
12 (b) impeded his ability to pursue his rights under the custody
13 order issued by the Stanislaus Court, and (c) impeded his ability
14 to apply for employment with the Stanislaus County Housing
15 Authority.  Specifically, Plaintiff alleges that Hollenback told
16 Plaintiff that "[Hollenback] called the Stanislaus County Housing
17 Authority," where plaintiff had recently applied for employment
18 "and told them what a lazy low life black piece of shit
19 [Plaintiff is]" and exclaimed "you get nigger justice."  (FAC at
20 ¶47.)  Plaintiff further alleges that Hollenback threatened that
21 "he would knock the teeth out of his black greasy face...and
22 rattle them out of his jive-monkey ass if he showed up for the
23 contempt hearings."  (Id.)  Separately, Plaintiff alleges that
24 Ms. Jensen threatened that Plaintiff would "get his black ass
25 kicked if he continued to make trouble for the court and if
26 Plaintiff continued with the contempt proceedings."  (Id.)
27 Plaintiff alleges that there is circumstantial evidence that
28 Hollenback and Jensen conspired with one another to intimidate

1  him.   Specifically, Plaintiff notes that Hollenback and Jensen
2  have been colleagues practicing before the Stanislaus Superior
3  Court for many years.  Plaintiff also alleges that Hollenback and
4  Jensen contracted with one another to cover each other's court
5  appearances.

6      Next, Plaintiff alleges that Hollenback conspired with state
7  courtroom bailiff Jane Doe.  (*Id.* at ¶52.)  Specifically,
8  Plaintiff asserts that he heard Hollenback tell the bailiff that
9  Plaintiff was a "low life black."  The bailiff apparently became
10 agitated as a result.  However, Jones asserts that he continued
11 with his scheduled hearing after reassuring the bailiff that he
12 was "not a low life black."

13      In the final purported state court conspiracy, Plaintiff
14 names as co-conspirators various individuals who were previously
15 named as Defendants in this case.  He alleges that Michael Tozzi
16 (the Executive Officer of the Stanislaus County Superior Court),
17 Steven Carmichael (the Court appointed Evaluator), Don Strangio
18 (the Court appointed Family Law Mediator), Ms. Jensen, the "Jane
19 Doe" bailiff from the April 22, 2004 hearing, and Marie
20 Sovey-Silveria  (the Family Law Judge who issued the December 10,
21 2002 cusody order), agreed to deprive Plaintiff of the
22 opportunity to access state court and to pursue his rights under
23 a custody order entered by the Stanislaus court.  Plaintiff also
24 alleges a separate conspiracy involving all of these individuals
25 to retaliate against him.  Plaintiff alleges that Tozzi,
26 Silveria, Strangio, and Carmichael all conspired to aid in
27 planning this conspiracy and in concealing the existence of the
28 conspiracy.  (*Id.* at ¶81.)  More specifically, Plaintiff alleges

9

1  (a) that Carmichael acted in furtherance of the conspiracy when
2  he commented that Whites and Asians are "better at education than
3  Blacks;" and (b) that Tozzi contributed to the conspiracy by
4  failing to comply with a subpoena sent to him by Plaintiff.  No
5  specific factual allegations are made with regard to Silveria or
6  Strangio.[2]

7    Finally, Plaintiff describes a conspiracy between
8  Hollenback, Leslie Jensen, and Lonnie Ashlock to impede
9  Plaintiff's ability to access federal court.  (Id. at ¶59-68.)
10  Apparently, Plaintiff and Lonnie Ashlock were parties to several
11  real estate agreements, including an a rental agreement and an
12  agreement pursuant to which Plaintiff sold a house to Ashlock.
13  Leslie Jensen admits that she has served as Lonnie Ashlock's
14  attorney on many occasions.  Plaintiff asserts that Mr. Ashlock
15  threatened Plaintiff that if Plaintiff did not drop his
16  litigation against Jensen he would "not pay him one cent"
17  pursuant to the house sale.  Plaintiff was later evicted from his
18  residence and now asserts that this eviction was in retaliation
19  for Plaintiff's legal actions and in furtherance of the
20  "conspiracy."  Plaintiff claims that Ms. Jensen made
21  misrepresentations to the Court in an effort to "conceal" this
22  perceived "conspiracy."  The Complaint does not clearly explain

23

24    [2]    Plaintiff reiterates essentially the same fact pattern
25  in support of a separate conspiracy between Hollenback, Tozzi,
    Strangio, Carmichael, Jensen, and Silveria, to "impede his access
26  to petition the state court," and notes that the right to
    petition is one aspect of an individuals First Amendment right to
27  free speech.  (Id. at 84-91.)  It appears that Plaintiff is
    attempting to articulate several different theories of liability
28  for the same conduct.

1 | how Hollenback was involved in this conspiracy and the only
2 | stated explanation of Hollenback's wrongful conduct was "his
3 | apparent silence" about the alleged "conspiracy."  (*Id.* at ¶67.)
4 |
5 |                    **IV.   STANDARDS OF REVIEW**
6 |     **A.   Motion to Dismiss.**
7 |         In deciding whether to grant a motion to dismiss, a court
8 | must "take all of the allegations of material fact stated in the
9 | complaint as true and construe them in the light most favorable
10 | to the nonmoving party."  *Rodriguez v. Panayiotou*, 314 F.3d 979,
11 | 983 (9th Cir. 2002).  In general, "a *pro se* complaint will be
12 | liberally construed and will be dismissed only if it appears
13 | beyond doubt that the plaintiff can prove no set of facts in
14 | support of his claim which would entitle him to relief."  *Pena v.*
15 | *Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).  However, "a liberal
16 | interpretation of a [pro se] complaint may not supply essential
17 | elements of the claim that were not initially pled."  *Id.*
18 |
19 |     **B.   Motion for Summary Judgment**
20 |         Summary judgment is warranted only "if the pleadings,
21 | depositions, answers to interrogatories, and admissions on file,
22 | together with the affidavits, if any, show that there is no
23 | genuine issue as to any material fact."  Fed. R. Civ. Pro. 56(c);
24 | *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).
25 | Therefore, to defeat a motion for summary judgment, the non-
26 | moving party must show (1) that a genuine factual issue exists
27 | and (2) that this factual issue is material.  *Id.*  A genuine
28 | issue of fact exists when the non-moving party produces evidence

on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.   *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).   The evidence must be viewed in a light most favorable to the nonmoving party. *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products, Inc.*, 268 F.3d 639, 644 (9th Cir. 2001), *amended by* 2001 WL 1490998 (9th Cir. 2001).   Facts are "material" if they "might affect the outcome of the suit under the governing law." *Campbell*, 138 F.3d at 782 (quoting *Liberty Lobby, Inc.*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).   If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).   However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.  *Triton Energy Corp.*, 68 F.3d at 1221.   The nonmoving party cannot simply rest

**12**

on its allegations without any significant probative evidence
tending to support the complaint.  *Devereaux*, 263 F.3d at 1076.

> [T]he plain language of Rule 56(c) mandates the
> entry of summary judgment, after adequate time
> for discovery and upon motion, against a party
> who fails to make a showing sufficient to
> establish the existence of an element essential
> to the party's case, and on which that party
> will bear the burden of proof at trial.  In such
> a situation, there can be "no genuine issue as
> to any material fact," since a complete failure
> of proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

"In order to show that a genuine issue of material fact
exists, the nonmoving party must introduce some 'significant
probative evidence tending to support the complaint.'"  *Rivera v.
AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) (quoting *Liberty
Lobby, Inc.*, 477 U.S. at 249).  If the moving party can meet his
burden of production, the non-moving party "must produce evidence
in response....[H]e cannot defeat summary judgment with
allegations in the complaint, or with unsupported conjecture or
conclusory statements."  *Hernandez v. Spacelabs Med., Inc.*, 343
F.3d 1107, 1112 (9th Cir. 2003).  "Conclusory allegations
unsupported by factual data cannot defeat summary judgment."
*Rivera*, 331 F.3d at 1078 (citing *Arpin v. Santa Clara Valley
Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)).

The more implausible the claim or defense asserted by the
nonmoving party, the more persuasive its evidence must be to
avoid summary judgment.  *See United States ex rel. Anderson v. N.
Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless,
"[t]he evidence of the non-movant is to be believed, and all
justifiable inferences are to be drawn in its favor."  *Liberty

13

1  *Lobby, Inc.*, 477 U.S. at 255.  A court's role on summary judgment
2  is not to weigh evidence or resolve issues; rather, it is to find
3  genuine factual issues.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d
4  407, 410 (9th Cir. 1996).

## V.   DISCUSSION

### A.   Legal Background.

Plaintiff alleges that the various conspiracies described in
the complaint violate provisions of 42 U.S.C. § 1985 as well as
42 U.S.C. § 1986.

Section 1985 prohibits several forms of conspiracies to
deprive individuals of the rights and privileges held by a
citizen of the United States.  The provision states in its
entirety:

> (1) Preventing officer from performing duties
>
> If two or more persons in any State or Territory
> conspire to prevent, by force, intimidation, or threat,
> any person from accepting or holding any office, trust,
> or place of confidence under the United States, or from
> discharging any duties thereof; or to induce by like
> means any officer of the United States to leave any
> State, district, or place, where his duties as an
> officer are required to be performed, or to injure him
> in his person or property on account of his lawful
> discharge of the duties of his office, or while engaged
> in the lawful discharge thereof, or to injure his
> property so as to molest, interrupt, hinder, or impede
> him in the discharge of his official duties;

//
//
//
//

14

(2) Obstructing justice; intimidating party, witness, or juror

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

15

1    Sub-section 1985(1), which deals with conspiracies to impede
2  federal officials in the performance of their official duties is
3  not implicated by Plaintiff's complaint.

4    Plaintiff does allege claims under both clauses of
5  § 1985(2).  Plaintiff alleges that the first clause of § 1985(2)
6  which concerns conspiracies to obstruct justice in the federal
7  courts, was violated by the purported threats made by Jensen
8  through Lonnie Ashlock.  The First Clause of § 1985(2) makes it
9  unlawful:

10              If two or more persons in any State or Territory
            conspire to deter, by force, intimidation, or threat,
11              any party or witness in any court of the United States
            from attending such court, or from testifying to any
12              matter pending therein, freely, fully, and truthfully,
            or to injure such party or witness in his person or
13              property on account of his having so attended or
            testified...
14
15  42 U.S.C. § 1985(2).  To ultimately prevail on such a claim, a
    Plaintiff must demonstrate the existence of (1) a conspiracy, (2)
16
    to deter testimony in a federal court by force or intimidation,
17
    and (3) injury to the plaintiff.  *Brever v. Rockwell Intern.*
18
    *Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994).
19
20    Plaintiff alleges that several of the other purported
    conspiracies constitute violations of the second clause of
21
    § 1985(2), which applies to conspiracies to obstruct the due
22
    course of justice in any State.  Specifically, § 1985(2) makes it
23
    unlawful for:
24
25              two or more persons [to] conspire for the purpose of
            impeding, hindering, obstructing, or defeating, in any
26              manner, the due course of justice in any State or
            Territory, with intent to deny to any citizen the equal
27              protection of the laws, or to injure him or his
            property for lawfully enforcing, or attempting to
28              enforce, the right of any person, or class of persons,
            to the equal protection of the laws;

16

1   The clause is actually divided into two separate sub-clauses, the
2   first applying to conspiracies to impede the due course of
3   justice in any state with the intent to deny to any citizen the
4   equal protection of the laws, the second applies to conspiracies
5   to injure a person for enforcing, or attempting to enforce, the
6   right of any person to the equal protection of the laws.   To
7   prove a claim under either sub-clause, a plaintiff must
8   demonstrate racial animus.   *Bretz v. Kelman*, 773 F.2d 1026 (9th
9   Cir. 1985).   Therefore, to ultimately prevail on such a claim,
10  Plaintiff must establish

11        (1) a conspiracy,

12        (2) motivated by race or class-based animus,

13        (3) either to

14                (a)   impede, hinder, obstruct, or defeat, the due

15                      course of justice in any state, with the

16                      intent to deny any citizen the equal

17                      protection of the laws.

18                (b)   to injure a citizen for enforcing or

19                      attempting to enforce the right of any

20                      citizen to the equal protection of the laws.

21

22        Plaintiff's complaint also purports to state claims under
23  § 1985(3), entitled "depriving persons of rights or privileges."
24  Section 1985(3) is divided into three parts.   The first part
25  prohibits conspiracies to deprive "any person or class of persons
26  of the equal protection of the laws or of equal privileges and
27  immunities under the laws."   42 U.S.C. § 1985(3).[3]   The second

28        [3]   The first clause of § 1985(3) provides:

17

part prohibits conspiracies to interfere with federal elections, *see generally* Bretz , 773 F.2d at 1028 n.3, and is not implicated in this case.   The third clause provides a cause of action in federal court for the victim of conspiracies prohibited by § 1985(3).

As is the case with the second clause of § 1985(2), to state a claim under the first part of § 1985(3) (conspiracies to deprive an individual of equal protection of the laws or equal privileges and immunities), plaintiff must show "discriminatory animus."   In other words, Plaintiff must allege that the conspiracy was motivated by racial discrimination.   *Griffen v. Breckenridge*, 403 U.S. 88, 101-102 (1971); *see also Kush v. Rutledge*, 460 U.S. 719, 725 (1983).   In addition, Plaintiff must allege (1) a conspiracy, (2) to deprive any person (or class of persons) of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act performed by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or a deprivation of any right or privilege of a citizen of the United States.   *Griffen*, 403 U.S. at 102-103.

Finally, Plaintiff alleges that Hollenback's conduct also violated 42 U.S.C. § 1986, which establishes a private right of

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws....

1  action for damages against a person who knowingly failed to
2  prevent a § 1986 conspiracy.  To prevail on a Section 1986 claim
3  Plaintiff must show that: "(1) the defendant had actual knowledge
4  of a § 1985 conspiracy; (2) the defendant had the power to
5  prevent or aid in preventing the commission of a § 1985
6  violation; (3) the defendant neglected or refused to prevent a §
7  1985 conspiracy; and (4) a wrongful act was permitted."  *Clark v.*
8  *Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).  A successful § 1986
9  claim depends on "proof of actual knowledge by a defendant of the
10  wrongful conduct."  *Brandon v. Lotter*, 157 F.3d 537, 539 (8th
11  Cir. 1998).  If Plaintiff fails to state a claim under § 1985,
12  there can be no liability under § 1986.  *Dacey v. Dorsey*, 568
13  F.2d 275, 277 (2d Cir. 1977).

14

15          **B.    Motion to Dismiss the § 1985 and § 1986 Claims.**

16          Defendant Hollenback moves to dismiss the claims in the FAC
17  on a variety of grounds.  As a threshold matter, Defendant argues
18  that all of the claims are barred by the statute of limitations.
19  Defendant also maintains that Plaintiff has still not complied
20  with the Ninth Circuit's heightened pleadings standard for
21  conspiracy claims.  In the alternative, assuming Plaintiff's
22  claims satisfy the heightened pleading standard, Defendant argues
23  that the none of the allegations state a valid claim under the
24  federal civil rights statutes.

25  //
26  //
27  //
28  //

19

1          **1.    Statute of Limitations.**

2              **a.    *Section 1985 Claim.***

3          Federal courts in California apply California's statue of

4    limitations for personal injury actions to claims brought under

5    § 1985.  *See Wilson v. Garcia*, 471 U.S. 261, 269 (1985); *McDougal*

6    *v. County of Imperial*, 942 F.2d 668, 670 (9th Cir. 1991)(applying

7    California's personal injury limitations period to claims brought

8    under § 1983 and § 1985).  The personal injury statute of

9    limitations in California is two years.  Cal. Code Civ. Pro.

10   § 335.1.[4]  Federal law determines the date on which the

11   limitations period begins to run.  *Cline v. Brusett,* 661 F.2d

12   108, 110 (9th Cir. 1981).

13         In this case, Plaintiff's FAC, filed on June 13, 2006,

14   alleges conduct beginning in 2002 and ranging to the end of 2005.

15   The nature of the alleged conduct can be broken down into two

16   categories.  First, there is conduct pertaining to the

17   conspiracies allegedly aimed at interfering with Plaintiff's

18   access to the state judicial system and to employment with the

19   Stanislaus Housing Authority.  The latest specific date contained

20   within the Complaint regarding these conspiracies appears to be

21   April 22, 2004, the date on which it is alleged that Defendant

22   Hollenback made various derogatory threats to Plaintiff and

23   similar derogatory remarks concerning Plaintiff to bailiff Jane

24   Doe at the conclusion of a hearing in state court.  Second, the

25

26

27         [4]    Prior to January 1, 2003, California's personal injury
     statute of limitations was one year.   Defendant does not dispute
28   that it is the two year limitations period that applies in this
     case, as the bulk of the allegedly wrongful conduct occurred
     after January 1, 2003.

                                    **20**

1  complaint alleges conduct related to the alleged conspiracy to
2  impede Plaintiff's access to this court.  The latest date
3  mentioned in this context is December 2005, when "Ashlock refused
4  to honor his agreement with Mr. Jones relating to $27,000 owed to
5  Mr. Jones."  (FAC at 67.)

6       As to the federal court conspiracy, as alleged, the statute
7  of limitations does not expire until December 2007.  That claim
8  was timely filed.  The earlier conspiracy, however, requires a
9  closer examination of the limitations issue.  The Ninth Circuit
10 generally applies the "last overt act" test in determining when a
11 cause of action for conspiracy to deny civil rights accrues.[5]
12 See Venegas v. Wagner, 704 F.2d 1144, 1146 (9th Cir. 1983).  The
13 "last overt act" test is an application of the general rule that
14 a cause of action accrues when a plaintiff learns of the injury
15 and its cause.  Id. (claim based upon conspiracy to conduct an
16 unconstitutional search accrues on the date of the search).

17      Here, with respect to the earlier conspiracy to impede
18 access to state court and to employment opportunities, the last
19 date mentioned in the complaint that is arguably an allegation of
20 an overt act was April 22, 2004.  On that date Plaintiff was
21 aware of his injury and of its cause.  Accordingly, the
22 limitations period on that claim would have expired on April 22,
23 2006.  Unless Plaintiff's June 13, 2006 FAC relates back to an
24 earlier complaint, the claims may be time-barred.

25

26      [5]    The Ninth Circuit has departed from this approach in
        cases where the alleged conduct "taint[s] or distort[s] the
27      integrity of the truth-finding process and thus den[ies] a fair
        trial."  Venegas, 704 F.2d at 1146.  In those cases, the primary
28      injury "is the wrongful conviction and resulting incarceration,"
        and, as such, the claim does not accrue until the individual is
        incarcerated.  Id.

21

1   Defendant asserts that the FAC should not relate back "to
2   one of the numerous Complaints filed in this case, all of which
3   raised different theories of liability (§ 1983, § 1981, and state
4   torts) from what is now alleged (§ 1985 and § 1986)."   (Doc. 245
5   at 8.)   But, Defendant misunderstands the relation-back test as
6   it is applied in the federal system.   Relation back is governed
7   by Federal Rule of Civil Procedure 15(c), which provides:

8           An amendment of a pleading relates back to the date of
            the original pleading when
9
10      (1)  relation back is permitted by the law that
             provides the statute of limitations applicable to
11           the action, or
        (2)  the claim or defense asserted in the amended
12           pleading arose out of the conduct, transaction, or
             occurrence set forth or attempted to be set forth
13           in the original pleading, or
        (3)  the amendment changes the party or the naming of
14           the party against whom a claim is asserted if the
             foregoing provision (2) is satisfied and, within
15           the period provided by Rule 4(m) for service of
             the summons and complaint, the party to be brought
16           in by amendment (A) has received such notice of
             the institution of the action that the party will
17           not be prejudiced in maintaining a defense on the
             merits, and (B) knew or should have known that,
18           but for a mistake concerning the identity of the
             proper party, the action would have been brought
             against the party.
19

20   (emphasis added).   Here, the issue is not whether the particular
21   statutory basis now asserted was previously raised.   Rather, the
22   question is whether "the claim or defense asserted in the amended
23   pleading arose out of the conduct, transaction, or occurrence set
24   forth or attempted to be set forth in the original pleading."
25   Fed. R. Civ. Pro. 15 (c)(2).

26   Even a cursory review of the record reveals that earlier-
27   filed complaints alleged the same course of conduct now alleged
28   to be in furtherance of a conspiracy between Hollenback, Jensen,

22

and various other Stanislaus county officials.  Plaintiff's
initial complaint, filed on February 3, 2005, mentions threats
made by Defendant Hollenback against Plaintiff in connection with
a January 22, 2004 hearing and alleges that Hollenback unduly
interfered with Plaintiff's job search in a harassing manner on
March 29, 2004.  (Doc. 1 at ¶¶ 27 & 32.)  Similar allegations are
made in Plaintiff's first amended complaint, filed March 3, 2005.
(Doc. 7 at ¶¶ 27 & 32.)  Both these early complaints mention the
existence of a "conspiracy" involving Hollenbeck.  The numerous
complaints filed (properly and improperly) thereafter were
arguably part of Plaintiff's ongoing efforts to comply with
federal pleading requirements by elaborating upon the alleged
conduct and identifying the proper legal basis for his claims.
The claims now asserted arose out of the conduct alleged in these
two timely-filed complaints.

The motion to dismiss on statute of limitations grounds is
**DENIED**.  The most recent amended complaint relates back to the
February 3, 2005 complaint

### b.   *1986 Claim.*

Plaintiff's 1986 claims require a different statute of
limitations analysis.  Section 1986 specifically provides that
"no action under the provisions of this section shall be
sustained which is not commenced within one year after the cause
of action has accrued."  As discussed, Plaintiff's allegations
regarding the federal court conspiracy date to December 2005.
Any § 1986 claim based upon that conspiracy would not expire
until December 2006.  However, the allegations regarding the

conspiracy between Hollenback, Jensen, and other Stanislaus Officials, accrued at the latest, on April 22, 2004. Based on this date, the one year § 1986 statue of limitations expired on April 22, 2005, absent relation-back. Plaintiff's initial complaint, filed on February 3, 2005, describes threats made by Defendant Hollenback against Plaintiff in connection with a January 22, 2004 hearing and alleged that Hollenback unduly interfered with Plaintiff's job search in a racially harassing manner on March 29, 2004. (Doc. 1, paras. 27 & 32.) This complaint precedes the expiration of the § 1986 limitations period. The motion to dismiss this claim on limitations grounds is **DENIED**.

**2. Has Plaintiff Properly Pled His Conspiracy Claims?**

Defendant argues that Plaintiff's claims should be dismissed both because he has failed to plead all of the elements of the claims asserted and because he has failed to satisfy the heightened pleading standard for conspiracy claims applied in the Ninth Circuit.

As a threshold matter, Defendant again exhibits a misunderstanding of the pleading requirements in federal court. In the portion of Defendant's motion that requests dismissal for failure to state a claim, defendant repeatedly cites to legal standards that set forth the burden of proof that is required on summary judgment or at trial. For example, with respect to Plaintiff's federal court conspiracy claim, Defendant cites *Rutledge v. Arizona Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988). But, *Rutledge* was decided on summary judgment. The

24

1  language cited by Defendant from that case is the Ninth Circuit's
2  articulation of the standard of proof that applies to claims on
3  the merits, not the pleading standard that should apply on a
4  motion to dismiss.  Defendant again makes this mistake in his
5  challenge to Plaintiff's state law conspiracy allegations, citing
6  to *United Brotherhood of Carpenters and Joiners of America, Local*
7  *610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983), for a
8  standard that applies on the merits, not at the pleading stage.

9      As a general rule, plaintiffs in federal court are not
10 required to plead the elements of a prima facie civil rights
11 case.  *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512
12 (2002).  Plaintiffs are simply required to provide "a short and
13 plain statement of the claim" to give the defendants fair notice
14 of what the claim is and the grounds upon which it is based.  *Id.*
15 Although Plaintiff does not have to plead the elements of a prima
16 facie case under section 1985, all of the claims set forth in the
17 FAC are conspiracy allegations, which may be subject to a
18 somewhat heightened pleading standard in the Ninth Circuit.

19     As a threshold matter, some of the cases cited by Defendant
20 call into question the continued validity of the heightened
21 pleading standard in conspiracy cases.  Defendant cites *Branch v.*
22 *Tunnell*, 14 F.3d 449, 452 (9th Cir. 1994), which held that where
23 evidence of unlawful intent is required to establish liability,
24 allegations of facts must be "specific and concrete enough to
25 enable the defendants to prepare a response, and where
26 appropriate, a motion for summary judgment."  But, a close
27 examination of *Branch* and its progeny reveals that *Branch* has
28 been effectively overruled by *Galbraith v. County of Santa Clara*,

25

307 F.3d 1119, 1126 (9th Cir. 2002). In *Galbraith*, a three judge panel of the Ninth Circuit examined subsequent Supreme Court precedent, including *Swierkiewicz*, 534 U.S. 506 (disapproving of heightened pleading standards in civil rights cases brought under Title VII), found this precedent to be contrary to the en banc decision in *Branch*, and determined that *Branch* was no longer good law. *Galbraith* eliminated the heightened pleading requirement for improper motive in constitutional tort cases. 307 F.3d at 1125-26.

Despite the holding in *Galbraith*, the Ninth Circuit appears to still apply a heightened pleading standard to conspiracy claims. This pleading standard was first clearly articulated in *Harris v. Broderick*, 126 F.3d 1189 (9th Cir. 1989), which required a *Bivens* conspiracy claim to be "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights..." *Id.* at 1196. More recently, in 2004, two years after the decision in *Galbraith*, the Ninth Circuit again applied a heightened pleading standard to a claim for conspiracy to violate constitutional rights in *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004). But, both *Harris* and *Olsen* relied upon *Branch* to support the application of the heightened standard, the very same case that the Ninth Circuit acknowledged had been overruled in *Galbraith*. Given *Galbraith's* holding, there is reason to question whether a heightened pleading standard applies. At the very least, *Galbraith* suggests the standard should be applied liberally. *Harris* confirms that the complaint should give defendants enough

1  information about the alleged conspiracy to permit them to frame
2  a response.[6]

3       The Inquiry turns to whether Plaintiff has satisfied the
4  somewhat heightened pleading standard of *Harris* with his Fifth
5  Amended Complaint.

6
7
8
                    **a.   *First Clause of 1985(2) - Conspiracy to
                         impede access to federal court.***

9       Plaintiff brings his federal court conspiracy claim under
10  the first clause of § 1985(2), which pertains to conspiracies to
11  obstruct justice in federal court proceedings.  To summarize,
12  that claim alleges that Jensen, through landlord Ashlock, used
13  financial pressure to dissuade Plaintiff from pursuing his claims
14  in federal court in this case.

15      Harris requires at a bare minimum that Plaintiff "plead with
16  particularity as to which defendants conspired, how they
17  conspired and how the conspiracy led to a deprivation of his
18  constitutional rights..."  *Id.* at 1196.  (Even if Harris does not
19  apply, Plaintiff must plead this claim in a manner that gives
20  Defendant adequate notice of the nature of the claim against
21  him.)

22

23      ⁶    The heightened pleading standard as applied to
24  conspiracy cases does appear to still be good law in the Ninth
    Circuit, *see Olsen*, 363 F.3d at 929, even though other heightened
25  pleading standards have been rejected, *see e.g. Galbraith,* 307
    F.3d at 1125-26; *Swierkiewitz*, 534 U.S. 506.  Although the *Olsen*
26  court only dedicated one paragraph to the subject, *Olsen*, decided
    two years after *Galbraith*, is the law of the Ninth Circuit and
27  the district court must follow it.  *See Barapind v. Enomoto*, 400
28  F.3d 744, 750-51 (9th Cir. 2005).

1        Here, Plaintiff does not explain anywhere in his complaint
2   how Hollenback was involved in the federal court conspiracy.   The
3   only stated explanation of Hollenback's wrongful conduct was "his
4   apparent silence" about the alleged "conspiracy."  (*Id.* at ¶67.)
5   This is simply not enough to even put Defendant on notice of the
6   nature of the claim being filed against him.

7        Any claims based upon the federal court conspiracy are
8   **DISMISSED WITH PREJUDICE**.  Plaintiff has been warned several
9   times that he would be afforded no additional opportunities to
10  amend.

11

12              b.   *Second Clause of 1985 (2) Conspiracy to*
                     *obstruct justice in state court; and 1985 (3)*
13                   *conspiracy to deprive plaintiff of equal*
                     *protection under the law.*

14

15       Plaintiff has broken his alleged state court conspiracy down
16  into numerous sub-conspiracies:

17       (1)  First, Plaintiff alleges that Hollenback and Jensen
18            conspired to, through the use of threats and
19            intimidation (a) impede Plaintiff's access to state
20            court, (b) impede his ability to pursue his rights
21            under the custody order issued by the Stanislaus County
22            Superior Court, and (c) impede his ability to apply for
23            employment with the Stanislaus County Housing
24            Authority.

25       (2)  Next, Plaintiff alleges that Hollenback conspired with
26            state courtroom bailiff Jane Doe; by telling the
27            bailiff that Plaintiff was a "low life black;" and the
28            bailiff apparently became agitated as a result.

                                28

However, Jones asserts that he continued with his scheduled hearing after reassuring the bailiff that he was "not a low life black."   This appears to be evidentiary information related to racial animus.

(3)   Finally, Plaintiff describes a conspiracy between Hollenback, Tozzi, Carmichael, Strangio, Jensen, the "Jane Doe" bailiff, and Marie Sovey-Silveria   to (a) deprive Plaintiff of the opportunity to access state court and (b) deprive Plaintiff of his right to pursue his rights under the custody order and (c) to deprive Plaintiff of his right to petition the courts.   In addition, Plaintiff also alleges two additional conspiracies involving all of these individuals to retaliate against him and to aid in planning and concealing the existence of the conspiracy.

*Harris* requires that Plaintiff "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights..." *Id*. at 1196.   With respect to several of the conspiracies alleged, it is not clear how Plaintiff was harmed.   For example, the complaint does not allege how Plaintiff's job prospects were actually harmed by the purported threat made by Hollenback.   Even more clearly, Plaintiff himself <u>admits</u> that he was not deterred and went forward with the hearing after Hollenback allegedly made racially derogatory remarks to the bailiff.   It is not clear how either of these claims could stand alone as separately actionable conspiracy allegations.   But, viewing the complaint liberally as is required, it appears that Plaintiff is attempting to describe

29

pieces of a larger conspiracy to impede his access to state
court, specifically to discourage him from pursuing contempt
charges against Ms. Chhay.

Plaintiff specifically alleges that both Jensen and
Hollenback threatened him, using racially derogatory language,
not to proceed with his contempt charges.   For example, he
alleges that Jensen stated that she and Hollenback were going to
"put [Plaintiff's] black ass down...payback is going to be hell."
Jensen also allegedly threatened that plaintiff "would get [his]
black ass kicked if [he] continued to make trouble for the court
and if [he] continued with the contempt proceedings."   The FAC
also alleges that Hollenback threatened Plaintiff that "he would
knock the teeth out of my jive monkey ass if [Plaintiff] showed
up for the [pending] contempt hearings."   Plaintiff specifically
alleges that he did in fact withdraw his contempt charges as a
result of these threats.

Plaintiff attempts to tie other co-conspirators into this
conspiracy.   For example, while Plaintiff's allegations of
communications between Hollenback and bailiff Jane Doe (telling
her Plaintiff was a "low life black") are not necessarily
actionable in and of themselves because Plaintiff was not
dissuaded from participating in the particular hearing where
those statements were made, the event is arguably circumstantial
evidence of a greater effort on Hollenback's part to intimidate
Plaintiff.   Hollenback's threats pertaining to Plaintiff's
pending job application with the Stanislaus Housing Authority are
also arguably circumstantial evidence of Hollenback's intent to
intimidate him for racially discriminatory reasons.   Similarly,

1  Plaintiff's allegations that other co-conspirators made comments
2  or took actions with "race-based overtones" during the course of
3  various state proceedings are arguably circumstantial evidence
4  tending to show the existence of a conspiracy.

5       There is no need for Plaintiff to separately allege multiple
6  sub-conspiracies.  This only confuses the central issue in this
7  case:  Whether there existed a conspiracy to dissuade Plaintiff
8  from pursuing his rights in federal court through threats and
9  intimidation.  Plaintiff has sufficiently alleged the existence
10 of such a conspiracy by alleging that (1) Hollenback and others
11 made racially derogatory threats expressly aimed at dissuading
12 him from participating in state court proceedings; and (2) he was
13 influenced to and did withdraw from certain state court
14 proceedings out of fear generated by these threats.  There is
15 also some circumstantial evidence tending to suggest that at
16 least some of the named co-conspirators acted together to further
17 the conspiracy.  For example, Jensen made strikingly similar
18 threats to Plaintiff, suggesting that there was a common plan in
19 place.  Whether any of these threats were actually made remains
20 to be determined on summary judgment or at trial.

21      Defendant's 12(b)(6) motion to dismiss is **DENIED** with
22 respect to the conspiracy claim based on the alleged threats to
23 dissuade Plaintiff from participating in the contempt proceeding.
24 All of the other, related conspiracy claims are **DISMISSED** because
25 Plaintiff has failed to specifically state how the alleged
26 conspiracies harmed him.  But, subject to the Federal Rules of
27 Evidence, all of these allegations can be utilized as
28 circumstantial evidence in support of the remaining conspiracy
   claim.

1
2    C.    **Motion for Summary Judgment.**

3            1.    **Should Plaintiff Be Permitted the Opportunity to
                    Conduct Further Discovery?**
4

5       Plaintiff asserts that a motion for summary judgment is

6    improper at this point in the litigation and requests that a

7    decision on the pending motion for summary judgment be delayed

8    until he has had an opportunity to conduct additional discovery.

9       Federal Rule of Civil Procedure 56(f) provides that:

10              Should it appear from the affidavits of a party
                opposing the motion that the party cannot for reasons
11              stated present by affidavit facts essential to justify
                the party's opposition, the court may refuse the
12              application for judgment or may order a continuance to
                permit affidavits to be obtained or depositions to be
13              taken or discovery to be had or may make such other
                order as is just.
14

15   This rule allows litigants to avoid summary judgment when they

     have not had sufficient time to develop affirmative evidence.
16
     *United States v. Kitsap Physician Serv.*, 314 F.3d 995, 1000 (9th
17
     Cir. 2002).  Although 56(f) "may" disallow discovery where the
18
     nonmoving party has not submitted evidence supporting its
19
     opposition, the Supreme Court has restated the rule as requiring
20
     discovery "where the nonmoving party has not had the opportunity
21
     to discover information that is essential to its opposition."
22
     *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).
23
         The party seeking additional discovery "bears the burden of
24
     showing that the evidence sought exists.  Denial of a Rule 56(f)
25
     application is proper where it is clear that the evidence sought
26
     is almost certainly nonexistent or is the object of pure
27
     speculation."   *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir.
28

                                    **32**

1  1991).  Here, Plaintiff stated at oral argument that he has not
2  had an adequate opportunity to conduct discovery on his new legal
3  theory, grounded in 42 U.S.C. §§ 1985 and 1986, in part because
4  he has not possessed adequate funds to conduct thorough
5  discovery.  Plaintiff asserts that he will attempt to secure
6  counsel to assist him with the taking of depositions.
7  Alternatively, he will propound further written discovery.
8  Although this case has been pending for more than one and one-
9  half years, much of this time has been spent litigating various
10  challenges to the pleadings.  Plaintiff will be afforded a short
11  interval to conduct additional discovery.  Plaintiff's discovery
12  shall be completed within **45 days**, commencing on August 14, 2006,
13  the date of oral argument on the instant motions.  No further
14  extensions will be granted.

15

16              **2.    The Admissibility of Evidence Contained Within
                        Plaintiff's Declaration.**

17

18        Although the motion for summary judgment is being continued,
19  one evidentiary objection is discussed here in an effort to
20  clarify the law for the parties.  Defendant objects to much, if
21  not all, of the evidence submitted by Plaintiff in his
22  affidavits.  For example, Plaintiff asserts in his second
23  affidavit that Jensen threatened him that "[he] would get [his]
24  black ass kicked if [he] continued to make trouble for the court
25  and if [he] continued with the contempt proceedings."  Defendant
26  asserts that this, and all similar statements reflecting race-
27  based threats, are inadmissible hearsay.  In support of this
28  hearsay objection, Defendant cites *Mahone v. Lehman*, 347 F.3d

33

1  1170, 1173 (9th Cir. 2003) and *Orr v. Bank of America, NT & SA*,
2  285 F.3d 764, 779 (9th Cir. 2002).

3      In *Orr* the Ninth Circuit considered whether an extrajudicial
4  statement could be offered as evidence that a particular document
5  was submitted to the FDIC. 285 F.3d 764. Specifically, The
6  Plaintiff, Orr, stated in her deposition that a third person,
7  Bourdeau, told Orr that he <u>saw</u> the document at the FDIC's office.
8  The Ninth Circuit found Bourdeau's extra-judicial statement to be
9  inadmissible hearsay because "the immediate inference the
10 proponent wants to draw is the truth of assertion on the
11 statement's face...." *Id.* at 779 n.26. The *Orr* court reasoned
12 that, "[a]lthough [the evidence] was not offered to prove the
13 truth of the matter asserted, it [was] nonetheless hearsay[,]"
14 because the inference counsel sought to draw "depend[ed] on the
15 truth of [the third party's] statement...." *Id.*

16     The Ninth Circuit reached a similar conclusion in *Mahone*.
17 347 F.3d 1170. Mahone was a prisoner who, after he acted out
18 violently, was placed into a special strip cell without clothing
19 or any other personal items. Mahone filed a section 1983 claim
20 the prison, in which he alleged, among other things, that he
21 suffered "significant mental trauma" from the conditions of
22 confinement in the strip cell. *Id.* at 1173. The defendants
23 attempted to prove that Mahone was faking the symptoms of mental
24 trauma. Specifically, on cross examination of Mr. Mahone, the
25 following exchange took place:

26 **[Defense counsel]:**   Mr. Mahone, have you received any diagnosis
                          from any mental health provider or therapist
27                        regarding mental and emotional suffering that
                          was a result of your stay in the modified
28                        conditions of confinement?

**34**

1

**Mahone:**            "Yes, I have gotten some. I don't know too
2                       much of the corpus of the diagnosis, not too
                        much of it."
3

**[Defense counsel]**   "Can you tell the jury what you've been
4                        diagnosed as?"

5  Mahone's counsel objected on the hearsay grounds, but the

6  objection was overruled.

7  **Mahone responded:**   Well, I was interviewed by some Western State
                           Hospital staff because I got charged in the
8                          incident of tearing up the cell. I have pled
                           not guilty by reason of insanity because at
9                          the time I didn't know what I was doing; it
                           was a mental reaction, a reflex. The Western
10                         State Hospital psychiatrist-it was about
                           three and one student came to diagnose me,
11                         and they said that they believed that I was
                           faking it, and then they gave a real-then
12                         they gave a real diagnosis saying I was an
                           anti-sociopathic, something, something. In
13                         other words, in the beginning they said that
                           my symptoms that I was experiencing was a
14                         fake, that I was lying. And then the last
                           part of their diagnosis, they diagnosed some
15                         type of mental illness actually, and it was
                           something to the effect of anti-sociopathic
16                         behavior, something, something, big
                           collegiate words, psychiatric collegiate
17                         words. I can't say them all.

18  *Id.* at 1172-73.  Mahone's counsel renewed his objection to the

19  jury learning that the doctor had diagnosed him as a "fake," but

20  the answer was not stricken from the record.

21     Defense counsel argued that "faker" diagnosis was admissible

22  "to establish whether or not Mr. Mahone was justified in claiming

23  significant mental trauma resulting from the conditions of his

24  confinement in the strip cell." *Id.* at 1173.  The Ninth Circuit

25  rejected this argument, following its prior holding in *Orr*,

26  because the "extra-judicial statement was offered to prove that

27  Mr. Mahone was not justified in claiming significant mental

28  trauma...The jury could only draw this inference, however, if it

35

1  believed the therapist's opinion that Mr. Mahone was lying about
2  the impact of his confinement in the strip cell."  *Id.*  Because
3  the relevance of the statement depended on an inference that
4  could be drawn only from the truth of the matter asserted, it was
5  inadmissible hearsay.  *See Id.*

6      The statements at issue here are markedly different.  They
7  are being offered, not for the truth of the matter asserted, but
8  for the fact that the statements were made as alleged.  A
9  witness' statement about what he heard others say is admissible
10  to establish that racially offensive speech occurred.  *Calmat Co.*
11  *v. United States Dept. of Labor*, 364 F.3d 1117, 1124 (9th Cir.
12  2004).  For example, Plaintiff's allegation that Hollenback
13  called him a "jive-monkey" (FAC at ¶48) is not being offered to
14  establish it is true that Plaintiff is a "jive-monkey," it is
15  being offered to establish that Hollenback made racially
16  offensive remarks to Plaintiff.  Plaintiff may testify that such
17  statements were made to him before the finder of fact.

18      But, with respect to certain statements, Defendant's
19  objection is a bit more sophisticated.  Defendant also objects to
20  the use of any of the statements in which one hearsay declarant
21  appears to implicate other individuals or entities in a
22  conspiracy.  For example, Plaintiff claims that Jensen said to
23  him "Mr. Hollenback and I are known in this court... you're going
24  to get yours if you keep it up....you just wait, Mr. Hollenback
25  and I have something planned for you boy...we're going to put
26  your black ass down...payback is going to be hell."  (Second
27  Affidavit, para 1.)  Such statements arguably fall under the
28  rubric of *Mahone* and *Orr* to the extent that Plaintiff offers them

36

1  as evidence (directly or impliedly) of the truth of the
2  assertions.  For example, this statement would be inadmissible to
3  establish the existence of a conspiracy between Jensen and
4  Hollenback.

5      Under certain circumstances, such statements might be
6  admissible as "statement[s] by a coconspirator of a party [made]
7  during the course and in furtherance of the conspiracy."  Fed. R.
8  Evid. 801(d)(2)(E).  But, co-conspirator statements are only
9  admissible after a court has been satisfied that "there was a
10 conspiracy involving the declarant and the [opposing] party."
11 *See United States v. Peralta*, 941 F.2d 1003, 1005 (9th Cir.
12 1991).

13

14                    **VI.   CONCLUSION**

15     For the reasons set forth above:

16     1.   Defendant's motion to dismiss on statute of
17          limitations grounds is **DENIED**;

18     2.   Defendant's 12(b)(6) motion to dismiss is **DENIED**
19          with respect to the conspiracy claim based on the
20          alleged threats to dissuade Plaintiff from
21          participating in the contempt proceeding.  All of
22          the other, related conspiracy claims are **DISMISSED**
23          because Plaintiff has failed to specifically state
24          how the alleged conspiracies harmed him.  But, all
25          of these allegations can be utilized as
26          circumstantial evidence in support of the
27          remaining conspiracy claim.

28     3.   The motion for summary judgment is **CONTINUED** to

                              37

1                 allow Plaintiff an additional **45 days** to conduct

2                 further discovery.   (This 45 day period began on

3                 the date of oral argument, August 14, 2006.)

4         4.   Any renewed motion for summary judgment shall be

5                 filed on or before **September 27, 2006.**  Opposition

6                 shall be filed on or before **October 27, 2006.**  A

7                 hearing on the motion is set for **November 27, 2006**

8                 at **12:00 p.m. in Courtroom 3.**

9

10 **SO ORDERED**

11 DATED:   August 23, 2006.

12

13                                                 **OLIVER W. WANGER**

14                              **UNITED STATES DISTRICT JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28