1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MELVIN JONES, JR.,** | **1:05-CV-0148 OWW DLB** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AND OTHER FILINGS (DOCS. 233, 257, 275)** |
| **v.** | |
| **MICHAEL A. TOZZI et al.,** | |
| **Defendants.** | |

## I.   INTRODUCTION

Before the court are a large number of filings, including Defendant John Hollenback's motion for summary judgment, as well as a set of filings from Plaintiff which are styled as a cross motion for summary judgment, but which appear in substance to be an opposition to Defendant's summary judgment motion.

## II.   PROCEDURAL HISTORY

This case arises out of a child custody dispute between Plaintiff and Kea Chhay, the mother of Plaintiff's minor child. The case was first filed in Santa Clara Superior Court, but was later transferred to Stanislaus County.  Additional background concerning the state proceedings is set forth in various memorandum opinions in this case and related cases.[1]

---

[1]    *See Jones v. California*, 1:04-CV-065676; *Jones v. Strangio*, 1:04-CV-06567; and *Jones v. Strangio*, 1:05-CV-00410.

**1**

Defendant accurately reviews the development of Plaintiff's allegations in his motion for summary judgment. (Doc. 258 at 6-18.)  To summarize, Plaintiff has amended his complaints numerous times.  With each new complaint, Plaintiff's factual allegations have expanded in scope and detail.  However, after numerous rounds of motions and the voluntary dismissal of Leslie Jensen, the only remaining Defendant is John Hollenback, who once represented Ms. Chhay.

**A.   Recent Procedural History.**

In an August 24, 2006 memorandum decision, the district court denied Defendant Hollenback's prior motion to dismiss and/or for summary judgment. (Doc. 253.)  The district court rejected Defendant's argument that the claims were barred by the statute of limitations, finding that the latest complaint related back to Plaintiff's first two complaints, filed in February and March 2005, within the applicable limitations period. (*Id*. at 20-24.)  Next, the district court discussed Hollenback's argument that Plaintiff's conspiracy claims should be dismissed because Plaintiff failed to satisfy the Ninth Circuit's somewhat heightened pleading standard for conspiracy claims.  The district court found that Plaintiff's allegations of a conspiracy to impede his access to federal court were inadequate:

> *Harris* requires at a bare minimum that Plaintiff "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights..." *Id*. at 1196. (Even if Harris does not apply, Plaintiff must plead this claim in a manner that gives Defendant adequate notice of the nature of the claim against him.)

1
2
3
4
5

   Here, <u>Plaintiff does not explain anywhere in his</u> <u>complaint how Hollenback was involved in the federal</u> <u>court conspiracy.</u>  The only stated explanation of Hollenback's wrongful conduct was "his apparent silence" about the alleged "conspiracy."  (*Id.* at ¶67.) This is simply not enough to even put Defendant on notice of the nature of the claim being filed against him.

6
7

   Any claims based upon the federal court conspiracy are **DISMISSED WITH PREJUDICE.**  Plaintiff has been warned several times that he would be afforded no additional opportunities to amend.

8  (*Id.* at 27-28.)

9    However, the district court reached a different conclusion

10  when it applied the pleading standard to Plaintiff's allegations

11  of a conspiracy to impede his access to state court.  The

12  district court first explained that Plaintiff appeared to have

13  broken down this conspiracy into numerous sub-conspiracies:

14
15
16
17
18

   (1) First, Plaintiff alleges that Hollenback and Jensen conspired to, through the use of threats and intimidation (a) impede Plaintiff's access to state court, (b) impede his ability to pursue his rights under the custody order issued by the Stanislaus County Superior Court, and (c) impede his ability to apply for employment with the Stanislaus County Housing Authority.

19
20
21
22
23

   (2) Next, Plaintiff alleges that Hollenback conspired with state courtroom bailiff Jane Doe; by telling the bailiff that Plaintiff was a "low life black;" and the bailiff apparently became agitated as a result.  However, Jones asserts that he continued with his scheduled hearing after reassuring the bailiff that he was "not a low life black."  This appears to be evidentiary information related to racial animus.

24
25
26
27
28

   (3) Finally, Plaintiff describes a conspiracy between Hollenback, Tozzi, Carmichael, Strangio, Jensen, the "Jane Doe" bailiff, and Marie Sovey-Silveira to (a) deprive Plaintiff of the opportunity to access state court and (b) deprive Plaintiff of his right to pursue his rights under the custody order and (c) to deprive Plaintiff of his right to petition the courts.  In addition, Plaintiff also alleges two additional conspiracies involving all of these individuals to retaliate against him and

**3**

> to aid in planning and concealing the existence of the conspiracy.

(*Id*. at. 28-29.)  The district court then reasoned that "[w]ith respect to several of the conspiracies alleged, it is not clear how Plaintiff was harmed."  (*Id*. at. 28.)

> For example, the complaint does not allege how Plaintiff's job prospects were actually harmed by the purported threat made by Hollenback.  Even more clearly, Plaintiff himself admits that he was not deterred and went forward with the hearing after Hollenback allegedly made racially derogatory remarks to the bailiff.  It is not clear how either of these claims could stand alone as separately actionable conspiracy allegations.  But, viewing the complaint liberally as is required, it appears that Plaintiff is attempting to describe pieces of a larger conspiracy to impede his access to state court, specifically to discourage him from pursuing contempt charges against Ms. Chhay.

(*Id*. at. 29-30.)  However, Plaintiff did allege harm with respect to impeding his ability to proceed with his contempt charges.

> Plaintiff specifically alleges that both Jensen and Hollenback threatened him, using racially derogatory language, not to proceed with his contempt charges. For example, he alleges that Jensen stated that she and Hollenback were going to "put [Plaintiff's] black ass down...payback is going to be hell."  Jensen also allegedly threatened that plaintiff "would get [his] black ass kicked if [he] continued to make trouble for the court and if [he] continued with the contempt proceedings."  The FAC also alleges that Hollenback threatened Plaintiff that "he would knock the teeth out of my jive monkey ass if [Plaintiff] showed up for the [pending] contempt hearings."  Plaintiff specifically alleges that he did in fact withdraw his contempt charges as a result of these threats.

(*Id*. at. 30.)  The district court next addressed Plaintiff's allegations against various other co-conspirators:

> Plaintiff attempts to tie other co-conspirators into this conspiracy.  For example, while Plaintiff's allegations of communications between Hollenback and bailiff Jane Doe (telling her Plaintiff was a "low life black") are not necessarily actionable in and of themselves because Plaintiff was not dissuaded from participating in the particular hearing where those statements were made, the event is arguably

**4**

> circumstantial evidence of a greater effort on
> Hollenback's part to intimidate Plaintiff.
> Hollenback's threats pertaining to Plaintiff's pending
> job application with the Stanislaus Housing Authority
> are also arguably circumstantial evidence of
> Hollenback's intent to intimidate him for racially
> discriminatory reasons.  Similarly, Plaintiff's
> allegations that other co-conspirators made comments or
> took actions with "race-based overtones" during the
> course of various state proceedings are arguably
> circumstantial evidence tending to show the existence
> of a conspiracy.

(*Id.* at. 30-31.)  All conspiracy allegations were dismissed, with

the exception of the allegation that Defendant participated in a

conspiracy to dissuade Plaintiff through threats of violence from

participating in the contempt proceeding.

> There is no need for Plaintiff to separately allege
> multiple sub-conspiracies.  This only confuses the
> central issue in this case:  Whether there existed a
> conspiracy to dissuade Plaintiff from pursuing his
> rights in federal court through threats and
> intimidation.  Plaintiff has sufficiently alleged the
> existence of such a conspiracy by alleging that (1)
> Hollenback and others made racially derogatory threats
> expressly aimed at dissuading him from participating in
> state court proceedings; and (2) he was influenced to
> and did withdraw from certain state court proceedings
> out of fear generated by these threats.  There is also
> some circumstantial evidence tending to suggest that at
> least some of the named co-conspirators acted together
> to further the conspiracy.  For example, Jensen made
> strikingly similar threats to Plaintiff, suggesting
> that there was a common plan in place.  Whether any of
> these threats were actually made remains to be
> determined on summary judgment or at trial.

(*Id.* at. 31 (emphasis added).)

Finally, with respect to Defendant Hollenback's motion for

summary judgment, the district court granted Plaintiff the

opportunity to conduct further discovery to prepare his

opposition.  (*Id.* at. 32-33.)

**5**

**B.    Current Factual Allegations.**

       **1.    Summary of Plaintiff's Evidence.**

Plaintiff presents his own declaration and various amendments thereto, which provide a detailed chronology of the events from his point of view.

The custody dispute between Plaintiff and Ms. Chhay began in May 2002 and was litigated in Stanislaus County Superior Court. (Doc. 255 at 4.)  At that time, Plaintiff maintains that Ms. Chhay was employed as a Family Law Investigator with the Stanislaus Superior Court.  (*Id.*)

It is undisputed that Judge Silveira became the presiding family law judge; Donald Strangio was appointed by the state court as a mediator in the dispute; Steven Carmichael became the court-appointed custody evaluator in the case; and Michael Tozzi served as the Executive Officer of the Stanislaus Superior Court during the relevant time period.

It is also undisputed that Leslie Jensen associated as counsel for Ms. Chhay in 2002.  In 2003, Defendant Hollenback replaced Ms. Jensen as counsel for Ms. Chhay, but, in 2004, Ms. Jensen appeared for Defendant Hollenback at a hearing on behalf of Ms. Chhay.  Plaintiff maintains that Hollenback and Jensen maintained an association throughout the relevant time period, conspiring together, and with other alleged co-conspirators, to dissuade Plaintiff, through threats of violence, from pursuing his legal rights in state court.

Plaintiff next details various racist or impliedly racist remarks that were allegedly directed at Plaintiff by the alleged co-conspirators.  For example, Plaintiff avers that, in October

**6**

1  2002, Carmichael indicated that "Blacks [are] inferior to Whites
2  and Asians in learning/education." (*Id*. at 5.)  Plaintiff then
3  sent a letter to Carmichael expressing concern that Carmichael's
4  ability to participate in his custody dispute was compromised
5  because Carmichael was biased against Plaintiff.  Soon
6  thereafter, according to Plaintiff, Jensen called Plaintiff and
7  said "were going to shut you down boy...[W]hen we get finished
8  with you...you'll wish you stayed in San Jose." (*Id*.)  Plaintiff
9  claims that he responded by asking: "Who is we?"  Jensen
10  allegedly replied: "You'll find out soon enough....Dr Carmichael,
11  and Dr. Strangio have assured me that you won't know what hit
12  you....we have something for your black ass?.... Don Strangio is
13  my friend...he and I have spoken to Judge Silveira...you just
14  wait and see." (*Id*. at 5-6.)

15      In addition, at various times in or around 2002, Plaintiff
16  alleges that Judge Silveira, Mr. Strangio, and Ms. Jensen made
17  racially offensive remarks regarding Plaintiff's desire to spend
18  Martin Luther King day with his daughter.  For example, in a
19  December 2002 hearing when Plaintiff attempted to discuss that
20  visitation issue with Judge Silveira, she allegedly told
21  Plaintiff "shut up and go sit down."  A few months later in April
22  2003, Plaintiff tried to raise the concern again with Judge
23  Silveira, but Plaintiff avers that she told him to "shut up and
24  stop playing the race card." (*Id*. at 6-7.)  After that hearing,
25  Plaintiff asserts that he asked Mr. Strangio directly about
26  spending Martin Luther King day with his daughter, to which
27  Strangio allegedly responded: "Martin Luther King was the biggest
28  trouble maker of them all... if you continue your trouble making

**7**

1   you will be stopped in your tracks."   (*Id*. at 7.)

2       Also in May 2003, Jensen served Plaintiff with a document.
3   Plaintiff alleges that Jensen threw the document on the ground
4   and stated:   "Your ignorant trouble making black ass has been
5   served."   When Plaintiff asked why she threw the document on the
6   ground, she stated:   "I did not want to touch your filthy ape
7   hands."   She then allegedly stated; "if you know what is good for
8   your stinky black ass, you'll knock it off... you trouble making
9   black bastard...you're going down, you'll be celebrating Rodney
10  King Day."   When Plaintiff responded "You mean Dr. King
11  Holiday?", Jensen replied "No, idiot, you will never have that
12  day added to the custody order...poor tar baby your crying to
13  County Counsel did not help you did it?"

14      In late 2003, after another family court hearing, Plaintiff
15  maintains that Defendant Hollenback called him "an unkempt lazy
16  lowlife black."   When Plaintiff stated "I have never even met you
17  before...what is your problem...," Hollenback allegedly
18  responded: "my problem is you... you stupid porch monkey...I know
19  that you're a trouble making black sambo."   Later during that
20  conversation, Plaintiff asserts that Hollenback warned: "[L]isten
21  lazy nigger boy, I am going to show you how to make trouble...if
22  you know what is good for you, you will stop your bullshit...do
23  me a favor and take your dead beat black ass back to San
24  Jose...You only want Martin Luther King day so that you have an
25  excuse to have a day off work...that day is for nigger
26  lovers...you'll never get that day added to your visitation in
27  this court."

28      In February 2004, Jensen appeared on behalf of Mr.

**8**

Hollenback.  Plaintiff claims that, outside the hearing, Ms. Jensen stated: "Mr. Hollenback and I are known in this court...you're going to get yours if you keep it up...[Y]ou just wait[,] Mr. Hollenback and I have something planned for you boy...we're going to put your black ass down...payback is going to be hell."  In addition, Plaintiff asserts that Jensen made other racially derogatory statements to him regarding the Dr. Martin Luther King Holiday.  (*Id*. at 10.)  Among other things, Plaintiff alleges that Jensen told him to "stay tuned you black ape...you're fucking with the wrong people...you're going down...I don't care about your damn nigger holiday or what facts you want on record, you lazy black trouble-making asshole."  Finally, although Plaintiff does not specify when this statement was made, he asserts that Jensen threatened him that he "would get my black ass kicked if [he] continued to make trouble for the court and if [he] continued with the contempt proceedings."  (*Id*. at 11.)

Plaintiff then discusses certain events surrounding a hearing on March 29, 2004, at which Defendant Hollenback insisted that Plaintiff be ordered to disclose the name of the Stanislaus County Agency with which Plaintiff was seeking employment.  (*Id*. at 12.)  Plaintiff objected, but was apparently ordered to disclose the information.  Hollenback allegedly then threatened to tell that particular agency (the Housing Authority) that he was a "low life black dead beat dad...."  (*Id*. at 13.)

It is undisputed that in 2004, Plaintiff filed two sets of contempt charges against Ms. Chhay in the family law case.  The first set of charges was set for trial on May 15, 2004.  The

**9**

second set of charges were set for hearings on May 10 and June 10, 2004, respectively.

At the trial on the first set of charges, presided over by Judge Jacobsen, Plaintiff alleges that Judge Silveira interrupted the proceedings and communicated with Judge Jacobson.  Plaintiff conclusorily describes Judge Silveira's conduct as "retaliatory" but does not describe how.

Before the second set of contempt charges came to trial, a trial was held on April 22, 2004, regarding the issue of Child Support.  Defendant Hollenback was present, as was a bailiff whom Plaintiff refers to as Jane Doe (her actual name is Vivian Holliday).  Plaintiff observed Hollenback conversing with the bailiff and claims to have heard Hollenback explain to the bailiff that Plaintiff was a "low life black."  The bailiff then pointed at Plaintiff and "became unduly excited towards [him]." (*Id*. at 14.)  Although Plaintiff was concerned by this conduct, he proceeded with the trial after "reassuring the bailiff" that he was not a "low life black."

After the April 22, 2004 hearing, Plaintiff asserts that Defendant Hollenback claimed to have "called the Stanislaus County Housing Authority and told them what a lazy low life black piece of shit you are...you get nigger justice."  In addition, Plaintiff claims that Defendant Hollenback threatened that "he would knock the teeth out of my black greasy face...and rattle them out of my jive-monkey ass if I showed up for the contempt hearings."  Plaintiff believed that Hollenback was "angry" and Plaintiff "fear[ed] for [his] safety if [he] were to continue with the contempt hearings on May 10 and June 10, 2004." (*Id*. at

**10**

15-16.)  Plaintiff claims that, as a result of this fear, he
withdrew the pending contempt charges.  Plaintiff maintains that
he remains in fear today, and that, as a result, he did not
attend a separate state court proceeding in a different matter.

### 2.   Defendant's Evidence.

Defendant presents his own declarations, along with
supporting declarations from Leslie Jensen, Michael Tozzi, and
Vivian Holliday.  Defendant also requests that judicial notice be
taken of declarations filed by Donald Strangio and other alleged
co-conspirators in other related cases filed by Plaintinff in
federal court.

In sum, Defendant and all of the alleged co-conspirators
deny ever having made racially derogatory remarks to Plaintiff,
and deny having participated in or having knowledge of any kind
of conspiracy to deny Plaintiff access to court.

More specifically, Defendant denies having had any
involvement with Plaintiff's child support case prior to his
first contact with Ms. Chhay on December 24, 2003.  In fact,
Hollenback asserts that he and Ms. Jensen never represented Ms.
Chhay on the same issue.  Jensen was retained pursuant to a
"limited scope representation" only on the child custody and
visitation issues.  Hollenback claims that during the time he
represented Ms. Chhay, he had no communications with Leslie
Jensen about "anything related to what happened previously in the
*Jones v. Chhay* [matter]....At no time was there an 'overlap' of
the representation of Ms Jensen and myself."  The one time Jensen
made a special appearance on Hollenback's behalf because
Hollenback had a scheduling conflict, this was done as a

**11**

customary courtesy and involved no direct contact between them. Hollenback further asserts that, in connection with the defense of this lawsuit, "there were no communications, direct or indirect, between Ms. Jensen and [Hollenback] that went beyond the necessary and proper matters connected with defending against this lawsuit."  (Doc. 260 at ¶48.)

Defendant also asserts that, because he only represented Ms. Chhay in regards to the child support issue, he was never involved in the dispute over the custody and visitation orders, so he had absolutely no contact with either Mr. Strangio or Mr. Carmichael.  Moreover, Defendant claims not to have had contact with Judge Silveira concerning the underlying custody dispute. As a result, Defendant asserts that he had no involvement in any conversations concerning Plaintiff's requests to spend Martin Luther King Holiday with his daughter, a custody issue.

Defendant claims to have had no knowledge of any of the allegedly threatening/derogatory remarks made by any of the co-conspirators (except to the extent that he learned of Plaintiff's allegations during his involvement in this lawsuit).  For example, Plaintiff alleges that Ms. Jensen made threatening remarks to Jones in April 2003.  Those statements, if they were made, would have occurred many months before Hollenback became an attorney in the case.

//

//

//

//

### III.   <u>STANDARD OF REVIEW</u>

**12**

1         Summary judgment is warranted only "if the pleadings,

2    depositions, answers to interrogatories, and admissions on file,

3    together with the affidavits, if any, show that there is no

4    genuine issue as to any material fact."  Fed. R. Civ. Pro. 56(c);

5    *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).

6    Therefore, to defeat a motion for summary judgment, the non-

7    moving party must show (1) that a genuine factual issue exists

8    and (2) that this factual issue is material.  *Id.*  A genuine

9    issue of fact exists when the non-moving party produces evidence

10   on which a reasonable trier of fact could find in its favor

11   viewing the record as a whole in light of the evidentiary burden

12   the law places on that party.  *See Triton Energy Corp. v. Square

13   D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v.

14   Liberty Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  The evidence

15   must be viewed in a light most favorable to the nonmoving party.

16   *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products,

17   Inc.*, 268 F.3d 639, 644 (9th Cir. 2001), *amended by* 2001 WL

18   1490998 (9th Cir. 2001).  Facts are "material" if they "might

19   affect the outcome of the suit under the governing law."

20   *Campbell*, 138 F.3d at 782 (quoting *Liberty Lobby, Inc.*, 477 U.S.

21   at 248).

22       The moving party bears the initial burden of demonstrating

23   the absence of a genuine issue of fact.  *Devereaux v. Abbey*, 263

24   F.3d 1070, 1076 (9th Cir. 2001).  If the moving party fails to

25   meet this burden, "the nonmoving party has no obligation to

26   produce anything, even if the nonmoving party would have the

27   ultimate burden of persuasion at trial."  *Nissan Fire & Marine

28   Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th

**13**

Cir. 2000).  However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party.  *Triton Energy Corp.*, 68 F.3d at 1221.  The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.  *Devereaux*, 263 F.3d at 1076.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

"In order to show that a genuine issue of material fact exists, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'"  *Rivera v. AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 249).  If the moving party can meet his burden of production, the non-moving party "must produce evidence in response....[H]e cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."  *Hernandez v. Spacelabs Med., Inc.*, 343

**14**

F.3d 1107, 1112 (9th Cir. 2003).  "Conclusory allegations unsupported by factual data cannot defeat summary judgment." *Rivera*, 331 F.3d at 1078 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001)).

The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel. Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby, Inc.*, 477 U.S. at 255.  A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to find genuine factual issues. *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

## IV.   **EVIDENTIARY ISSUES**

### A.   **Request for Judicial Notice**.

Defendant Hollenback requests that the court take judicial notice of fifteen documents that were filed in connection with other lawsuits involving Plaintiff and the various alleged co-conspirators in this case.  (Doc. 264.)   As public records, all of these documents are judicially noticeable for their existence, although not for the truth of the matters asserted therein.

### B.   **Untimely Filings & Treatment of "Plaintiff's Cross-Motion."**

Defendant also objects that several of the many documents filed by Plaintiff were submitted after the October 27, 2006 deadline for filing oppositions to the pending motion for summary judgment. (*See* Doc. 284.)   For example, after October 27, 2006,

**15**

Plaintiff filed:

- • "CROSS MOTION for SUMMARY JUDGMENT and Affadavit..."
  (Doc. 275)
- • "...AFFIDAVIT of Melvin Jones Jr. - In support of 275
  plaintiff's cross motion for summary judgment (in the
  alternative to plaintiff's opposition to Hollenback's
  'renewed' motion for summary judgment...." (Doc. 276)
- • "AFFIDAVIT by Melvin Jones, Jr. as to specific events
  regarding 3/15/04." (Doc. 277)
- • "Plaintiff's: MEMORANDUM Points and Authority in
  support of Jones' Cross Motion for Summary Judgment
  filed by Melvin Jones, Jr." (Doc. 278)

Defendant correctly notes that, although some of these documents are styled as documents in support of a cross motion for summary judgment, they are more appropriately considered oppositions to Defendants' motion for summary judgment.

To properly cross-move for summary judgment, Plaintiff would have had to file a statement of undisputed material facts, specifically setting forth all of the facts in support of his claims. Local Rule 56-260. Instead, Plaintiff's purported cross motion begins by arguing that Defendant Hollenback's "pending 'renewed' motion for Summary Judgment is flawed and is NOT based in good federal law...." (Doc. 275 at 1.) Plaintiff also filed a document entitled "CORRECTED... SUPPLEMENTED MATERIAL DISPUTED FACTS...in support of Plaintiffs response in opposition to Hollenback's 'renewed' motion for summary judgment." This document generally sets forth "issues of material fact which are in dispute requiring TRIAL" (Doc. 271 at 2 (emphasis added)). A

proper motion for summary judgment filed by a plaintiff must assert that the <u>plaintiff</u> is entitled to judgment <u>without trial</u>. Accordingly, Plaintiff's filings will be treated as oppositions to Defendant's motion for summary, not a cross-motion.

As to Defendant's argument that documents filed after October 27, 2006 should be disregarded as untimely, all of the documents of concern were filed, at least nominally, in connection with related motions.  In other words, even though they may have been improperly supported, Plaintiff believed that he was filing a cross-motion for summary judgment and other related discovery motions.  The filing of related motions is governed by Local Rule 78-230, which provides that any "other motion that a party may desire to make that is related to the general subject matter of the original motion shall be served and filed with the Clerk in the manner and on the date prescribed for the filing of opposition."  Here, because these documents were filed after the October 27, 2006 deadline for the filing of an opposition, they must be disregarded.

### C. **Plaintiff's Motion to Have Certain Requests for Admission Deemed Admitted**.

On August 24, 2006, Plaintiff propounded a fourth set of Requests for Admission to Defendant Hollenback.  This included 120 requests, many of which had been previously propounded. Defendant served his responses on September 27, 2006.  Plaintiff now has filed a confusing motion requesting that the court deem admitted certain of Defendant's responses, specifically to Requests for Admission Nos. 57, 58, 59, and 60.  These sought Defendant's admission that he "acknowledged" Judge Silveira during a April 15, 2004 hearing (RFA No. 57); that this

17

acknowledgment took place prior to Judge Silveira speaking to the judge then presiding (RFA No. 58); that Judge Silveira made non-verbal gestures during her communication with the other judge (RFA No. 59); and that Judge Silveira did in fact appear at the April 15, 2004 contempt proceeding (RFA No. 60).

In response, defendant "acknowledged that he had no independent specific recollection of Judge Sovey-Silveira being present at the trial. As such, defendant did not have any recollection of any communication between himself and Judge Sovey-Silveira nor did he recall any non-verbal gestures from Judge Sovey-Silveira, if she did in fact appear at the trial." (Doc. 279 at 2.)

Plaintiff argues that these RFAs should be deemed admitted because Plaintiff gave insufficient answers. However, Plaintiff has not followed the procedure required by the Federal Rules of Civil Procedure to even request such relief. A request to have RFAs deemed admitted must be preceded by the filing of a motion to compel further discovery, which must be supported by a filing which explains the parties prior efforts to meet and confer regarding the discovery dispute:

> If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action. When taking a deposition on oral

**18**

examination, the proponent of the question may complete or adjourn the examination before applying for an order.

Fed. R. Civ. Pro. 37.

Plaintiff's request to have the selected RFAs deemed admitted is defective.  It is **DENIED**.

### D.   <u>Defendant's Request for Sanctions In Connection with the Above Motion</u>.

A party who prevails on a discovery motion, such as Plaintiff's motion to have certain Requests for Admission deemed admitted, is entitled to his expenses, including reasonable attorney's fees, unless it can be shown that the party was reasonably justified in making the motion, or that other circumstances make such an award unjust.  Fed. R. Civ. P. 37(a)(4).  Defendant requests sanctions in the amount of reasonable legal fees and costs incurred defending against the discovery motion.  However, there is authority suggesting that a party's pro se status must be taken into account in determining whether the imposition of sanctions is reasonable.  *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996).  Here, it is not clear that Plaintiff was ever made aware that sanctions might be imposed for bringing this particular motion without a sufficient legal basis.  Absent such evidence, the imposition of sanctions is not warranted for a first occurrence.  Plaintiff is, however, on notice that further violation of discovery rules will not be tolerated.

### E.   <u>Plaintiff's Assertion that Defendant Hollenback has Admitted Liability</u>.

Plaintiff asserts that Defendant has admitted liability because he has admitted that not all people have the right to

**19**

access state court.  Specifically, Plaintiff refers to the
following response by Defendant to a Request for Admission:

>REQUEST FOR ADMISSION NO. 36:
>
>>ADMIT: that access to state court is a right.
>
>RESPONSE TO REQUEST FOR ADMISSION No. 36.
>
>>Admit that most people have a right to proceed in state court.

(*See* Doc. 266 at 1.)

Plaintiff suggests that this is somehow an admission by
Hollenback that people of certain racial or ethnic backgrounds do
not have a right of access to state court, an admission which
would help Plaintiff's case.  However, Plaintiff either
misunderstands or misrepresents Defendant's admission.
Defendant's response accurately explains the fact that not all
litigants have the right to proceed in state court under all
circumstances.  For example, there are certain types of injuries
for which there are no legal remedies.  Or, alternatively, a
person may be required to pursue a remedy in an administrative
forum prior to having a case heard in state court.  There are a
litany of such examples, all grounded in the law, which have
nothing to do with racial animus.

## V.  DISCUSSION

### A.   Motion for Summary Judgment as to the § 1985 Claim.

Defendant Hollenback moves for summary judgment on the
§ 1985 claim, essentially arguing that Plaintiff's version of
events is implausible, and unsupported by any evidence other than
his own self-serving affidavits.

### 1.   **Defendant's Legal Arguments.**

Defendant Hollenback's motion is premised largely on a series of cases, from within the Ninth Circuit and elsewhere, which have refused to find a "genuine issue" of fact precluding summary judgment where the only evidence presented in opposition is "uncorroborated and self-serving" testimony.  First, Defendant cites *Kennedy v. Applause, Inc*., 90 F.3d 1477, 1481 (9th Cir. 1996).  In that case, a former employee sued her former employer, alleging that she was discharged because of her Chronic Fatigue Syndrome in violation of the Americans with Disabilities Act.  To prevail on such a claim, plaintiff was required to establish, among other things, that she was able to perform the essential functions of the job at the time of her termination.  *Id*. at 1481.  Although the plaintiff testified in her deposition that she was not totally disabled, the Ninth Circuit found this testimony to be "uncorroborated and self-serving," in part because she had previously represented on disability claim forms that she <u>was</u> totally disabled, and a finding of total disability was supported by the medical evidence.  *Id.*

*Kennedy* is far from a blanket prohibition against considering all affidavits that are self-serving.  *Kennedy* merely permits a court to disregard self-serving affidavits which are contradicted by the Plaintiff's own prior statements and other forms of undisputed evidence.  Here, in contrast, Plaintiff's own self-serving affidavits are contradicted only by Defendants' own self-serving affidavits (and those of the alleged co-conspirators, who are interested witnesses).  This is a classic "he said, she said" (in this case "he said, he said") situation

**21**

in which summary judgment is inappropriate because the facts are in diametric opposition.

Defendant next cites *Johnson v. Washington Metropolitan Transit Authority*, 883 F.2d 125, 128 (D.C. Cir. 1989), as a case that generally discusses other cases in which self-serving testimony, uncorroborated by other evidence, was not sufficient to avoid summary judgment.  The *Johnson* court provided the following review of caselaw from various circuits:

> Judges may, under certain circumstances, lawfully put aside testimony that is so undermined as to be incredible. <u>The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.</u> *See Ralston Purina Co. v. Hobson*, 554 F.2d 725 (5th Cir.1977) (upholding judgment NOV because claimant's testimony as to how and why chickens were supposed to have died was *unsupported by other evidence and inconsistent with the known physical facts and considerable expert testimony on chicken behavior*); *Law v. Virginia Stage Lines*, 444 F.2d 990 (D.C.Cir.1971) (upholding judgment NOV despite plaintiff's self-serving testimony because it was unsupported by other evidence and <u>contradicted by disinterested as well as interested witness</u>); Southern Pacific Co. v. Matthews, 335 F.2d 924 (5th Cir.1964) (reversing judgment for plaintiff because it was supported only by his self-serving testimony which was <u>contradicted by disinterested witness testimony and undisputed proof as to the physical layout of the railroad right of way</u>), cert. denied, 379 U.S. 970 (1965); *Washington, Marlboro & Annapolis Motor Lines v. Maske*, 190 F.2d 621 (D.C.Cir.1951) (reversing judgment for plaintiff because it was supported only by her self-serving testimony which was not only <u>contradicted by numerous disinterested witnesses but also undermined by proof of her earlier statement that the opposite was true</u>), cert. denied, 342 U.S. 834 (1952).

*Id*. at 128-129 (emphasis added)(parallel citations omitted). Notably, in each of the cited cases, the self-serving evidence was undermined or contradicted either by disinterested witness

statements or by undisputed evidence.  Moreover, the *Johnson*
court itself refused to follow this line of cases, reversing the
trial court's refusal to consider certain witness statements
because they were inconsistent with other evidence.

> The district court explained that it disregarded
> Thompson's and Moore's estimate of the number of
> seconds that elapsed as inherently incredible because
> it was contradicted by a number of other witnesses and
> because it was inconsistent with the same witnesses'
> estimations of distance. We conclude that neither
> circumstance supports the court's excluding this
> testimony from its summary judgment determination.
>
> <u>The fact that there were witnesses whose testimony,
> that the train was in the station and only a few feet
> from Devora when she jumped, contradicted that of
> Thompson and Moore plainly does not render Thompson's
> and Moore's testimony incredible. It merely
> demonstrates that the issue is disputed</u>. The judge's
> function at the summary judgment stage is not to weigh
> the evidence and determine the truth of the matter but
> only to determine whether there is a genuine issue for
> trial. *Anderson*, 477 U.S. at 249.

*Id*. at 128 (parallel citations omitted).

Defendant next cites *Villiarimo v. Aloha Island Air, Inc.,*
281 F.3d 1054, 1061 (9th Cir. 2001).  In that case, the plaintiff
claimed her firing was motivated by gender-based discrimination,
rather than for legitimate disciplinary reasons.  Among other
things, she asserted that a male employee was punished less
severely for a mistake than she was.  *Id*. at 1059.  The Ninth
Circuit noted that in support of this assertion she "cites only
her own self-serving and uncorroborated affidavit and deposition
testimony in support of this assertion, <u>and provides no
indication how she knows this to be true</u>."  *Id*. at n.5 (emphasis
added).  Here, however, the critical statements that constitute
Plaintiff's evidence were all allegedly witnessed by him first
hand and by no disinterested witness.  A foundation of personal

23

knowledge exists.

Defendant then quotes the following paragraph from *Leslie v. Grupo ICA,* 198 F.3d 1152, 1157 (9th Cir. 1999).

> Despite the Supreme Court's clear pronouncement limiting the scope of summary judgment, other circuits have carved out various exceptions under which a court may disregard self-serving and incredible testimony or affidavits. *See, e.g., Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997) (explaining circumstances under which "testimony can and should be rejected without a trial [because] no reasonable person would believe it"); *Johnson,* 883 F.2d at 129 ("The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.").

Defendant suggests that this review of extra-circuit authority is binding upon this court, while omitting to discuss or quote the next paragraph of *Leslie*, which explains how the general rule has been applied within the Ninth Circuit:

> In cases that [defendant] contends are similar to the present one, [the Ninth Circuit has] held that a court may disregard a "sham" affidavit that a party files to create an issue of fact by contradicting the party's prior deposition testimony*. See Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir.1991) (" '[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.' " (quoting *Foster v. Arcata Assocs., Inc*., 772 F.2d 1453, 1462 (9th Cir.1985))); *cf. Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, --- (1999) (recognizing, without endorsing, similar "sham affidavit" holdings of every circuit).

*Id*. at 1157 (parallel citations omitted).  Notably, the *Leslie* court rejected defendant's arguments that the plaintiff's affidavit should be disregarded as a "sham" because it was contradicted by certain unsworn letters authored by the plaintiff.  Specifically, the *Leslie* court cited *Messick v.*

1  *Horizon Industries, Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995), for

2  the proposition that "the non-moving party is not precluded from

3  elaborating upon, explaining or clarifying prior testimony."[2]

4      Here, Defendant has pointed to no evidence, other than

5  Defendant's and the other alleged co-conspirators' own self-

6  serving affidavits, tending to indicating that Plaintiff's

7  present affidavit is a sham.  This requires the court to find

8  Defendant's submitted testimony credible and Plaintiff's

9  testimony incredible, which the court cannot do on a summary

10 judgment motion.

11     Finally, Defendant quotes an unpublished district court

12 case, *Guthrie v. Darosa*, 1998 U.S. Dist. LEXIS 6004, 5-6, 1998 WL

13 227151 (D. Cal. 1998), for the proposition that a court may

14 disregard testimony that is "so incredible that [it] is unworthy

15 of consideration."

16         Under certain circumstances courts may employ a less
           drastic sanction and "put aside testimony that is so
17         undermined as to be incredible." *Johnson v. Washington
           Metro. Area Transit Auth.*, 883 F.2d 125, 128
18

19       [2] Defendant also cites *Stitt v. Williams*, 919 F.2d 516,
20 523-524 (9th Cir. 1990), in which the plaintiffs sought to avoid
   a statute of limitations defense by submitting declarations
21 stating that they delayed suit in reliance on defendant's
   fraudulent promises over a several-year period.  The Ninth
22 Circuit deemed "highly improbable, given the factual context...."
23 the plaintiffs' assertions that they had relied upon defendant's
   promises, in light of other evidence which demonstrated that the
24 defendant had broken his promises repeatedly "year after year."
   *Id*. at 523.  The Ninth Circuit relied on the principle that "if
25 the factual context makes the non-moving party's claim
   implausible that party must come forward with more persuasive
26 evidence than would otherwise be necessary to show that there is
27 a genuine issue for trial."  Unlike in *Stitt*, where undisputed
   evidence rendered plaintiff's subsequent assertion of reliance
28 implausible, Hollenback cites only interested witness statements
   in support of his assertion that Plaintiff's version of events is
   implausible.

1
2
3
4
5
6
7
8

> (D.C.Cir.1989) (reviewing the discredited testimony that lead to a grant of summary judgment). Similarly, courts may resolve a factual question without submitting the matter to a jury if "a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence * * * or other persuasive evidence that the plaintiff has deliberately committed perjury." *Id* (citing *Ralston Purina Co. v. Hobson*, 554 F.2d 725, 728-29 (5th Cir.1977); *Law v. Virginia Stage Lines*, 444 F.2d 990, 995 (D.C.Cir.1971)). In other words, courts may deem declarations to be so incredible that they are unworthy of consideration.

9
10
11
12
13
14

*Id*.  But, *Guthrie* does not alter the playing field.  *Guthrie* relies on *Johnson*, which, as discussed above, stands for the proposition that self-serving evidence may only be disregarded as incredible if it is contradicted by disinterested witness testimony, undisputed evidence, or is completely without foundation.

15

> **B.  Defendant's Factual Arguments**.

16
17
18
19
20
21
22
23
24
25

Defendant addresses each and every arguably meaningful factual allegation contained in Plaintiff's affidavit, raising many of the same objections to every fact.  For example, Defendant first addresses Plaintiff's assertion that Carmichael made statements that blacks are inferior to whites and Asians in learning and education.  (Doc. 258 at 28.)  Defendant objects that Plaintiff has no direct evidence to support these claims other than his own self-serving affidavit.  But, as discussed above, Plaintiff's affidavit pitted against Carmichael's contrary affidavit merely creates a dispute of fact.

26
27
28

More on point is Defendant's objection that Plaintiff has not established any link between Hollenback and Carmichael.  The alleged racial statements occurred over a year before Hollenback

became involved in Ms. Chhay's case.  Defendant is correct.
However, other evidence, discussed below <u>does</u> link Hollenback to
a conspiracy.  Whether each and every act alleged in Plaintiff's
affidavit is relevant to the claims in this case is an
evidentiary dispute that will be resolved at or before trial.

Defendant also notes that this particular factual allegation
was conspicuously absent from all previous versions of the
complaint.  Defendant asserts that this renders the evidence
"unreliable, implausible, and [insufficient] to show the
existence of a triable issue of fact regarding whether or not a
conspiracy exists."  (*Id*.)  Although Defendant correctly
describes the procedural history of this case, Defendant cites
absolutely no authority for the proposition that omission of
every factual allegation that is evidence of animus from prior
complaints warrants exclusion of more specific allegations on
summary judgment.[3]  *See Messick*, 62 F.3d at 1231 ("the non-moving
party is not precluded from elaborating upon, explaining or
clarifying prior testimony").

Defendant raises essentially identical objections to
numerous other factual allegations, including statements
allegedly made or actions allegedly taken by all of the alleged
co-conspirators, including Ms. Jensen, Judge Silveira, Mr. Tozzi,
Mr. Carmichael, Mr. Strangio, and the bailiff.  Defendant argues
that many of these alleged acts and/or statements are simply
"mind-boggling and delusional."

---

[3]    A complaint need not include the entirety of testimony
that supports each claim.

1
2
3
4
5
6
7

> The type of information put forth by plaintiff is so remarkable, unreliable and unthinkable that it cannot serve as an "inference" of the existence of a conspiracy.  This is not a situation where plaintiff has repeatedly made general allegations of racist, threatening and improper communications between HOLLENBACK and plaintiff in late December 2003 and is only now providing us with the specifics.  Plaintiff never once made any such allegation of any improper conduct between HOLLENBACK and Jensen in late 2003 until the filing of this Renewed Affidavit.  It is not included in any of the Complaints, to and including the operative pleading.  As such, it should not be considered whatsoever by this Court.

8
9
10
11
12
13
14

(Doc. 258 at 34-35.)   This is not an unreasonable description of some of the outrageous language and conduct described in Plaintiff's affidavits.  However, apart from limited circumstances described in the cases discussed below, whether a party's affidavits are "mind-boggling" and/or "delusional" are issues that a jury must determine.

15

### C.   Assuming Plaintiff's Version of the Facts to be True, Does His § 1985 Claim Survive Summary Judgment?

16
17
18
19
20
21
22
23
24

To ultimately prevail on his § 1985 claim, Plaintiff must establish (1) a conspiracy, (2) motivated by race or class-based animus, (3) to impede, hinder, obstruct, or defeat, the due course of justice in any state.  § 1985(2)(clause 2); *see Kush v. Rutledge*, 460 U.S. 719 (1983); *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993)(acknowledging that the second clause of § 1985(2) provides a cause of action for conspiracies to deny access to state courts because of membership in a protected class).

25
26
27
28

Here, Plaintiff alleges that Hollenback conspired with others to impede Plaintiff's access to state court and that this conspiracy was motivated by class based (racial) animus.  At a bare minimum, Plaintiff has presented evidence, if credited, that supports the existence of a conspiracy between Defendant and Ms.

**28**

1  Jensen to dissuade Plaintiff from participating in at least one

2  court proceeding.

3      For example, in late 2003 during the early stages of

4  Hollenback's participation in the child support dispute,

5  Plaintiff maintains that Defendant Hollenback called him "an

6  unkempt lazy lowlife black."  When Plaintiff stated "I have never

7  even met you before...what is your problem...," Hollenback

8  allegedly responded: "My problem is you... you stupid porch

9  monkey... I know that you're a trouble making black sambo."

10 Later during that conversation, Plaintiff asserts that Hollenback

11 warned: "[L]isten lazy nigger boy, I am going to show you how to

12 make trouble..if you know what is good for you, you will stop

13 your bullshit...do me a favor and take your dead beat black ass

14 back to San Jose...You only want Martin Luther King day so that

15 you have an excuse to have a day off work...that day is for

16 nigger lovers...you'll never get that day added to your

17 visitation in this court."

18     In February 2004, on the date Jensen appeared on behalf of

19 Mr. Hollenback.  Plaintiff claims that, outside the hearing room,

20 Ms. Jensen stated: "Mr. Hollenback and I are known in this

21 court...you're going to get yours if you keep it up....[Y]ou just

22 wait[,] Mr. Hollenback and I have something planned for you

23 boy...we're going to put your black ass down...payback is going

24 to be hell."  In addition, Plaintiff asserts that Jensen made

25 other racially derogatory and threatening statements to him

26 regarding the Dr. Martin Luther King Holiday.  (*Id*. at 10.)

27 Among other things, Plaintiff alleges that Jensen told him to

28 "stay tuned you black ape...you're fucking with the wrong

   people...you're going down...I don't care about your damn nigger

**29**

1  holiday or what facts you want on record, you lazy black trouble-
2  making asshole."   Finally, although Plaintiff does not specify
3  when this statement was made, he asserts that Jensen threatened
4  him that she "would get my black ass kicked if [he] continued to
5  make trouble for the court and if [he] continued with the
6  contempt proceedings." (*Id.* at 11.)

7       At the April 22, 2004 Child Support hearing, Defendant
8  Hollenback was present, as was bailiff Vivian Holliday.
9  Plaintiff observed Hollenback conversing with Ms. Holliday and
10 claims to have heard Hollenback explain to her that Plaintiff was
11 a "low life black."  The bailiff then pointed at Plaintiff and
12 "became unduly excited towards [him]." (*Id.* at 14.)  Although
13 Plaintiff was concerned by this conduct, he proceeded with the
14 trial after "reassuring the bailiff" that he was not a "low life
15 black."

16      After the April 22, 2004 hearing, Plaintiff asserts that
17 Defendant Hollenback claimed to have "called the Stanislaus
18 County Housing Authority and told them what a lazy low life black
19 pieces of shit you are...you get nigger justice."  In addition,
20 Plaintiff claims that Defendant Hollenback threatened that "he
21 would knock the teeth out of my black greasy face...and rattle
22 them out of my jive-monkey ass if I showed up for the contempt
23 hearings."  Plaintiff believed that Hollenback was "angry" and
24 Plaintiff "fear[ed] for [his] safety if [he] were to continue
25 with the contempt hearings on May 10 and June 10, 2004." (*Id.* at
26 15-16.)  Plaintiff claims that, as a result of this fear, he
27 withdrew the pending contempt charges.  Plaintiff maintains that
28 he remains in fear today, and that, as a result, he did not
   attend a separate state court proceeding in a different matter.

1    As Defendant concedes in his motion for summary judgment, a
2   defendant's knowledge of and participation in a conspiracy may be
3   inferred from circumstantial evidence and from evidence of the
4   defendant's actions. *Gillbrook v. Westminster*, 177 F.3d 839,
5   856-57 (9th Cir. 1999).  Taken together, Plaintiff's evidence,
6   which the court must assume to be true at this stage, implies
7   that there was an agreement between Ms. Jensen and Mr. Hollenback
8   and that their purpose throughout the critical time period were
9   to deter Plaintiff's access to the courts.  Ms. Jensen allegedly
10  made derogatory remarks to Plaintiff in early 2004, specifically
11  mentioning her ties to Defendant Hollenback.  Moreover, according
12  to Plaintiff's version of the facts, both Defendant and Ms.
13  Jensen used similar language under similar circumstances, further
14  suggesting the existence of a conspiracy.

15   Defendant cites *Gillbrook* for the proposition that the
16  "[m]ere similarity of conduct among various persons and the fact
17  that they may have associated with each other and may have
18  assembled together and may have discussed some common aims and
19  interests, is not necessarily proof of the existence of a
20  conspiracy." *Id*. at 860.  However, this quote is taken from a
21  section of *Gillbrook* that analyzes a jury instruction on
22  conspiracy.  Contrary to Defendant's suggestion, the Ninth
23  Circuit's discussion in *Gillbrook* suggests that although a jury
24  is not required to find that similarity of conduct is evidnece of
25  common aims, a jury is permitted to do so.  This is exactly why
26  this case cannot be decided as a matter of law.

27   As is discussed below, Plaintiff also suggests that various
28  other alleged co-conspirators can be tied into his case simply
    because they also allegedly used derogatory language.  Whether

**31**

1    and to what extent the presentation of such evidence will be

2    permitted at trial is discussed below.

3            **D.   Relevancy of Other Factual Allegations**.

4            Scattered throughout Defendant's briefs are various

5    arguments regarding the propriety of using various acts and

6    statements of alleged co-conspirators to prove that Defendant

7    Hollenback participated in a conspiracy.  Certain of these acts

8    and statements are of questionable relevance to Defendant

9    Hollenback.  Nevertheless, because these matters are entirely

10   disputed by virtue of Plaintiff's sworn testimony, they are not

11   properly the subject of a motion for summary judgment.  Whether

12   any such evidence will be admissible at trial is best determined

13   before or during trial.

14           **E.   Motion for Summary Judgment as to Plaintiff's § 1986**
                  **Claim**.

15
16           The Ninth Circuit has not clearly articulated what a

17   plaintiff must establish to maintain a § 1986 claim.  In *Clark v.*

18   *Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994), the Third Circuit

19   held that a "plaintiff must show that: (1) the defendant had

20   actual knowledge of a § 1985 conspiracy; (2) the defendant had

21   the power to prevent or aid in preventing the commission of a

22   § 1985 violation; (3) the defendant neglected or refused to

23   prevent a § 1985 conspiracy; and (4) a wrongful act was

24   permitted."  The Eighth Circuit has held that "[l]iability under

25   § 1986 'is dependent on proof of actual knowledge by a defendant

26   of the wrongful conduct.'"  *Brandon v. Lotter,* 157 F.3d 537, 539

27   (8th Cir. 1998).  As such, if a plaintiff cannot prevail on a

28   cause of action asserted under § 1985, then "plaintiff has failed

**32**

to state a claim under § 1986." *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978).

The only argument Defendant makes in support of his motion for summary judgment on this claim is that he had "no knowledge, notice or other information regarding the existence of the alleged race animus conspiracy." (Doc. 258 at 44.)  This however, is disputed as discussed above.  Defendant's motion for summary judgment on the § 1986 claim is **DENIED.**

## VI.   CONCLUSION

For the reasons set forth above:

      (1)   Defendant's motion for summary judgment (Doc. 257) is **DENIED;**

      (2)   Plaintiff's cross-motion for summary judgment (Doc. 275) , to the extent it is one, is **DENIED;**

      (3)   Plaintiff's motion to have certain Requests for Admission deemed admitted is **DENIED;**

      (4)   Defendant's motion for sanctions is **DENIED;** and

      (5)   Plaintiff's motion to set a scheduling conference (Doc. 233) is **DENIED AS MOOT,** as a pretrial and trial scheduling order has already been entered (*see* Doc. 289).

IT IS SO ORDERED.

**Dated:   February 6, 2007**          **/s/ Oliver W. Wanger**
b2e55c                                 UNITED STATES DISTRICT JUDGE