IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN JONES, JR., | No. CV-F-05-148 OWW/DLB |
| Plaintiff, | MEMORANDUM DECISION GRANTING IN PART, DENYING IN PART AND DEFERRING IN PART MOTION TO QUASH SUBPOENAS (Doc. 310) |
| vs. | |
| MICHAEL TOZZI, et al., | |
| Defendant. | |

The Honorable Marie Sovey-Silviera, the Honorable Glenn Ritchey, Jr., and the Honorable Jack Jacobsen, judges of the Stanislaus County Superior Court, and Michael Tozzi, Court Executive Office for the Stanislaus County Superior Court, move to quash trial subpoenas issued to them pursuant to Rule 45, Federal Rules of Civil Procedure, by Defendant John J. Hollenback, Jr. The grounds for quashing the trial subpoenas are: (1) movants are state officers who are not subject to federal subpoena because they have not waived their immunity under the Eleventh Amendment; and (2) the testimony sought by the

1

subpoenas requires disclosure of privileged or other protected matter and subjects each movant to undue burden. They also contend, none of them are subpoenaed in their individual capacities, and, if they were, none has any non-cumulative information for which each is the sole source.

### A. **Eleventh Amendment**.

#### 1. **Applicability**.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In contending that the subpoenas must be quashed pursuant to the Eleventh Amendment, movants rely on *Estate of Gonzalez v. Hickman*, 466 F.Supp.2d 1226 (E.D.Cal.2006).

In *Estate of Gonzalez*, plaintiffs filed an action pursuant to 42 U.S.C. § 1983 against defendants employed by the California Department of Corrections and Rehabilitation (CDCR). Plaintiffs filed a motion to compel compliance with subpoenas served on the CDCR seeking information concerning Officer Gonzalez's employment with CDCR. Defendants objected to the subpoenas on the ground that Eleventh Amendment immunity precluded Plaintiffs from compelling the State to produce the requested discovery. Magistrate Judge Hollows ruled that absent a waiver from the State, the Eleventh Amendment bars enforcement of the subpoenas, but further ruled that the State had waived its right to assert

2

1  sovereign immunity by enacting California Government Code §
2  68097.1(b), which provides procedures for serving subpoenas on
3  State employees "required as a witness before *any* court or other
4  tribunal in any civil action". *Id*. at 1227.  In addition, the
5  Magistrate Judge concluded that the *Ex Parte Young* exception to
6  Eleventh Amendment immunity providing an additional ground for
7  granting the motion to compel. *Id*.  On reconsideration, District
8  Judge England ruled that "[t]he language of Government Code
9  section 68097.1(b) does not rise to the level of constituting an
10 'unequivocal expression' of consent sufficient to waive the
11 State's sovereign immunity", that Section 68097.1(b) "was passed
12 to remedy a procedural and administrative problem unrelated to
13 jurisdiction", and that the State "did not use unequivocal
14 language in Government Code section 68097.1(b) leaving room for
15 an alternative reasonable construction that it did not intend to
16 waive its' immunity." *Id.* at 1228-1229.  The District Court also
17 ruled that the *Ex Parte Young* exception to Eleventh Amendment
18 immunity did not apply because "Plaintiffs do not have a federal
19 right to force the State to produce documents that, in a best
20 case scenario, can only assist Plaintiffs in obtaining relief for
21 a past wrong" and because "[t]here is no on going [sic] violation
22 that could support a finding that the present issue falls within
23 the *Ex Parte Young* exception ....". *Id.*
24     This court is not bound by Judge England's decision and, in
25 fact, has not followed it. *See Allen v. Woodford*, 2007 WL 309945
26 (E.D.Cal.2007) at * 3:

3

> Courts focus on the 11th Amendment's purpose to prevent federal court judgments that would have to be paid out of a State's treasury: "(T)he vulnerability of the State's purse (is) the most salient factor in Eleventh Amendment determinations." *Hess v. Port Authority Trans-Hudson Corp.* (1994) 513 U.S. 30, 47 ...; see also *Alaska Cargo Transport, Inc. v. Alaska R.R. Corp.* (9th Cir.1993) 5 F.3d 378, 380. Eleventh Amendment immunity depends on the State's potential legal liability, regardless of the entity's ability to require indemnification from a third party. *Regents of Univ. of Calif. v. Doe* (1997) 519 U.S. 425, 430-431 ... (breach of contract action against the University was barred by 11th Amendment because State was legally liable despite University's right to indemnification from U.S. Government.) Suits against state officers in their individual capacity for damages for violation of federal law (e.g., a federal civil rights suit) are not deemed actions against the state, and hence are not barred by the 11th Amendment. *Scheuer v. Rhodes* (1974) 416 U.S. 232, 237 ....
>
> In the Eastern District, the 11th Amendment precludes a federal subpoena to the state to obtain documents in support of a § 1983 claim. If this Court adopts the CDCR defendants' position, however, the Eleventh Amendment would also bar discovery through them to the State for the same documents. A Civil Rights plaintiff could, therefore, never obtain discovery in § 1983 actions. This is not a logical inference and the Court declines to adopt such a wholesale preclusion of discovery in Civil Rights cases.

In *Laxalt v. C.K. McClatchy*, 109 F.R.D. 632 (D.Nev.1986), the plaintiff sued defendant in a diversity action for libel. The district court rejected a claim by the Nevada State Gaming Control Board that the Eleventh Amendment barred compliance with a federal subpoena for inspection and copying of records in the Board's possession relating to the plaintiff and certain business

4

entities of which he had been a principal.  The Board contended: "Whether or not a particular gaming record should be disclosed to private civil litigants is for the state courts to decide." *Id*. at 633.  The District Court held in pertinent part:

> The Eleventh Amendment bars discovery requests against a nonparty state in civil litigation, according to the Board.  They amount to a 'suit in law or equity' for the purposes of that Amendment, it is argued.  Actions in which discovery was allowed against federal agencies are inapposite, the Board urges, because those agencies are not protected by the Eleventh Amendment as are state agencies.  The fact that the State Legislature provided a specific motion procedure for obtaining a court order authorizing discovery of confidential records indicates its intent to retain discovery under State control, the Board says.  It does not constitute a consent to disclosure in a federal court case where the State is not a party.  A state's waiver of its immunity to suit in its own courts does not mean that the same waiver subjects it to federal court jurisdiction.  The Board cites *Kennecott Copper Corp. v. Tax Comm'n,* 327 U.S. 573, 577-80 ... (1946), for the principle that a waiver by a state of its sovereign immunity against tax suits in its own courts is inapplicable to a federal court suit against the state in the absence of a clear declaration of consent.  The opinion, at page 577, ... notes that the reason for the rule is the direct impact of state tax litigation upon the state's finances.  On page 579 ..., the *Kennecott* court also points out that the particular state (Utah) employs explicit language to indicate its consent to suit in federal court in other kinds of litigation.  The Board contends that the phrase 'in a court of competent jurisdiction' as used in the Nevada Gaming Control Act should be construed to mean only State courts, as in *Kennecott*.
>
> ...

> It is clear that the Eleventh Amendment establishes that a federal court has no jurisdiction over any lawsuit against a state. However, it has been construed to refer to assertions of liability on the state's part and claims for relief against it. *Johnson v. Lankford*, 245 U.S. 541, 545 ... (1918); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 121 ... (1984). In *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 699 ... (1982), the plurality approved the service of process on state officials to secure possession of artifacts held by them. The analogy to the instant proceedings, where inspection and copying of State records is all that is being sought, is apparent. Magistrate Atkins' holding that the Amendment does not bar discovery is not contrary to law.

*Id.* at 634-635.

Although not cited by movants, there is a Ninth Circuit case of relevance to the resolution of the motion to quash. In *United States v. James*, 980 F.2d 1314 (9th Cir.1992), *cert. denied*, 510 U.S. 838 (1993), the defendant was convicted of rape on an Indian reservation in violation of federal statutes. On appeal, the Ninth Circuit upheld the quashing, on tribal sovereign immunity grounds, of a subpoena *duces tecum* issued by the defendant to the Quinault Indian Nation for documents related to the victim's alleged alcohol and drug problems in the possession of the Quinault Indian Nation Department of Social and Health Services. The Ninth Circuit held:

> By making individual Indians subject to federal prosecution for certain crimes, Congress did not address implicitly, much less explicitly, the amenability of the tribes to the processes of the court in which the prosecution is commenced. Thus, we conclude that the Quinault Tribe was

6

>possessed of tribal immunity at the time the subpoena was served, unless the immunity had been waived.

*Id.* at 1319.[1]

Defendant argues that application of Eleventh Amendment immunity to quash these trial subpoenas would bar any percipient witness, who happens to be a state officer, from testifying during a Federal civil rights trial. Such preclusion of key fact witnesses would severely limit a party's ability to prosecute or defend a civil rights claim. Defendant represents that the testimony sought from the movants is not based on their official duties, but is factual and percipient. Defendant contends:

> This is no different than if any of these Judicial Officers were witnesses to a personal injury accident (e.g., a slip and fall in the Courthouse) and later called upon to offer percipient witness testimony during trial. The fact that these percipient observations occurred during their work day as a Judicial Officer should not, unilaterally, preclude these Judicial Officers from honoring these trial subpoenas and their duty to testify as to what they saw, what they did, what they heard, what

---

[1] Magistrate Judge Hollows' ruling in *Estate of Gonzalez*, Misc. No. S-06-0095 MCE GGH (Doc. 17) concluded that *James* was controlling, that *Laxalt v. C.K. McClatchy* was decided without reference to *James* and further stated:

> The undersigned has performed a good bit of research in addition, and cannot find further on point authority involving the requested discovery on a non-party state or state agency in addition to that set forth above. Nevertheless, the court is bound by James in this regard, and finds that to the extent that the subpoenas at issue were directed to a state or state agency, sovereign immunity initially precludes their enforcement.

>they perceived, etc. with respect to the
>claims asserted by plaintiff.

Arguably, *James* is not controlling because it did not involve Eleventh Amendment immunity. Other than *Estate of Gonzalez* and *Laxalt,* there do not appear to be any other reported decisions involving the issue raised by the motion to quash. Because the Supreme Court has construed Eleventh Amendment immunity to be liability from suit because of the possibility that a judgment will be paid out of the State's treasury, the Eleventh Amendment, by its terms and purposes, does not apply to the trial subpoenas at issue.

### 2. **Waiver**.

Defendant argues that movants have waived any Eleventh Amendment immunity because Mr. Tozzi submitted a Declaration in support of Defendant's motion for summary judgment. Even if, *arguendo*, the Eleventh Amendment applies to the trial subpoenas, his waiver by providing prior testimony in this case is an independent basis for enforcement of the subpoena issued to Mr. Tozzi.

### B. **Testimony of Judges' Protected from Disclosure**.

Movant judges also seek to quash the subpoenas, contending that, under both federal and California law, a judge is not permitted to be questioned about any matter that came before him or her while he or she was in his judicial capacity.

Movants rely primarily upon *United States v. Roth*, 332 F.Supp.2d 565 (S.D.N.Y.2004) and *United States v. Frankenthal*,

8

582 F.2d 1102 (7th Cir.1978).

In *Roth,* defendants in a criminal case issued a subpoena to a state trial judge who had accepted a reduced plea in a related case, seeking his testimony as a fact witness and regarding his mental processes in accepting the plea. In quashing the subpoena, the District Court noted:

> [T]he overwhelming authority from the federal courts in this country, including the United States Supreme Court, makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties.

*Id.* at 567. The District Court then addressed whether Defendants could require the judge to testify as a fact witness:

> ... [T]here are limited circumstances where a judge's factual testimony is so essential that the general prohibition against judicial testimony may be compromised. The Seventh Circuit has developed an analysis to be applied when determining whether such 'limited circumstances' exist. In *United States v. Frankenthal*, 582 F.2d 1102 (7th Cir.1978), the Seventh Circuit allowed the introduction of judicial testimony because the judge 'possessed factual knowledge that was highly pertinent to the jury's task, and he was the only possible source of testimony on that knowledge. *Id*. at 1108. However, in reaching its decision, the *Frankenthal* Court cautioned that 'calling a judge to give testimony in any proceeding is a very delicate matter.' *Id.* at 1107. In fact, the judge's testimony was only permitted because the judge was only required to give '***brief, strictly factual testimony.'*** *Id.* at 1108 (emphasis added).
>
> ... Accordingly, this Court finds that a judge may only be required to testify if he (1) possesses factual knowledge, (2) that

9

> knowledge is highly pertinent to the jury's task, and (3) is the only possible source of testimony on the relevant factual information.

*Id.* at 568.

Movants correctly contend that they cannot be compelled to explain their thought processes or motivations for their opinions, rulings or other judicial acts.

With regard to the subpoenas issued to Judge Jacobsen and Judge Ritchey, the motion to quash is GRANTED.

Judge Jacobsen is subpoenaed to provide testimony regarding Plaintiff's allegations that Judge Sovey-Silviera entered his courtroom on April 15, 2004 during a contempt hearing involving Plaintiff, where Defendant appeared as attorney for an adverse party; that Judge Sovey-Silviera showed Plaintiff a sign with the letters "MLK Day" with a circle around it and a line crossing it; and that Judge Sovey-Silviera looked at Defendant, received a "thumbs up" sign from Defendant and gave a "thumbs up gesture back to Defendant. Defendant makes no offer of proof as to what Judge Jacobsen would testify to if called as a witness, so it cannot be determined that Judge Jacobsen has factual knowledge of these allegations. Further, other persons present in Judge Jacobsen's courtroom during the April 15, 2004 hearing can testify whether Judge Sovey-Silviera and Defendant acted in the manner Plaintiff alleges.

Judge Ritchey is subpoenaed to testify concerning a conversation Defendant allegedly had with Deputy Sheriff Vivian

Holliday in Judge Ritchey's chambers before Plaintiff's trial on April 22, 2004, wherein Defendant allegedly referred to Plaintiff as a "low life black" and about threatening and raced-based comments allegedly made by Defendant to Plaintiff at the conclusion of the April 22, 2004 hearing.  Although Judge Ritchey may have information concerning the alleged statements in chambers prior to trial, there is no offer of proof that Judge Ritchey witnessed any conversations or confrontation between Plaintiff and Defendant at the conclusion of the trial.  Further, Judge Ritchey is not the only possible source of this testimony. Defendant can call the bailiff as a witness and can call as witnesses any other persons who were in the courtroom following the trial.

With regard to the subpoena issued to Judge Sovey-Silviera, the motion to quash is GRANTED IN PART AND DENIED IN PART.

With regard to Plaintiff's allegations that Judge Sovey-Silviera made racially offensive comments to Plaintiff during hearings in December 2002 and April, 2003, Defendant can introduce the transcript or audio recording of those hearings in his defense.  Therefore, Judge Sovey-Silviera is not the only possible source of this information.

However, Judge Sovey-Silviera may appear as a witness in her individual capacity to testify concerning the allegations that she entered Judge Jacobsen's courtroom with the "sign" and exchanged gestures with Defendant, and she may testify whether she knows Plaintiff, bears him any racial animus and/or whether

11

she was part of the alleged conspiracy.

With regard to the subpoena issued to Michael Tozzi, the motion to quash is GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART.

Although Michael Tozzi is not a judge, he is a quasi-judicial officer.  Therefore, the factors set forth in *Frankenthal* and *Roth* apply.

To the extent Michael Tozzi is sought as a witness to testify with regard to racially-motivated statements or actions made in his presence by Carmichael and Strangio, Michael Tozzi is not the only source of information.  Defendant may call Carmichael, Strangio and any other persons who were present as witnesses.

With regard to Plaintiff's allegations that Mr. Tozzi failed to appear at a hearing on March 15, 2004 after being served by Plaintiff through a process server with a subpoena, Mr. Tozzi is the only source of information to refute Plaintiff's allegations.  Therefore, Mr. Tozzi may be a witness on this issue.  In addition, Mr. Tozzi may testify with regard to Plaintiff's allegations that Mr. Tozzi was part of the alleged race-based conspiracy.

With regard to Plaintiff's allegations that Leslie Jensen told Plaintiff that Plaintiff's letters complaining about Mr. Tozzi were ineffective, resolution of the motion to quash as to Mr. Tozzi is deferred until a resolution of the relevance and admissibility of such evidence is determined.

**CONCLUSION**

For the reasons set forth above:

1. The Motion to Quash Subpoenas is GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART as stated above;

2. Defendant shall prepare an Order, review it with the Attorney General, and submit it for review and filing within five days following service of the Memorandum Decision.

IT IS SO ORDERED.

**Dated:   April 27, 2007**                              /s/ Oliver W. Wanger
                                                         UNITED STATES DISTRICT JUDGE