IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN JONES, JR.,<br><br><br>               Plaintiff,<br><br>      vs.<br><br>JOHN J. HOLLENBACK, JR.,<br><br>          Defendant.<br>_____ | No. CV-F-05-148 OWW/DLB<br><br>MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEYS' FEES (Doc. 376); DENYING PLAINTIFF'S SPECIAL MOTION TO STRIKE  COUNTER-MOTION FOR SANCTIONS UNDER RULE 11 (Doc. 395); STRIKING DOCS. 380, 384, 386, 387, 388, 397, 400, 405, 406; AND DENYING AS MOOT PLAINTIFF'S MOTIONS FOR SANCTIONS (Docs. 397, 400, 405, 406) |

On June 12, 2007, Defendant John Hollenback timely moved for an award of attorneys' fees against Plaintiff, Melvin Jones, Jr., pursuant to 42 U.S.C. § 1988 in the amount of $92,975.50. Defendant's motion for attorney's fees was heard on February 11, 2008 and taken under submission.

    A.   <u>PLAINTIFF'S WITHDRAWAL OF VARIOUS OPPOSITIONS AND/OR COUNTER-MOTIONS</u>.

Plaintiff filed the following described oppositions and/or counter-motions in connection with Defendant's motion for attorney's fees:

1.   July 19, 2007: Plaintiff's "Response in Opposition to defendant's Motion for FEES" (Doc. 380);

2.   September 5, 2007: "<u>Plaintiff's</u> Counter-Motion as to Defendant's Motion for FEES" (Doc. 384);

3.   September 19, 2007: "<u>Plaintiff's</u>: Supplemented Motion (Doc # 384)" (Doc. 386);

4.   September 24, 2007: "<u>Plaintiff's</u> Additional <u>CROSS-MOTION</u> in opposition to Defendant's FEE MOTION" (Doc. 387);

5.   September 27, 2007: "<u>PLAINTIFF'S</u>: Final Response in opposition to FEE MOTION, and Request Per FRCP 59(d)" (Doc. 388);

6.   October 9, 2007: "<u>Plaintiff's</u>: Rule 18, 19, 20 and 22 CROSS-MOTION in opposition to defendants FEE MOTION as to SILVERIA" (Doc. 389);

7.   October 9, 2007: "<u>Plaintiff's</u> supplement to Doc # 387, and Doc # 388 (Rule 54(d)(2)(8) Request and other requests and notices" (Doc. 390);

8.   October 17, 2007: "<u>Plaintiff's</u>: counter-motion in opposition to defendant's MOTION FOR FEES (Request under Rule 21, 20, 19 & 18)" (Doc. 391);

9.   November 5, 2007: "Plaintiff's (1.) counter-motion for costs in opposition to defendants post judgment fee motion. [¶](2.) SPECIAL MOTION TO STRIKE. [¶] (3.) counter-motion for sanctions as to material misrepresentations made to the Court.

1  [¶] (4.) and/or in alternative to opposition to defendant Post

2  judgment fee motion, request for limited discovery as to ANY/ALL

3  fee or cost agreements as to defendant. [¶] (5.) and/or in the

4  alternative, opposition to defendant's post judgment fee motion,

5  as NOT being proper per S. 1988, as to the S. 1988 prevailing

6  party-rule. [¶] (6.) and/or in the alternative, opposition to

7  defendant's post judgment fee motion as Pro Se Jones being

8  technically the prevailing party. [¶] (7.)  and/or in the

9  alternative, opposition to defendant's post judgment fee motion

10 due to defendant having WAIVED proper assertion of the

11 prevailing-party rule. [¶] (8.) and or in the alterative,

12 opposition to defendant's post judgment fee motion as said claim

13 NOT having been tried at trial, and/or DOES NOT arise from common

14 nucleus of operative fact with any claims tried at trial."  (Doc.

15 395).  Doc. 395 states: "This Counter-Motion/Opposition as to

16 post-Judgment FEE MOTION SUPERSEDES Plaintiff's previous filings

17 Regarding opposition to said FEE MOTION";

18        10.  November 5, 2007: "Plaintiff's: Additional

19 Evidence to support Request(s) in Plaintiff's DOC # (Sanctions

20 Motion)."  (Doc. 397);

21        11.  November 26, 2007: "Plaintiff's: (Counter-Motion)

22 Request for Sanctions against Defense Counsel Daniel Wainwright,

23 in opposition/response to Defendant's Motion FOR FEES."  (Doc.

24 400);

25        12.  January 2, 2008: "Plaintiff's: Separate Motion for

26 Sanctions, in Response/Opposition to Defendant's fee motion."

(Doc. 405);

13.   January 2, 2008: "Plaintiff's: Rule 26 REQUESTS FOR SANCTIONS DUE TO 'IMPROPER CERTIFICATION" In Opposition to DEFENDANTs MOTION FOR FEES (Response in Opposition to defendant's FEE MOTION)."  (Doc. 406);

14.   February 7, 2007: "PLAINTIFF's: request for JUDICIAL NOTICE OF ATTACHMENT 'A' AND NOTICE OF REQUEST."  (Doc. 413).

Because of Plaintiff's representation in Doc. 395 filed on November 5, 2007 that he intends Doc. 395 to supersede all previous filings in connection with Defendant's motion for attorney's fees, Docs. 380, 384, 386, 387, 388, 389, 390, and 391 are ORDERED STRICKEN.

By email to Mr. Wainwright dated February 6, 2007 (forwarded to Courtroom Deputy Timken), Plaintiff stated that on February 11, 2008 "Plaintiff Jones will supplement and re-notice his pending Rule 60 motion set to be heard on 3/3/2008 as an independent action for fraud upon the court. [¶] Also, I will present NO ARGUMENT, etc. as to the pending Rule 60 motion, and will withdraw any request(s) that said Rule 60 motion be considered on 2/11/2008. [¶] Hearing date for said re-noticed Rule 60 motion will be set (re-set) for APRIL 28, 2008."

On February 7, 2008, Plaintiff filed "PLAINTIFF's request for JUDICIAL NOTICE OF ATTACHMENT 'A' AND NOTICE OF REQUEST." Plaintiff asserts that, at the February 11, 2008 hearing on Defendant's motion for attorney's fees, he will request "to have

4

his pending motions (any/all) which relate to Defense misconduct/FRAUD to BE TREATED as motions brought under Rule 60, or in the alternative Jones withdraws (will on 2/11/2008) at oral argument any/ALL Requests/Motions pertaining to/Related to defense misconduct DUE to the FACT, Jones will File (on/about 2/12/2008) a complaint/ACTION FOR Independent Relief [<u>See Attachment</u> 'A' affixed hereto - a true copy of said independent ACTION]."

At the hearing on February 11, 2008, Plaintiff withdrew all oppositions, motions or counter-motions to Defendant's motion for attorney's fees except Doc. 395.  Consequently, the motions for sanctions set forth in Docs. 397, 400, 405, 406 are DENIED AS MOOT.

B.   <u>GOVERNING STANDARDS</u>.

Rule 54-293, Local Rules of Practice, governs the award of attorneys' fees in the Eastern District.  The motion for attorneys' fees must include an affidavit of counsel showing:

> (1) that the moving party was a prevailing party, in whole or in part;
>
> (2) the moving party is eligible to receive an award of attorneys' fees, and the basis for such eligibility;
>
> (3) the amount of attorneys' fees sought;
>
> (4) the information pertaining to each of the criteria set forth in subsection (c) of this Rule; and
>
> (5) such other matters as are required under the statute under which the fee award is claimed.

*Id.*.

The district court has discretion to award reasonable attorneys' fees to a prevailing party in a civil rights action. 42 U.S.C. § 1988.  A prevailing defendant in a civil rights action is not entitled to attorney fees under § 1988 merely because the defendant prevails on the merits of the suit.  *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir.1994). "District courts are authorized to award attorneys' fees to a prevailing defendant in civil rights cases only in those exceptional cases when the action is unreasonable, frivolous, meritless, or without foundation, or when the plaintiff continues to litigate after it clearly becomes so." *Herb Hallman Chevrolet, Inc. v. Nash*, 169 F.3d 636, 645 (9th Cir.1999) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). "[I]f a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." *Christiansburg*, *id.*  "In determining whether this standard has been met, a district court must assess the claim at the time the complaint was filed, and must avoid 'post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir.2006).  This standard is applied with special force when the plaintiff is proceeding pro se and may not be able to recognize the "subtle factual or legal deficiencies in his claims." *Hughes*

6

*v. Rowe*, 449 U.S. 5, 15 (1980).   The *Christiansburg Garment* court reasoned:

>           This kind of hindsight logic could discourage
>           all but the most airtight claims, for seldom
>           can a prospective plaintiff be sure of
>           ultimate success.  No matter how honest one's
>           belief that he has been the victim of
>           discrimination, no matter how meritorious
>           one's claim may appear at the outset, the
>           course of litigation is rarely predictable.
>           Decisive facts may not emerge until discovery
>           or trial.  The law may change or clarify in
>           the midst of litigation.  Even when the law
>           or facts appear questionable or unfavorable
>           at the outset, a party may have an entirely
>           reasonable ground for bringing suit.

*Id.* at 422.  A Defendant seeking attorneys' fees has the burden of establishing that the action is frivolous or vexatious.  *Klotz v. United States*, 602 F.2d 920, 924 (9th Cir.1979).  Where each claim involved complex constitutional questions which were not easily resolved, the trial court did not abuse its discretion in denying attorneys' fees.  *See Park v. Watson*, 716 F.3d 646, 664 (9th Cir.1983).

      In *E.E.O.C. v. Bruno's Restaurant*, 13 F.3d 285, 288 (9th Cir.1993), the Ninth Circuit rejected application of the test set forth in *EEOC V. Kip's Big Boy, Inc.*, 424 F.Supp. 500, 503 (N.D.Tex.1977):

>           which invites consideration of the
>           credibility of the plaintiff's witnesses and
>           whether the defendant came forth with
>           convincing and highly credible evidence to
>           rebut each individual charge of
>           discrimination.  Such an inquiry potentially
>           invites the court to engage in the kind of
>           *post-hoc* reasoning condemned by *Christianburg*
>           ....

**B.   MERITLESS OR FRIVOLOUS NATURE OF PLAINTIFF'S ACTION.**

In contending that this lawsuit was frivolous and vexatious, Defendant submits the Declaration of Daniel L. Wainwright, his attorney in this litigation.   Mr. Wainwright avers in pertinent part:

> 7.   At the conclusion of the May 10, 2007 jury trial, I had a chance to speak with 4 or 5 of the jurors.   Each expressed disbelief that this matter even went to trial because Plaintiff had no evidence, made ridiculous and unbelievable accusations, and the jurors had absolutely no questions, whatsoever, that my client had done nothing wrong and that he was a victim of a frivolous lawsuit.   In fact, one or more of the jurors even apologized to my client for the fact that he had to subjected [sic] to such a baseless lawsuit.

> 8.   The above entitled action was brought by Plaintiff to seek damages under 42 U.S.C. §§ 1985 and 1986.   This litigation initially began in February 2005.   I was only retained in this case in December 2005.   This lawsuit has now been resolved, by way of a defense jury verdict, on May 10, 2007 ....

> 9.   My client did not have any insurance coverage for Plaintiff's claims.   Thus, I have been billing him directly for the legal fees and costs incurred in this case.   Each and every dollar billed in this case is to be paid by my client and not some deep-pocket insurance company.   As such, my client has incurred a huge financial set-back by having to pay for the defense of his good name and professional reputation.

> ...

> 11.   This litigation has involved numerous Court hearings, numerous filings and pleadings (in excess of 370 documents, and counting), complex legal issue, ever changing factual allegations, numerous witnesses and a great deal of my professional time.

8

Plaintiff's behavior made the litigation of this matter much more difficult since my client consistently had numerous filings and Motions to respond to all of which carried sensitive deadlines.  This required constant attention to this matter and excluded my acceptance of other work.

12.  During the time that Plaintiff was claiming a § 1981 violation and various state court claims, I filed a Motion to Dismiss and Anti-SLAPP Motion.  This Motion to Dismiss was granted and Plaintiff filed the subject Complaint.

13.  Thereafter, I brought a Motion for Summary Judgment.  The Court deferred ruling on this Motion in order to allow Plaintiff time to conduct discovery.  The Court granted portions of theist [sic] Motion and allowed Plaintiff more time to complete more discovery.

14.  Extensive written discovery (consisting of hundreds and hundreds of request for admission) was propounded by Plaintiff and responded to by Defendant.

15.  Thereafter, I caused to be filed a Renewed Motion for Summary Judgment.  In response to this Motion, Plaintiff created and invented new facts.  Ultimately, the Court denied our motion and said that this matter must be adjudicated by a jury after trial.

16.  In February 2007, I took Plaintiff's deposition.

17.  Thereafter, I prepared this matter for trial.  This involved numerous hearings, numerous pre-trial documents and extensive time and efforts.  Because of the numerous witnesses in this case, I spent a great deal of time interviewing witnesses and preparing for their trial testimony.  Plaintiff even failed to attend the pre-trial document exchange conference in Modesto, as had been set forth in the Pretrial order.

This case arose out of a child custody dispute between

9

Plaintiff and Kea Chhay, the mother of Plaintiff's minor child. The child custody dispute appears to have been first filed in the Santa Clara County Superior Court.  During a hearing held on November 15, 2001, the presiding judge in Santa Clara warned Plaintiff that he would be declared a vexatious litigant if he filed additional motions in that case.  The child custody dispute was subsequently transferred to the Stanislaus County Superior Court.  Plaintiff's allegations of race-based conspiracy arose following Plaintiff's defeat in the family law matter in the Stanislaus County Superior Court and during two hearings in the Stanislaus County Superior Court, the first on April 15, 2004 for contempt and the second on April 22, 2004 for child support.  The record of Plaintiff's filings in this Court in other actions related to the family law proceedings in the Stanislaus County Superior Court as well as in this action detailed below establishes Plaintiff's penchant for meritless, vexatious, ever-evolving theories and charging factual allegations.

      1.   <u>PLAINTIFF'S RELATED ACTIONS</u>.

      a.   <u>*Melvin Jones, Jr. v. State of California*, No. CV-F-04-6566 OWW/DLB</u>.

On September 9, 2004, Plaintiff filed *Melvin Jones, Jr. v. State of California,* in the United States District Court for the Eastern District of California, Sacramento Division.  Plaintiff filed four Amended Complaints in this action before the action was transferred to this Court and assigned Case No. CV-F-04-6566 OWW/DLB.  Plaintiff never requested leave to file, and rather,

simply filed the second, third and fourth amended complaints.
The last amended complaint was filed on October 18, 2004 and
named only the State of California as defendant.  The October 18,
2004 amended complaint alleged that Judge Sovey-Silveria, Judge
Mayhew, Judge Siefkin, Judge Vanderwall, Judge Ritchey, and Judge
Jack Jacobsen of the Stanislaus County Superior Court, Stanislaus
County Superior Court Commissioner Richard Allen, and Michael
Tozzi, Executive Officer of the Stanislaus County Superior Court
failed to comply with various California Rules of Court and
California statutes during child custody proceedings in 2002-
2004, thereby violating Plaintiff's rights to due process and
equal protection under the law and the California Constitution;
and alleged that Stanislaus County Superior Court mediator Don
Strangio had conflicts of interest with Stanislaus County
Superior Court custody evaluator Steven Carmichael and  Attorney
Leslie Jensen, prior counsel for the mother of Plaintiff's child,
Ms. Chhay, who was the adverse parent party in the family law
dispute against Plaintiff.  Paragraph 28 of the Amended Complaint
alleged:

> 28.  On 01/22/04 A hearing took place in
> dept. 16 of the Superior Court of Stanislaus
> County; Commissioner, Richard Allen
> presiding.  During said hearing, John
> Hollenback, the attorney for the Respondent
> (a high level employee of the same Superior
> Court) was allowed to threaten the Plaintiff.
> Said threat is in violation of CCP 128.5 and
> CCP 128.6 as said threat was a deliberate
> attempt to harass Plaintiff and in direct
> violation of the Plaintiff's XIV amendment
> rights.  Plaintiff has ordered a tape of said
> proceedings from said Superior Court and will

> provide transcription of said tape as
> evidence at trial.

The Amended Complaint prayed for damages in the amount of
$4,100,000, and specified injunctive relief.  When Plaintiff
moved for a preliminary injunction nullifying the Stanislaus
Court's October 2, 2003 order regarding child custody, and
requiring the withdrawal of Penny Lane, the minor child's court-
appointed counselor, from the family law case, this Court ruled
that it had no jurisdiction to issue any type of injunctive order
against the family law proceeding in the Stanislaus Superior
Court and denied the motion for preliminary injunction.  (Order
filed on January 18, 2005, Doc. 27, No. CV-F-04-6566 OWW/DLB).
Plaintiff then moved for "voluntary discontinuance and voluntary
non-suit" and the case was dismissed without prejudice by Order
filed on August 4, 2005.  (Doc.29, No. CV-F-04-6566 OWW/DLB).

On June 21, 2007, Plaintiff filed an Amended Complaint in
this action, naming as defendants the Stanislaus County Superior
Court, Leslie Jensen, and Sandra Lucas. (Doc. 30)  The Amended
Complaint was stricken by Order filed on June 27, 2007 (Doc. 31).

   b.  *Melvin Jones, Jr. v. Don Strangio and Steven
Carmichael*, No. CV-F-04-6567 OWW/SMS.

On September 7, 2004, Plaintiff filed *Melvin Jones, Jr. v.
Don Strangio and Steven Carmichael*, in the United States District
Court for the Eastern District of California, Sacramento
Division.  Plaintiff filed an amended complaint on September 27,
2004.  The amended complaint alleged that court-appointed

12

1  mediator Strangio and custody evaluator Carmichael had conflicts

2  of interest; that failure to disclose these conflicts of interest

3  deprived Plaintiff of his rights to due process and equal

4  protection; and sought $800,000 damages and specified injunctive

5  relief.  The action was transferred to this Court on November 17,

6  2004 and assigned Case No. CV-F-04-6567 OWW/SMS.  Plaintiff's

7  motion for injunction to compel Strangio and Carmichael to

8  withdraw from Plaintiff's family law case immediately, was denied

9  by Order filed on January 14, 2005, because no federal

10 jurisdiction existed to issue any type of injunctive order

11 against the Stanislaus County Superior Court family law

12 proceeding.  (Doc. 41, p.4).   The Court granted summary judgment

13 for the defendants because the *Rooker-Feldman* doctrine barred the

14 allegations in Plaintiff's complaint, because the defendants

15 enjoy absolute immunity from suit, and because Plaintiff could

16 not establish a constitutional violation.  (Order filed on March

17 16, 2005, Doc. 72, No. CV-F-04-6567 OWW/SMS).  This summary

18 judgment was affirmed by the Ninth Circuit on December 7, 2006.

19          c.   *Melvin Jones, Jr. v. Don Strangio*, No. CV-F-

20 *05-410 OWW/DLB*.

21     *Melvin Jones, Jr. v. Don Strangio,* No. CV-F-05-410 OWW/DLB,

22 was commenced on March 28, 2005, against Don Strangio.   The

23 Complaint alleged:

24          6.   ... [D]efendant and co-conspirators
                 Michael Tozzi, Marie Sovey-Silveria, Leslie
25               Jensen, and John Hollenback did corruptly
                 conspire (out of court) ... with the
26               mediator/evaluator of Plaintiff's family law

13

case to suppress, and conceal defendant
Strangio, and Leslie Jensen's OMISSION of the
fact that defendant Strangio and (Leslie
Jensen) Attorney for the opposing party in
Plaintiff's family law case DO HAVE A
PSYCHOLOGIST-PATIENT relationship.  And did
conspire (out-of-court) with personal, and
class-based animus.  And is so doing, did
deprive Plaintiff of his Civil Rights.
Further, defendant and fore mentioned [sic]
co-conspirators did conspire (out-of-court)
... for the purpose of impeding, hindering,
obstructing, and defeating the due course of
justice, with the intent to deny Plaintiff
equal protection of the law(s).  And did so
by intimidation, threat, and retaliation, and
did so with personal, and class-based animus.

The Complaint was dismissed with prejudice because the March 16,

2005 Order in No. CV-F-04-6567 concluded that Strangio was

absolutely immune from liability and on the ground of res

judicata.  Plaintiff was cautioned "that the filing of meritless

or vexatious claims is not permissible."  (Order filed on April

20, 2005, Doc. 4, No. CV-F-05-410 OWW/DLB).

    Defendant argues that Plaintiff's "pattern of vindictive

retaliatory litigation evidences improper motivation on the part

of the Plaintiff designed to burden and harass the Defendant and

is of the type which Congress intended to discourage by awarding

attorney fees to the Defendant."  Defendant contends:

The evidence is undisputed that Plaintiff
filed numerous different claims and
allegations against innocent defendants,
including suits against attorneys, bailiffs,
and judges following his repeated unfavorable
results in the family law actions in which he
was involved.  Even in this case, he
initially alleged a § 1983 claim, then §
1981, then state tort claims, and then
finally in his tenth version of this
Complaint, he alleged a § 1985/1986 claim.

14

> Plaintiff is a litigious man who continues to emphasize this characteristic via multiplicious groundless lawsuits where the only thing he can ultimately prove is that he has the power to cause an amazing amount of inconvenience, hassle and embarrassment through abuse of the legal system. Plaintiff's vexatious litigiousness has subjected and will continue to subject innocent defendants to considerable expenses in preparation for essentially useless trials. Plaintiff must accept responsibility for the burden which he imposes and pay for Defendant's reasonable attorney fees.

Defendant argues that he has been forced to incur substantial costs in defending Plaintiff's meritless claims and that "[i]f this Court does not punish Plaintiff with paying the defense legal fees for his repeated abuse of the court system, many more innocent people will surely fall victim to his bad faith bullying tactics."  Defendant asserts:

> During closing argument on May 10, 2007, Plaintiff displayed his litigious nature by claiming he was going to make complaints against two trial witnesses, namely Leslie Jensen and Sandra Lucas.  Since the defense verdict Plaintiff continues to make claims that he will bring civil actions and/or other types of claims against all of those individuals involved in the underlying family law case.

Defendant further argues that Plaintiff's claims lacked evidentiary foundation.  Although Plaintiff was able to create a triable issue of fact in defeating summary judgment motions, Defendant argues that this does not render Plaintiff's claims meritorious:

> Instead, it means that Plaintiff is able to lie, misstate facts, jump to ridiculous conclusions and invent further alleged bad

15

1    acts.  In short, it means that Plaintiff is
     able to create fiction and change his story
2    in order to meet his needs.  Plaintiff was
     only ably [sic] to defeat the two Motions for
3    Summary Judgment (even though portions of the
     Motions were granted as was Defendant's
4    earlier Motion to Strike), he was only able
     to do this because Plaintiff was willing to
5    perjure himself without any fear of
     punishment or financial repercussions.
6
     Defendant argues that the record shows that all of the claims
7
     remaining at the time of trial lacked evidentiary foundation:
8
9    Plaintiff created his own evidence, relied on
     hearsay evidence, repeatedly revised his
     testimony to overcome dispositive motions,
10   and generally invented testimony.  In sum,
     Plaintiff's ever changing evidence was
11   implausible and unbelievable.  Plaintiff had
     absolutely no supporting evidence of his
12   claims.  Instead, he merely relied on his own
     testimony and a few self-serving and
13   immaterial documents.

14       Plaintiff argues that Defendant has not carried his burden

15   of demonstrating that Plaintiff's action was frivolous or

16   vexatious.  Plaintiff points to the denials of Defendant's

17   motions for summary judgment.

18            2.   PLAINTIFF'S FILINGS IN THIS ACTION.

19       Plaintiff commenced this action by Complaint filed on

20   February 3, 2005 pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985

21   (conspiracy to interfere with civil rights), and 42 U.S.C. § 1986

22   (action for neglect to prevent interference with civil rights).

23   Defendants were Stanislaus County Superior Court Executive

24   Officer Michael Tozzi, Stanislaus County Superior Court Judge

25   Marie Sovey-Silveria, Leslie Jensen, and John Hollenback.  The

26   Complaint alleged an undisclosed conflict of interest between

                                   16

court-appointed mediator Strangio and custody evaluator
Carmichael in violation of Plaintiff's "fundamental Fourteenth
Amendment rights"; that Judge Sovey-Silveria and Leslie Jensen,
John Hollenback and Michael Tozzi failed to comply with
California Rules of Court, California Rules of Professional
Conduct, and the California Code of Civil Procedure during
proceedings in the Stanislaus County Superior Court involving
Plaintiff's family law matter on October 8, 2002, December 10,
2002, April 22, 2003, May 15, 2003, May 27, 2003, June 3, 2003,
September 24, 2003, January 22, 2004, March 2, 2004, March 15,
2004, and March 29, 2004.  The only specific allegations against
Defendant Hollenback were:

> 27.  On <u>01/22/04</u> A hearing took place in
> dept. 16 of the Superior Court of Stanislaus
> County; During hearing, John Hollenback,
> attorney for the Respondent in Plaintiff's
> family law case (and high level employee of
> the same Superior Court) threatened
> Plaintiff.  Said threat is in violation of:
> CCP 128.5, CCP 128.6, applicable CA. State
> Bar Ethical Codes, and the principal of
> fundamental fairness, said harassment
> violates Plaintiff's 14th amendment rights.
> Plaintiff has ordered a tape of said
> proceedings, which will be presented at
> evidence at trial.

> 28.  On or about <u>02/2004</u> - Attorney Leslie
> Jensen appeared at a hearing in dept. 16 on
> behalf of Attorney John Hollenback.  Both
> Attorney's Jensen and Hollenback failed to
> comply with CA. rule of Court 5.210, 5.220,
> applicable CA. State Bar Ethical Standards,
> and applicable Civil Code of Procedure
> related to Attorney Jensen's conflicted
> status with Mediator Strangio.

> 29.  On <u>03/02/04</u> - A hearing was held in
> dept. 13 of the Superior Court of Stanislaus.

17

Attorney Hollenback failed to comply with CA. rule of Court 5.210, 5.220, applicable CA. State Bar Ethical Standards, and applicable Civil Code of Procedure related to Attorney Jensen's conflicted status with Mediator Strangio.

32.   On or about <u>03/29/04</u> - Attorney Hollenback unduly interfered with Plaintiff's Job Search with the Stanislaus County Housing Department, which is harassment and violates Plaintiff's fundamental XIV Amendment Rights. Attorney Hollenback failed to comply with CA. rule of Court 5.210, 5.220, applicable CA. State Bar Ethical Standards, and applicable Civil Code of Procedure related to Attorney Jensen's conflicted status with Mediator Strangio.

The Complaint prayed for $1,500,000.00 damages and $4,100,000.00 punitive damages and the following injunctive relief:

1.)   <u>This Honorable Federal Court initiate a Federal investigation</u> into All relevant departments, judicial functions, and court personnel of Stanislaus Superior Court as this Court deems in the interest of justice.

2.)   Defendant Michael Tozzi disclose to this Honorable Court any/all cases referred from the Probate department of Stanislaus County Superior Court for custody evaluation and/or mediation to 706 13th Street - Modesto, Ca. within the past 36 months.

3.)   Defendant Leslie Jensen disclose to this Honorable Federal Court any/all Stanislaus County family law probate cases within the past 36 months wherein she acted as the Attorney, and note the specific probate investigator.

4.)   Defendant John Hollenback disclose to the Honorable Federal Court any/all Stanislaus County family law probate cases within the past 36 months wherein he acted as the Attorney, and not the specific probate investigator.

On March 3, 2005, Plaintiff filed a First Amended Complaint

18

against the same Defendants (Doc. 7).   The First Amended

Complaint is essentially identical to the Complaint, except that

it alleges:

> 33.  On 4/15/2004 - during a trial
> in dept. 13 of said Superior Court
> (wherein Respondent of Plaintiff's
> family law case [and employee of
> the same Superior Court] faced
> numerous contempt charges), Marie
> Silveria interrupted the trial
> (Judge Jack Jacobsen was presiding)
> - Silveria's non-verbal gestures,
> and conduct were sensed and
> observed by Plaintiff to be
> harassment, reprisal/retaliatory,
> and a furtherance of conspiracy.
> Silveria was not presiding in the
> case at hand, her comments were at
> best administrative actions, non
> judicial in nature; thereby not
> shielded by judicial immunity.  A
> tape of the proceeding has been
> ordered by Plaintiff, and will be
> provided at trial as further
> evidence.
>
> 34.  On or about 2/2005 - Michael Tozzi
> issued a declaration in support of Mediator
> Don Strangio.  Said declaration authenticates
> Plaintiff's correspondence with, and from
> Tozzi, and is furtherance of conspiracy.

Defendants Tozzi and Sovey-Silveria filed a motion to dismiss

(Doc. 8).  Plaintiff filed a motion to enter default judgment

against Defendants Hollenback and Jensen (Doc. 14).  Plaintiff

filed a counter-motion in opposition to the motion to dismiss and

a motion to file a Second Amended Complaint (Doc. 16).  Without

obtaining leave of Court, Plaintiff filed a Second Amended

Complaint on March 28, 2005 (Doc. 19).  On March 29, 2005, an

Order to Show Cause was issued:

19

1

2

3

4

5

> In light of the March 16, 2005 order
> dismissing Plaintiff's complaint in *Jones v.*
> *Strangio,* Plaintiff is ORDERED TO SHOW CAUSE
> in writing ... why the complaint in this case
> should not also be dismissed as to all
> defendants for failure to state a federal
> claims and/or is barred for the reasons
> stated in the March 16, 2005 decision issued
> in *Jones v. Strangio* ....

6

> ....

7   Various joint motions to dismiss were then filed as well as

8   Defendant Hollenback's response to Plaintiff's motion for default

9   judgment against him.  At the hearing on these matters on May 3,

10  2005, Plaintiff's improperly filed second amended complaint was

11  stricken (Doc. 42).  On May 9, 2005, Plaintiff filed a motion for

12  sanctions (Doc. 43).  On May 10, 2005, Plaintiff filed a motion

13  to strike Defendants' joint motion to dismiss the Complaint.  On

14  May 11, 2005, in a 22-page Memorandum Decision (Doc. 47), the

15  Court noted:

16

17

18

19

20

21

22

> This case arises out of a child custody
> dispute between Plaintiff and Kea Chhay, the
> mother of Plaintiff's minor child.  Although
> the record contains limited information about
> the underlying child custody case, it appears
> to have first been filed in Santa Clara
> Superior Court.  During a hearing held on
> November 15, 2001, the presiding judge in
> Santa Clara warned Plaintiff that he would be
> declared a vexatious litigant if he filed
> additional motions in that case.  The case
> was subsequently transferred to Stanislaus
> County.

23  (Doc. 47, 5:6-14).  In the May 11, 2005 Memorandum Decision,  the

24  Order to Show Cause was discharged; Defendants Tozzi and

25  Silveria's motion to dismiss was granted with prejudice on the

26  grounds that Plaintiff failed to allege a procedural due process

20

claim by failing to plead any facts that he exhausted state

remedies, that the domestic relations exception barred

Plaintiff's substantive due process claims, on the ground of

absolute and quasi-judicial immunity; Plaintiff's motion for

default judgment was denied, and Plaintiff was ordered not to

file any amended complaint until the pending motion to dismiss

(Doc. 32) was decided.

On June 22, 2005, a Memorandum Opinion and Order Granting

Defendants' Jensen and Hollenback's Motion to Dismiss (Doc. 61)

issued.  As it pertains to Defendant Hollenback the June 22, 2005

Opinion and Order stated:

> ... Hollenback's ... motion to dismiss raises
> the same legal issues as Defendants Tozzi and
> Silveria's previous motion to dismiss.
> Plaintiff has already been informed in the
> decision granting Tozzi and Silveria's
> motion, Doc. 47, that his claims are not
> viable under federal law.  For the reasons
> set forth below, the first amended complaint
> (doc. 7, the currently operative complaint in
> this case) also fails to properly state any
> claims under federal law against Defendant[]
> ... Hollenback.  Rather than order Plaintiff
> to defend a complaint that must be dismissed
> for failure to state a claim, Plaintiff will
> instead by given one last opportunity to
> amend his complaint to set forth viable
> claims under federal law against Defendant[]
> ... Hollenback.
>
> C.  Plaintiff's Claims
>
> In the first amended complaint, Plaintiff
> makes the following allegations:
>
> (1) There existed potential conflicts of
> interest between several of the Defendants.
> The failure to Defendants to disclose those
> conflicts violated Plaintiff's procedural due
> process rights.  *Id.* at ¶ 15.

21

> (2) Defendants' conduct throughout the family
> law proceedings interfered with Plaintiff's
> liberty interests and/or rights as a parent.
> *Id.* at ¶ 7.

> (2) [sic] Defendants' conduct violated
> various provisions of the California Rules of
> Court, State Bar Ethical Standards, and
> provisions of the California Code of Civil
> Procedure. As a result, Plaintiff's due
> process rights under the Fourteenth Amendment
> were violated. *Id.* at ¶¶ 16-33.

(Doc. 61, 7:17-8:13). The June 22, 2005 Order ruled that

Plaintiff's procedural due process claims alleged in the First

Amended Complaint fail as a matter of law:

> As explained in previous memorandum opinions
> in this case and related cases, Plaintiff has
> attempted to set forth procedural due process
> claims twice before. Specifically, he
> alleges that conflicts of interests existed
> between Defendants and that those conflicts
> interfered with the fair adjudication of his
> family law case. These allegations are
> strikingly similar, if not identical, to
> those alleged and *dismissed* in his
> Plaintiff's [sic] prior lawsuits. ...
> Plaintiff has again failed to state a
> procedural due process claim. He has utterly
> failed to plead any facts that suggest he
> exhausted his state remedies. As such,
> Plaintiff's procedural due process claims, if
> any are stated, are DISMISSED for failure to
> state a claim.

(Doc. 61, 8:16-9:16). The June 22, 2005 Order ruled that

Plaintiff's claims concerning his liberty interests and/or rights

as a parent are barred by the domestic relations exception, "[a]s

was explained in the May 11, 2005 memorandum opinion and order."

(Doc. 61, 9:2). The June 22, 2005 Order dismissed Plaintiff's

Section 1983 claims against Defendant Hollenback that he violated

Plaintiff's right to equal protection by impeding Plaintiff's

access to the judicial system because of his race on the ground

that Defendant Hollenback was a private individual, not a state

actor.  (Doc. 61, 11:12-23).  The June 22, 2005 Order then

stated:

> Plaintiff has established a pattern of filing
> multiple complaints without leave to amend
> and without providing justification for the
> amendment.  Plaintiff has attempted to evade
> dismissal by set [sic] forth additional
> claims, under 28 U.S.C. §§ 1981, 1985 and
> 1986.  The May 11, 2005 memorandum opinion
> and order denied Plaintiff leave to amend on
> the grounds that these claims, as presented
> in his several proposed amended complaints,
> would fail to properly state a claim under
> any federal law.
>
> Defendant[] ... Hollenback correctly point[s]
> out that participants in the court process
> are immune from civil liability for damages
> in the context of a § 1983 claim ... However,
> such immunity would not protect them from
> liability in the context of a properly
> alleged claim that they conspired with a
> judge to violate Plaintiff's civil rights
> ....
>
> A district court shall grant leave to amend
> freely 'when justice so requires,' unless the
> amendment (1) would be futile, (2) is
> proposed in bad faith, or would result in (3)
> undue delay or (4) prejudice to the opposing
> party ....
>
> In this case, Plaintiff has filed numerous
> proposed amended complaints aimed at evading
> dismissal for lack of jurisdiction.  Although
> Plaintiff's claims under 42 U.S.C. § [sic]
> 1981, 1985, and 1986 are of dubious merit, he
> will be afforded one final opportunity to
> amend to properly allege claims under §§
> 1981, 1985, and 1986.

(Doc. 61, 12:3-13:7).  By Order filed on June 29, 2005 (Doc. 65),

Plaintiff's motion for Rule 11 sanctions against Defendant

23

1  Hollenback in the amount of $144,500.00, "a figure based in part
2  upon Plaintiff's 'earnings capacity'", because counsel for
3  Defendant had one digit wrong in Plaintiff's address for service,
4  was denied, the Court further commenting:

5           Based on the excessive and unjustified burden
            placed on the court by Plaintiff's serial and
6           meritless filings, it is Plaintiff who more
            appropriately could be subject to Rule 11
7           sanctions.

8  (Doc. 65, 3:10-13).

9       On 6, 2005, Plaintiff filed a notice of voluntary dismissal
10  of Defendant Leslie Jensen (Doc. 66).

11      Plaintiff filed a second amended complaint against Defendant
12  Hollenback on July 6, 2005 (Doc. 67).   The second amended
13  complaint was brought pursuant to 42 U.S.C. § 1981 and alleged in
14  pertinent part:

15           10.  At all times relevant hereto
            Hollenback's threats and statements to Mr.
16           Jones were made OUT OF COURT; literally not
            within the actual court building.
17
18           11.  At all times relevant hereto Defendants
            Hollenbcak' [sic] threats and statements to
19           Mr. Jones were made after the child support
            trial of 4/22/2004.
20           ...

21           44.  On or about 12/2003, defendant
            Hollenback became involved with Mr. Jones'
22           family law case as counsel for the opposing
            party.
23
24           45.  On or about 1/2004 Mr. Jones filed
            contempt charges against the opposing party
25           in his family law case.
26           ...

47.   On 4/22/2004 defendant Hollenback made statements to Mr. Jones that, 'he called the Stanislaus County Housing Authority and told them what a lazy low-life black piece of shit you are ... you get nigger justice.'

48.   On 4/22/2004 defendant Hollenback threatened Mr. Jones that, 'he would knock the teeth out of his black greasy face ... and rattle them out of his jive-monkey ass if he showed up for the contempt hearings.'

...

50.   As a direct and proximate cause of the defendant's threats, Mr. Jones feared for his safety, if he were to attend the pending contempt proceedings.

51.   As a direct and proximate result of the defendant's threats, Mr. Jones withdrew the contempt Charges against the opposing party in his family law case on 5/7/2004 and 6/7/2004.

52.   As a direct and proximate cause of the defendant's threats, Mr. Jones did not attend the contempt proceedings on 5/10/2004 and 6/10/2204.

...

54.   On or about 7/2004 the Statute of Limitations for the withdrawn contempt charges ran/expired.

55.   As a direct and proximate cause of the defendant's threats, Mr. Jones' access to the judicial system was deprived.

The Second Amended Complaint alleged that Defendant's actions deprived Plaintiff of his civil rights in violation of 42 U.S.C. § 1981 because they deprived Plaintiff of: (1) his "federal right to sue on account of his race and ethnicity"; (2) his "federal right to enforce contracts on account of his race and ethnicity"; (3) his "federal right to be a party to proceedings on account of

his race and ethnicity; (4) his "federal <u>right to give evidence</u> at proceedings on account of his race and ethnicity"; (5) his "federal <u>right to full benefit</u> of proceedings on account of his race and ethnicity"; (6) his "federal <u>right to equal benefit of all proceedings</u> on account of his race and ethnicity"; and (7) his "federal <u>right to equal benefit of all laws</u> on account of his race and ethnicity."

Defendant moved to dismiss the second amended complaint. By Memorandum Opinion and Order filed on October 21, 2005 (Doc. 103), Defendant's motion to dismiss was denied. The Court rejected Defendant's argument that Plaintiff's "Notice of Withdrawal [of] Contempt Without Prejudice" filed by Plaintiff in the family law case estops Plaintiff from alleging that he withdrew the pending contempt charges because of Defendant Hollenback's alleged derogatory statements:

> Accepted as true, the Notice is not inconsistent with the allegation in the second amended complaint that Plaintiff withdrew the contempt charges because of Hollenback's threats. Specifically, the Notice acknowledges that among the reasons for Plaintiff's withdrawal of the contempt claims are his 'overwhelming concern for the safety of [himself], and [his] perspective witness ...' and his 'concern that further violation(s) of [his] Civil and Constitutional rights will occur.' This general statement of reasons is arguably a reference to the alleged comments/threats made by Mr. Hollenback. Although the Notice presented by Defendants [sic] is relevant to the weight a finder of fact might afforded [sic] Plaintiff's allegations, it does not on its own require dismissal.[4]
>
> ...

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**[4]This conclusion is not an endorsement of the veracity or plausibility of Plaintiff's claims.  As the district court has stated in the past, this Plaintiff has exhibited a tendency to change or supplement his factual submissions over time with previously unasserted matters in an apparent effort to evade dismissal.**

(Doc. 103, 6-8).  The Memorandum Decision denied dismissal of Plaintiff's Section 1981 claim:

> **'Section 1981 cannot be construed as a general proscription of racial discrimination ... for it expressly prohibits discrimination only in the _making and enforcement of contracts._' ....**
>
> **Here, Plaintiff suggests that bringing a contempt proceeding in state court against Ms. Chhay was an effort to enforce the family law visitation agreement he and Ms. Chhay signed.  Neither party offers legal authority supporting or refuting the proposition that such a contract is covered by section 1981.  Legal authority applicable to this issue suggests that a wide range of contracts are covered by the provision.  _See Runyon v. McCrary_, 427 U.S. 160 (1976) (section 1981 reached discrimination in private education where private schools denied admission to minority children thereby interfering with parents' right to contract for educational services).**

(Doc. 103, 8-10).

On October 31, 2005, Plaintiff filed a motion for summary judgment (Doc. 104).  On January 24, 2006, Plaintiff filed a motion for leave to file a second amended complaint (Doc. 166).  These motions, among others, were heard on January 30, 2006 and taken under submission (Doc. 172).  On February 8, 2006, Plaintiff filed a "second amended complaint."

By Memorandum Opinion and Order filed on February 15, 2006

27

(Doc. 185), Plaintiff's motion for summary judgment was denied. The Court noted:

> The Court has been unable to locate any cases imposing liability under § 1981 in circumstances that are even remotely comparable to the facts of this case. Nevertheless, for the purposes of this motion, § 1981 is applied to a private party accused of interfering with an individual's efforts access [sic] a state court to enforce a private child custody settlement contract.

(Doc. 185, 11:22-28).  Summary judgment for Plaintiff was nonetheless denied because Defendant denied making any racially derogatory statements to Plaintiff, thereby creating a factual dispute as to the racial animus element of Plaintiff's Section 1981 claims.  (Doc. 185, 14:4-8).  Plaintiff's motion for leave to amend to add 21 state law tort claims (five counts of intentional interference with a contractual relationship, 15 counts of intentional infliction of emotional distress, and one count of slander) was granted.  (Doc. 185, 14-15).

On February 16, 2006, Plaintiff filed a motion for leave to file a third amended complaint (Doc. 187) and filed a third amended complaint on February 22, 2006 (Doc. 190), before Plaintiff's motion for leave to do so had been heard.  On February 28, 2006, Defendant moved to dismiss the second amended complaint filed by Plaintiff on February 1, 2006 (Doc. 191).  On March 8, 2006, Plaintiff filed an "Anti SLAPP Special Motion to Strike and Motion for Fees" (Doc. 204).  Before any of these motions were heard, on April 25, 2006, Plaintiff filed a third amended complaint against Michael Tozzi, Marie Sovey-Silveria,

28

Leslie Jensen and Defendant Hollenback.  (Doc. 217).  These various motions were heard on May 1, 2006 (Doc. 219).  Before any rulings were issued, on May 4, 2006, Plaintiff filed without leave a fourth amended complaint against Michael Tozzi, Marie Sovey-Silveria, Leslie Jensen and Defendant Hollenback.  (Doc. 221).  On May 6, 2006, Defendant filed a motion to strike the fourth amended complaint (Doc. 223).  By Memorandum Decision and Order filed on June 2, 2006 (Doc. 227), Defendant's motion to strike the fourth amended complaint was granted and the fourth amended complaint filed on May 4, 2006 was stricken:

> Plaintiff has been previously warned that his practice of filing amended complaints without leave to amend unnecessarily confuses the docket and prevents the parties from receiving the court's analysis and decision on the pending motions addressing the operative complaint.  Plaintiff must wait for a written decision and order on motions submitted for decision that actually grants him leave before filing any amended complaint.  To protect the integrity of the judicial process, Plaintiff's unauthorized fourth amended complaint must be stricken.

By Memorandum Decision and Order filed on June 2, 2006 (Doc. 228), the court addressed: (1) Plaintiff's motion to recuse Magistrate Judge Beck; (2) Plaintiff's motion to file a third amended complaint; (3) Defendant's motion to dismiss the operative second amended complaint; (4) Defendant's motion to strike state law claims from the second amended complaint pursuant to California's anti-SLAPP statute; (5) previously dismissed defendant Leslie Jensen's motion to strike state law claims from the second amended complaint pursuant to California's

29

1    anti-SLAPP statute; and (6) Plaintiff's motion to strike pursuant

2    to California's anti-SLAPP statute.   The Court granted previously

3    dismissed Defendant Leslie Jensen's motion to strike her status

4    as a defendant:

5              Here, Plaintiff now seeks to assert (for the
               first time) that Jensen also made racially
6              derogatory remarks toward Plaintiff, an
               allegation he has never mentioned in the
7              almost two years that this dispute has been
               pending.  It is inconceivable that Plaintiff
8              has not had full knowledge of any such facts
               for over two years.  Plaintiff has been
9              afforded multiple opportunities to amend the
               complaint ... Unjustified delay, unjustified
10             failure to even mention this purported claim,
               unjustified failure to allege the claim while
11             Jensen was a party to the case are all
               grounds to deny leave to rejoin Jensen as a
12             defendant.

13   (Doc. 228, 12).  Plaintiff's motion for leave to file a third

14   amended complaint was denied:

15             Plaintiff has been warned in the past that
               his practice of filing multiple complaints
16             unfairly creates a moving target for opposing
               parties and necessary [sic] burdens on an
17             overtaxed court.  Defendants are entitled to
               have their motions to dismiss and to strike
18             heard as to the second amended complaint.
               Plaintiff has provided no explanation as to
19             why he could not have included information
               contained in the third amended complaint in
20             the previously-filed second amended
               complaint.  This is in substance the fifth
21             time Plaintiff has endeavored to alter the
               facts of his lawsuit.

22   The Court dismissed with prejudice the claims against Defendant

23   for violation of Section 1981 because the "visitation and custody

24   order is not a contract" and "Plaintiff's efforts to 'enforce'

25   the order are not protected by section 1981."   (Doc. 228, 18:17-

26

                                  30

20):

> In order to establish a claim under § 1981, a plaintiff must establish that (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the right to make and enforce contracts, sue and be sued, give evidence, etc.).' ....

> Plaintiff continues to suggest that his section 1981 claim may rest on deprivations separate and distinct from those founded on contract.  For example, Plaintiff alleges that Defendant Hollenback's actions deprived him of his federal 'right to sue,' 'to be a party to proceedings,' 'to give evidence at proceedings' 'to full benefit of proceedings,' 'to equal benefit of all proceedings,' and 'to equal benefit of all laws on account of Plaintiff's race and ethnicity.  (*See* Compl. at ¶¶ 64-77.)  But, section 1981 has <u>not</u> been construed as a 'general proscription of racial discrimination ....' *Patterson v. McClean Credit Union*, 491 U.S. 164, 176 (1989).  Its reach has been limited and interpreted to prohibit discrimination 'only in the *making and enforcement of contracts*.'  *Id.* ....  The Supreme Court recently reiterated that 'a plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under [an] existing (or proposed) contract that he wishes "to make and enforce."' *Domino's Pizza, Inc. v. McDonald*, 126 S.Ct. 1246, 1252 (2006).

> Plaintiff continues to insist that bringing the contempt proceeding in state court against Ms. Chhay was an effort to enforce a family law visitation 'contract' between Plaintiff and Ms. Chhay.  Doubt has previously been expressed as to whether imposing liability under section 1981 is appropriate in this case.  The legal issue has not been squarely raised or adequately addressed by any party in any prior proceeding.[2] Defendant now challenges the

sufficiency of the complaint on the ground
that the family law visitation agreement is
<u>not</u> a contract.

In California, a contract is defined as an
agreement to do or not to do a particular
thing.  Cal. Civ. Code § 1549.  In order for
a contract to exit [sic], (1) there must be
two or more parties capable of contracting,
(2) they must consent, (3) to a lawful
object, and (4) there must be 'sufficient
cause or consideration.'  Cal. Civ. Code §
1550.

The header for the document in question
provides as follows:

<u>Melvin Jones, Jr.</u> vs. <u>Kea Chhay</u>
Petitioner          Respondent

Case # <u>285954</u>    Hearing Date: <u>December 10, 2002</u>
This order applies to the following minor
child:

<u>Lauren Jones DOB 9/01-97</u>

(Doc. 193-2 at 3) (page 1 of 5 of the
document).  The first paragraph provides:

    1.  The following custody and
    visitation orders are imposed by
    the Court based upon the agreement
    of the parties.  This order shall
    supersede all prior orders.

(*Id.*)  The subsequent five pages of text
contain various provisions pertaining to the
custody and visitation arrangement.
Plaintiff relies heavily on the fact that the
first paragraph contains the language 'based
upon the agreement of the parties.'  This,
Plaintiff suggests, is evidence that the
document is a contract.  Hollenback objects
that the 'findings and order' that
constituted the custody/visitation agreement
in no way depends on the parties' mutual
consent to the custody arrangement and its
related provisions.

Even assuming the truth of Plaintiff's
assertion that the order was based upon an

32

agreement between Plaintiff and Chhay, that
agreement was reduced to an order of the
family court.   Once the order was entered,
any agreement merged in the order and a party
can no longer bring a breach of contract
action to enforce the agreement.   The only
remedy is by way of a contempt proceeding ...
Under the doctrine of merger, the 'contract'
has been merged into the order which governs
the parties' rights and obligations.

Plaintiff's conduct admits this, as he was in
the process of prosecuting a contempt action
when the alleged racially derogatory remarks
were purportedly made.   As additional support
for his contention that the custody and
visitation order is not a contract,
Hollenback points out that such orders are
modifiable at any time by the court if such
modification would serve the best interest of
the child.

The visitation and custody order is not a
contract.   Accordingly, Plaintiff's efforts
to 'enforce' the order are not protected by
section 1981.

...

[2]Plaintiff argues that the merits of the
section 1981 claim have been addressed by the
district court and suggests that this motion
to dismiss is therefore not properly before
the court.   This is incorrect for two
reasons.   First, although Defendants did
previously challenge the sufficiency of the §
1981 claim, they did so in response to a
previously-filed complaint.   Plaintiff
subsequently moved for and was granted leave
to amend.   Upon the filing of any amended
complaint, Defendant is entitled to file new
Rule 12 motions. Second, the sufficiency of
the § 1981 claim was never completely
resolved by the district court.   Specific
questions were raised as to whether the
custody and visitation document constituted a
contract covered by § 1981.   (See Doc. 185 at
11.)

The Court ruled that the second amended complaint did not

adequately allege specific facts from which a conspiracy to violate 42 U.S.C. § 1985(2) could be inferred (i.e., which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights), but that "Plaintiff will be afforded one final opportunity to amend to assert section 1985 and 1986 claims against Defendant Hollenback." (Doc. 228, 21:10-11). The Court dismissed with prejudice all of the state law claims against Defendant Hollenback pursuant to the litigation privilege set forth in California Civil Code § 47(b). (Doc. 228, 27:6-7). The Court dismissed with prejudice the slander per se state law cause of action as barred by the statute of limitations; dismissed with prejudice the state law claims for intentional interference with contractual relations because the visitation and custody order is not a contract; and dismissed with prejudice the state law claims for intentional infliction of emotional distress. (Doc. 228, 27-30). The Court dismissed the state law claims of negligent infliction of emotional distress because Plaintiff had not pleaded the elements of a claim for negligence and the intentional conduct alleged was wholly inconsistent with a negligence claim. (Doc. 228, 30).

Because of these rulings, Defendant's motion to strike pursuant to California's Anti-SLAPP statute was denied as moot. (Doc. 228, 32). The Court denied Plaintiff's motion to strike pursuant to the Anti-SLAPP statute because the Ninth Circuit has specifically ruled that California's anti-SLAPP statute is not

preempted by the Federal Rules of Civil Procedure and is applicable in federal cases where supplemental claims are pled under California law, because Defendant has not asserted any federal or state claims against Plaintiff, and because California Code of Civil Procedure § 425.6(e)(2) does not require as "issue of public interest." (Doc. 228, 37-39). Plaintiff was given "one <u>final</u> opportunity to frame a complaint under 42 U.S.C. §§ 1985 and 1986 in accordance with this decision." (Doc. 228, 40).

Plaintiff filed a fifth amended complaint against Defendant on June 13, 2006 (Doc. 230). As described in the Memorandum Decision and Order filed on August 24, 2006 (Doc. 234):

> Plaintiff's FAC appears to allege that Defendant Hollenback participated in four separate conspiracies, along with various other individuals, to deprive Plaintiff of his civil rights in violation of 42 U.S.C. §§ 1985 and 1986. Three of the alleged conspiracies are at least tangentially related to Plaintiff's efforts to litigate in state court (the 'state court conspiracies'; [sic] the fourth is distinct, in that it alleges a conspiracy to impede access to federal court (the 'federal court conspiracy').

> First, Plaintiff describes an alleged conspiracy between Hollenback and Leslie Jensen. (FAC, ¶¶ 45-58.) It is not easy to determine the nature of the conspiracy from the text of the complaint, but it appears that Plaintiff is asserting that, together, Jensen and Hollenback through threats and intimidation: (a) impeded Plaintiff's access to state court, (b) impeded his ability to pursue his rights under the custody order issued by the Stanislaus Court, and (c) impeded his ability to apply for employment with the Stanislaus County Housing Authority. Specifically, Plaintiff alleges that Hollenback told Plaintiff that '[Hollenback]

called the Stanislaus County Housing
Authority,' where plaintiff had recently
applied for employment 'and told them what a
lazy low life black piece of shit [Plaintiff
is]' and exclaimed 'you get nigger justice.'
(FAC at ¶ 47.)  Plaintiff further alleges
that Hollenback threatened that 'he would
knock the teeth out of his black greasy fact
... and rattle them out of his jive-monkey
ass if he showed up for the contempt
hearings.'  (*Id.*).  Separately, Plaintiff
alleges that Ms. Jensen threatened that
Plaintiff would 'get his black ass kicked if
he continued to make trouble for the court
and if Plaintiff continued with the contempt
proceedings.'  (*Id.*)  Plaintiff alleges that
there is circumstantial evidence that
Hollenback and Jensen conspired with one
another to intimidate him.  Specifically,
Plaintiff notes that Hollenback and Jensen
have been colleagues practicing before the
Stanislaus Superior Court for many years.
Plaintiff also alleges that Hollenback and
Jensen contracted with one other to cover
each other's court appearances.

Next, Plaintiff alleges that Hollenback
conspired with state courtroom bailiff Jane
Doe.  (*Id.* at ¶ 52.)  Specifically, Plaintiff
asserts that he heard Hollenback tell the
bailiff that Plaintiff was a 'low life
black.'  The bailiff apparently became
agitated as a result.  However, Jones asserts
that he continued with his scheduled hearing
after reassuring the bailiff that he was 'not
a low life black.'

In the final purported state court
conspiracy, Plaintiff names as co-
conspirators various individuals who were
previously named as Defendants in this case.
He alleges that Michael Tozzi (the Executive
Officer of the Stanislaus County Superior
Court), Steven Carmichael (the Court
appointed Evaluator), Don Strangio (the Court
appointed Family Law Mediator), Ms. Jensen,
the 'Jane Doe' bailiff from the April 22,
2004 hearing, and Marie Sovey-Silveria (the
Family Law Judge who issued the December 10,
2002 cusody [sic] order), agreed to deprive
Plaintiff of the opportunity to access state

court and to pursue his rights under a
custody order entered by the Stanislaus
court.  Plaintiff also alleges a separate
conspiracy involving all of these individuals
to retaliate against him.  Plaintiff alleges
that Tozzi, Silveria, Strangio, and
Carmichael all conspired to aid in planning
this conspiracy and in concealing the
existence of the conspiracy.  (*Id.* at ¶ 81.)
More specifically, Plaintiff alleges (a) that
Carmichael acted in furtherance of the
conspiracy when he commented that Whites and
Asians are 'better at education than Blacks;'
and (b) that Tozzi contributed to the
conspiracy by failing to comply with a
subpoena sent to him by Plaintiff.  No
specific factual allegations are made with
regard to Silveria or Strangio.

Finally, Plaintiff describes a conspiracy
between Hollenback, Leslie Jensen, and Lonnie
Ashlock to impede Plaintiff's ability to
access federal court.  (*Id.* at ¶ [sic] 59-
68.)  Apparently, Plaintiff and Lonnie
Ashlock were parties to several real estate
agreements, including an a [sic] rental
agreement and an agreement pursuant to which
Plaintiff sold a house to Ashlock.  Leslie
Jensen admits that she has served as Lonnie
Ashlock's attorney on many occasions.
Plaintiff asserts that Mr. Ashlock threatened
Plaintiff that if Plaintiff did not drop his
litigation against Jensen he would 'not pay
him one cent' pursuant to the house sale.
Plaintiff was later evicted from his
residence and now asserts that this eviction
was in retaliation for Plaintiff's legal
actions and in furtherance of the
'conspiracy.'  Plaintiff claims that Ms.
Jensen made misrepresentations to the Court
in an effort to 'conceal' this perceived
'conspiracy.'  The Complaint does not clearly
explain how Hollenback was involved in this
conspiracy and the only stated explanation of
Hollenback's wrongful conduct was 'his
apparent silence' about the alleged
conspiracy.'  (*Id.* at ¶ 67).

(Doc. 253, 7:25-11-3).  The fifth amended complaint prayed for

$1,700,000.00 damages.  The majority of the racially charged

37

1  allegations had never been pleaded in any prior complaint.

2  Defendant filed a motion to dismiss the fifth amended complaint

3  or, in the alternative, for summary judgment. (Doc. 234).  By

4  Memorandum Decision and Order filed on August 24, 2006 (Doc.

5  253), Defendant's motion to dismiss on statute of limitations

6  grounds was denied; his motion to dismiss with respect to the

7  conspiracy claim based on alleged threats to dissuade Plaintiff

8  from participating in the contempt proceeding was denied; and the

9  motion to dismiss as to all of the other, related conspiracy

10 claims was granted as those claims were dismissed because

11 Plaintiff failed to specifically state how the alleged

12 conspiracies harmed him.

13      Defendant's alternative motion for summary judgment was

14 continued based on Plaintiff's representations that he had not

15 had an adequate opportunity to conduct discovery "on his new

16 legal theory, based on 42 U.S.C. §§ 1985 and 1986, in part

17 because he has not possessed adequate funds to conduct thorough

18 discovery."  (Doc. 253, 32-33).  Thereafter, the parties filed

19 cross-motions for summary judgment which were heard on January

20 22, 2007 (Doc. 287).  The Memorandum Decision and Order filed on

21 February 7, 2007, (Doc. 293), set forth summaries of Plaintiff's

22 and Defendant's factual positions:

23           1.   Summary of Plaintiff's Evidence

24           Plaintiff presents his own declaration and
             various amendments thereto, which provide a
25           detailed chronology of the events from his
             point of view.

26

The custody dispute between Plaintiff and Ms. Chhay began in May 2002 and was litigated in Stanislaus County Superior Court.  (Doc. 255 at 4.)  At that time, Plaintiff maintains that Ms. Chhay was employed as a Family Law Investigator with the Stanislaus Superior Court.  (*Id.*)

It is undisputed that Judge SILVERIA became the presiding family law judge; Donald Strangio was appointed by the state court as a mediator in the dispute; Steven Carmichael became the court-appointed custody evaluator in the case; and Michael Tozzi served as the Executive Officer of the Stanislaus Superior Court during the relevant time period.

It is also undisputed that Leslie Jensen associated as counsel for Ms. Chhay in 2002. In 2003, Defendant Hollenback replaced Ms. Jensen as counsel for Ms. Chhay, but, in 2004, Ms. Jensen appeared for Defendant Hollenback at a hearing on behalf of Ms. Chhay.  Plaintiff maintains that Hollenback and Jensen maintained an association throughout the relevant time period, conspiring together, and with other alleged co-conspirators, to dissuade Plaintiff, through threats of violence, from pursuing his legal rights in state court.

Plaintiff next details various racist or impliedly racist remarks that were allegedly directed at Plaintiff by the alleged co-conspirators.  For example, Plaintiff avers that, in October 2002, Carmichael indicated that "Blacks [are] inferior to Whites and Asians in learning/education."  (*Id.* at 5.) Plaintiff then sent a letter to Carmichael expressing concern that Carmichael's ability to participate in his custody dispute was compromised because Carmichael was biased against Plaintiff.  Soon thereafter, according to Plaintiff, Jensen called Plaintiff and said "were going to shut you down boy...[W]hen we get finished with you...you'll wish you stayed in San Jose." (*Id.*)  Plaintiff claims that he responded by asking: "Who is we?"  Jensen allegedly replied: "You'll find out soon enough....Dr Carmichael, and Dr. Strangio have assured me

39

1   that you won't know what hit you....we have
    something for your black ass?.... Don
2   Strangio is my friend...he and I have spoken
    to Judge SILVERIA...you just wait and see."
3   (*Id.* at 5-6.)

4       In addition, at various times in or around
    2002, Plaintiff alleges that Judge SILVERIA,
5   Mr. Strangio, and Ms. Jensen made racially
    offensive remarks regarding Plaintiff's
6   desire to spend Martin Luther King day with
    his daughter.  For example, in a December
7   2002 hearing when Plaintiff attempted to
    discuss that visitation issue with Judge
8   SILVERIA, she allegedly told Plaintiff "shut
    up and go sit down."  A few months later in
9   April 2003, Plaintiff tried to raise the
    concern again with Judge SILVERIA, but
10  Plaintiff avers that she told him to "shut up
    and stop playing the race card."  (*Id.* at 6-
11  7.)  After that hearing, Plaintiff asserts
    that he asked Mr. Strangio directly about
12  spending Martin Luther King day with his
    daughter, to which Strangio allegedly
13  responded: "Martin Luther King was the
    biggest trouble maker of them all... if you
14  continue your trouble making you will be
    stopped in your tracks."  (*Id.* at 7.)
15
        Also in May 2003, Jensen served Plaintiff
16  with a document.  Plaintiff alleges that
    Jensen threw the document on the ground and
17  stated:  "Your ignorant trouble making black
    ass has been served."  When Plaintiff asked
18  why she threw the document on the ground, she
    stated:  "I did not want to touch your filthy
19  ape hands."  She then allegedly stated; "if
    you know what is good for your stinky black
20  ass, you'll knock it off... you trouble
    making black bastard...you're going down,
21  you'll be celebrating Rodney King Day."  When
    Plaintiff responded "You mean Dr. King
22  Holiday?", Jensen replied "No, idiot, you
    will never have that day added to the custody
23  order...poor tar baby your crying to County
    Counsel did not help you did it?"
24
        In late 2003, after another family court
25  hearing, Plaintiff maintains that Defendant
    Hollenback called him "an unkempt lazy
26  lowlife black."  When Plaintiff stated "I

40

have never even met you before...what is your problem...," Hollenback allegedly responded: "my problem is you... you stupid porch monkey...I know that you're a trouble making black sambo."  Later during that conversation, Plaintiff asserts that Hollenback warned: "[L]isten lazy nigger boy, I am going to show you how to make trouble...if you know what is good for you, you will stop your bullshit...do me a favor and take your dead beat black ass back to San Jose...You only want Martin Luther King day so that you have an excuse to have a day off work...that day is for nigger lovers...you'll never get that day added to your visitation in this court."

In February 2004, Jensen appeared on behalf of Mr. Hollenback.  Plaintiff claims that, outside the hearing, Ms. Jensen stated: "Mr. Hollenback and I are known in this court...you're going to get yours if you keep it up...[Y]ou just wait[,] Mr. Hollenback and I have something planned for you boy...we're going to put your black ass down...payback is going to be hell."  In addition, Plaintiff asserts that Jensen made other racially derogatory statements to him regarding the Dr. Martin Luther King Holiday.  (*Id.* at 10.)  Among other things, Plaintiff alleges that Jensen told him to "stay tuned you black ape...you're fucking with the wrong people...you're going down...I don't care about your damn nigger holiday or what facts you want on record, you lazy black trouble-making asshole."  Finally, although Plaintiff does not specify when this statement was made, he asserts that Jensen threatened him that he "would get my black ass kicked if [he] continued to make trouble for the court and if [he] continued with the contempt proceedings."  (*Id.* at 11.)

Plaintiff then discusses certain events surrounding a hearing on March 29, 2004, at which Defendant Hollenback insisted that Plaintiff be ordered to disclose the name of the Stanislaus County Agency with which Plaintiff was seeking employment.  (*Id.* at 12.)  Plaintiff objected, but was apparently ordered to disclose the information.

41

Hollenback allegedly then threatened to tell that particular agency (the Housing Authority) that he was a "low life black dead beat dad...." (*Id.* at 13.)

It is undisputed that in 2004, Plaintiff filed two sets of contempt charges against Ms. Chhay in the family law case. The first set of charges was set for trial on May 15, 2004. The second set of charges were set for hearings on May 10 and June 10, 2004, respectively.

At the trial on the first set of charges, presided over by Judge Jacobsen, Plaintiff alleges that Judge SILVERIA interrupted the proceedings and communicated with Judge Jacobson. Plaintiff conclusorily describes Judge SILVERIA's conduct as "retaliatory" but does not describe how.

Before the second set of contempt charges came to trial, a trial was held on April 22, 2004, regarding the issue of Child Support. Defendant Hollenback was present, as was a bailiff whom Plaintiff refers to as Jane Doe (her actual name is Vivian Holliday). Plaintiff observed Hollenback conversing with the bailiff and claims to have heard Hollenback explain to the bailiff that Plaintiff was a "low life black." The bailiff then pointed at Plaintiff and "became unduly excited towards [him]." (*Id.* at 14.) Although Plaintiff was concerned by this conduct, he proceeded with the trial after "reassuring the bailiff" that he was not a "low life black."

After the April 22, 2004 hearing, Plaintiff asserts that Defendant Hollenback claimed to have "called the Stanislaus County Housing Authority and told them what a lazy low life black piece of shit you are...you get nigger justice." In addition, Plaintiff claims that Defendant Hollenback threatened that "he would knock the teeth out of my black greasy face...and rattle them out of my jive-monkey ass if I showed up for the contempt hearings." Plaintiff believed that Hollenback was "angry" and Plaintiff "fear[ed] for [his] safety if [he] were to

42

continue with the contempt hearings on May 10
and June 10, 2004." (*Id*. at 15-16.)
Plaintiff claims that, as a result of this
fear, he withdrew the pending contempt
charges.  Plaintiff maintains that he remains
in fear today, and that, as a result, he did
not attend a separate state court proceeding
in a different matter.

2.   Defendant's Evidence.

Defendant presents his own declarations,
along with supporting declarations from
Leslie Jensen, Michael Tozzi, and Vivian
Holliday.  Defendant also requests that
judicial notice be taken of declarations
filed by Donald Strangio and other alleged
co-conspirators in other related cases filed
by Plaintiff in federal court.

In sum, Defendant and all of the alleged co-
conspirators deny ever having made racially
derogatory remarks to Plaintiff, and deny
having participated in or having knowledge of
any kind of conspiracy to deny Plaintiff
access to court.

More specifically, Defendant denies having
had any involvement with Plaintiff's child
support case prior to his first contact with
Ms. Chhay on December 24, 2003.  In fact,
Hollenback asserts that he and Ms. Jensen
never represented Ms. Chhay on the same
issue.  Jensen was retained pursuant to a
"limited scope representation" only on the
child custody and visitation issues.
Hollenback claims that during the time he
represented Ms. Chhay, he had no
communications with Leslie Jensen about
"anything related to what happened previously
in the *Jones v. Chhay* [matter]....At no time
was there an 'overlap' of the representation
of Ms Jensen and myself."  The one time
Jensen made a special appearance on
Hollenback's behalf because Hollenback had a
scheduling conflict, this was done as a
customary courtesy and involved no direct
contact between them.  Hollenback further
asserts that, in connection with the defense
of this lawsuit, "there were no
communications, direct or indirect, between

43

1
2
3

> Ms. Jensen and [Hollenback] that went beyond
> the necessary and proper matters connected
> with defending against this lawsuit."  (Doc.
> 260 at ¶48.)

4
5
6
7
8
9

> Defendant also asserts that, because he only
> represented Ms. Chhay in regards to the child
> support issue, he was never involved in the
> dispute over the custody and visitation
> orders, so he had absolutely no contact with
> either Mr. Strangio or Mr. Carmichael.
> Moreover, Defendant claims not to have had
> contact with Judge SILVERIA concerning the
> underlying custody dispute.  As a result,
> Defendant asserts that he had no involvement
> in any conversations concerning Plaintiff's
> requests to spend Martin Luther King Holiday
> with his daughter, a custody issue.

10
11
12
13
14
15
16

> Defendant claims to have had no knowledge of
> any of the allegedly threatening/derogatory
> remarks made by any of the co-conspirators
> (except to the extent that he learned of
> Plaintiff's allegations during his
> involvement in this lawsuit).  For example,
> Plaintiff alleges that Ms. Jensen made
> threatening remarks to Jones in April 2003.
> Those statements, if they were made, would
> have occurred many months before Hollenback
> became an attorney in the case.

17
18
19

(Doc. 293, 6:2-12:23).  Although the Court denied the cross-

motion for summary judgment, the Memorandum Decision and Order

did state:

20
21
22
23
24

> Defendant raises essentially identical
> objections to numerous other factual
> allegations, including statements allegedly
> made or actions allegedly taken by all of the
> alleged co-conspirators, including Ms.
> Jensen, Judge SILVERIA, Mr. Tozzi, Mr.
> Carmichael, Mr. Strangio, and the bailiff.
> Defendant argues that many of these alleged
> acts and/or statements are simply
> "mind-boggling and delusional."

25
26

> The type of information put forth
> by plaintiff is so remarkable,
> unreliable and unthinkable that it

1            cannot serve as an "inference" of
             the existence of a conspiracy.
2            This is not a situation where
             plaintiff has repeatedly made
3            general allegations of racist,
             threatening and improper
4            communications between HOLLENBACK
             and plaintiff in late December 2003
5            and is only now providing us with
             the specifics.  Plaintiff never
6            once made any such allegation of
             any improper conduct between
7            HOLLENBACK and Jensen in late 2003
             until the filing of this Renewed
8            Affidavit.  It is not included in
             any of the Complaints, to and
9            including the operative pleading.
             As such, it should not be
10           considered whatsoever by this
             Court.

11
             (Doc. 258 at 34-35.)   This is not an
12           unreasonable description of some of the
             outrageous language and conduct described in
13           Plaintiff's affidavits.  However, apart from
             limited circumstances described in the cases
14           discussed below, whether a party's affidavits
             are "mind-boggling" and/or "delusional" are
15           issues that a jury must determine.

16  (Doc. 293, 27:19-28:13).

17       A three day jury trial was conducted on May 8, 9 and 10,

18  2007.  The jury was instructed on May 10 and returned a defense

19  verdict after 15 minutes of deliberation.

20           3.   ANALYSIS.

21       Although Defendant's burden is high, this is a case that

22  cries out for the imposition of attorneys in favor of Defendant

23  pursuant to Section 1988.  The record in this action makes

24  inescapable the conclusion that this action was frivolous and

25  vexatious and that Plaintiff is, as Defendant asserts, pursuing

26  any and all persons even remotely involved in the underlying

                              45

family law dispute for the purpose of harassment and revenge.[1] Although the fact that Plaintiff was proceeding *in pro per* must be taken into account and although resolution of this motion for attorneys' fees cannot be based on *post hoc* reasoning, the record establishes that Plaintiff's ever-changing allegations and theories of relief against this Defendant and the many other Defendants named in this and the other related actions were a figment of Plaintiff's imagination from the outset and asserted every time a claim was eliminated by dispositive motion and Plaintiff was advised of the governing law by the Court.  As Defendant argued on summary judgment, Plaintiff's claims appear delusional and ever more lurid.  The inference is well-supported by the evidence that  Plaintiff simply made up whatever allegation he believed would suffice to survive, under the

_____

[1] **Examples of Plaintiff's continuing compulsive pursuit of any persons involved in the underlying family law dispute is the filing of an Amended Complaint in *Melvin Jones, Jr. v. State of California,* No. CV-F-04-6566 OWW/DLB, on June 21, 2007, almost two years after this action was dismissed.  In this action, on January 15, 2008, Plaintiff filed a motion to set aside the judgment pursuant to Rule 60(b)(1) and (b)(3), Federal Rules of Civil Procedure, based on alleged fraud on the Court because of Defendant's and Defendant's counsel's alleged mischaracterization of one of Plaintiff's prior convictions (Doc. 409).  Plaintiff's motion was noticed for hearing on March 3, 2008.  Plaintiff withdrew this motion at the hearing on February 11, 2008, advising that he intended to file an independent action to set aside the judgment.  On March 5, 2008, Plaintiff filed *Melvin Jones, Jr. v. Daniel Wainwright*, No. CV-F-08-318 OWW/DLB, based on the same allegations of fraud on the court and seeking to set aside the verdict, a new trial, a fine in the amount of $800,000.00 or of the costs incurred "for BOTH TRIALS and ANY/ALL Hearings as to same" payable to Plaintiff, fees in the amount of $25,000.00, and/or preclusion of the impeachment evidence, all against Defendant's counsel, Mr. Wainwright.**

standards governing motions to dismiss for failure to state a claim and for summary judgment, Defendant's dispositive motions. Plaintiff's evidence at trial in no way substantiated, and often contradicted, Plaintiff's claims against Defendant.  The state judge in Santa Clara warned Plaintiff about the meritless and vexatious nature of Plaintiff's claims.

C. **Amount of Award of Attorney's Fees**.

Rule 54-293, Local Rules of Practice, governs the award of attorneys' fees in the Eastern District.  Rule 54-293(b) provides in pertinent part that the motion for attorneys' fees must include an affidavit of counsel, showing, *inter alia*:

> (3) the amount of attorneys' fees sought;
>
> (4) the information pertaining to each of the criteria set forth in subsection (c) of this Rule; and
>
> (5) such other matters as are required under the statute under which the fee award is claimed.

"'In determining what a reasonable attorneys' fee entails, the district court must apply the hybrid approach adopted in *Hensley v. Eckerhart*, 461 U.S. 424, 423 ... (1983).' ... 'The most useful starting point for determining the amount of a reasonable fee is (1) the number of hours reasonably expended on the litigation (2) multiplied by a reasonable hourly rate.' ... The resulting figure is known as the 'Lodestar.'" *Wal-Mart Stores, Inc. v. City of Turlock*, 483 F.Supp.2d 1023, 1040 (E.D.Cal.2007).  Although there is a strong presumption that the lodestar represents a reasonable fee, *Burlington v. Dague*, 505

47

U.S. 557, 562 (1992), the district court has the discretion to exclude from the initial fee calculation hours that were not reasonably expended, for example, cases that are overstaffed. Furthermore, the Supreme Court in *Hensley* held:

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's <u>client</u> also are not properly billed to one's <u>adversary</u> pursuant to statutory authority.' ....

*Id.* at 434.  As explained in *Wood v. Sunn*, 865 F.2d 982, 991 (9th Cir.1988):

> Many factors previously identified by courts as probative on the issue of 'reasonableness' of a fee award, *see e.g., Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir.1975), *cert. denied*, 425 U.S. 951 ... (1976), are now subsumed within the initial calculation of the lodestar amount.  *Blum v. Stenson*, 465 U.S. 886, 898-900 ... (1984)('the novelty and complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of the representation,' and the 'results obtained' are subsumed within the lodestar); *Pennsylvania v. Delaware Valley Citizen's Council*, 478 U.S. 546 ... (1986), *rev'd after rehearing on other grounds*, 483 U.S. 711 ... (1987)(an attorney's 'superior performance' is subsumed).

*See also Clark v. City of Los Angeles*, 803 F.2d 987, 990 & n.3 (9th Cir.1986).  As the *Clark* court explained:

> [T]he Supreme Court has recognized that adjustments, both upward and downward to the lodestar amount are sometimes appropriate,

> albeit in 'rare' and 'exceptional' cases ... *Blum*, 465 U.S. at 898-901 ... The possibility of adjustments to the lodestar amount necessitates an analysis of various factors that could justify an adjustment.  In this circuit, the relevant factors were identified in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975).  Although several of these factors are now considered to be subsumed within the calculation of the lodestar figure ..., review of the *Kerr* factors remains the appropriate procedure for considering a request for a fee-award adjustment.

*Id.*  The *Kerr* factors, as modified by *Stewart v. Gates,* 987 F.2d 1450, 1453 (9th Cir.1993), are:

> (1) the time and labor required of the attorney(s);
>
> (2) the novelty and difficulty of the questions presented;
>
> (3) the skill requisite to perform the legal service properly;
>
> (4) the preclusion of other employment by the attorney(s) because of the acceptance of the action;
>
> (5) the customary fee charged in matters of the type involved;
>
> (6) any time limitations imposed by the client or the circumstances;
>
> (7) the amount of money, or the value of the rights involved, and the results obtained;
>
> (8) the experience, reputation and ability of the attorney(s);
>
> (9) the 'undesireability of the action;
>
> (10) the nature and length of the professional relationship between the attorney and the client;
>
> (12) awards in similar actions.

49

1   *Id.; see also* Rule 54-293(c), Local Rules of Practice.

2                    a.   <u>LODESTAR</u>.

3        The fee applicant bears the burden of documenting the

4   appropriate hours expended in the litigation and must submit

5   evidence in support of those hours worked.  *Hensley, supra,* 461

6   U.S. at 433, 437.  The party opposing the fee application has a

7   burden of rebuttal that requires submission of evidence to the

8   district court challenging the accuracy and reasonableness of the

9   hours charged or the facts asserted by the prevailing party in

10  its submitted affidavits.  *Blum v. Stenson*, *supra*, 465 U.S. at

11  892 n.5 (1984); *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th

12  Cir. 1987).

13                    i.   <u>Hours Expended and Supporting</u>

14  <u>Documentation</u>.

15       Daniel Wainwright has detailed the hours incurred by himself

16  and members of his law firm in defending this action.  Attached

17  to Mr. Wainwright's declaration are detailed copies of billing

18  statements with descriptions of the tasks performed, by whom, and

19  the time incurred.  The billing statements set forth numerous

20  entries of "no charge".  Mr. Wainwright avers in pertinent part:

21              11. This litigation has involved numerous
                Court hearings, numerous filings and
22              pleadings (in excess of 370 documents, and
                counting), complex legal issues, ever
23              changing factual allegations, numerous
                witnesses and a great deal of my professional
24              time. Plaintiff's behavior made the
                litigation of this matter much difficult
25              since my client consistently had numerous
                filings and Motions to respond to all of
26              which carried sensitive deadlines. This

required constant attention to this matter and excluded my acceptance of other work.

12. During the time that Plaintiff was claiming a §1981 violation and various state court claims, I filed a Motion to Dismiss and Anti-SLAPP Motion. This Motion to Dismiss was granted and Plaintiff filed the subject Complaint.

13. Thereafter, I brought a Motion for Summary Judgment. The Court deferred ruling on this Motion in order to allow Plaintiff time to conduct discovery. The Court granted portions of this Motion and allowed Plaintiff time to complete more discovery.

14. Extensive written discovery (consisting of hundreds and hundreds of request for admissions) was propounded by Plaintiff and responded to by Defendant.
15. Thereafter, I caused to be filed a Renewed Motion for Summary Judgment. In response to this Motion, Plaintiff created and invented new facts. Ultimately, the Court denied our Motion and said that this matter must be adjudicated by a jury after trial.

16. In February 2007, I took Plaintiff's deposition.

17. Thereafter, I prepared this matter for trial. This involved numerous hearings, numerous pre-trial documents and extensive time and efforts. Because of the numerous witnesses in this case, I spent a great deal of time interviewing witnesses and preparing for their trial testimony. Plaintiff even failed to attend the pre-trial document exchange conference in Modesto, as had been set forth in the Pretrial order.

...

19. All told, this firm devoted over 548 hours to this litigation. Pursuant to our Fee Agreement, my client was to pay for hourly services. This was not a contingency fee relationship.

20. From December 2005 through May 2007, I

expended 475.90 hours on behalf of Defendant
in the subject action. In December 2005 I
billed 24.3 hours at $160 per hour, or
$3,888. Once I became a partner in this firm
my billing rate increased to $195.00 an hour.
According to the bills submitted I billed
422.40 hours at $195 per hour from January
2006 through May 2007, or $82,368.00.

21. In addition, more time has been incurred
by myself and others in my office in June
2007 (through June 8, 2007). I have incurred
3 hours in June 2007 or $585.00.

22. My law clerk, Alison Laird incurred 24.8
hours of legal time at a billing rate of $120
per hour or $2,976.00 through June 8, 2007.

23. Thus, as of Friday, June 8, 2007, an
additional $3034.50 in fees have been
incurred. Again, I reserve the right to file
a supplemental Affidavit setting for the
additional fees and costs that have been and
will be incurred in handling the continued
legal issues of this case and dealing the
extremely litigious plaintiff.

24. Therefore, as of the closing of business
on Friday, June 8, 2007, the total sum of
$92,975.50 has been incurred by my client as
a direct and proximate result of my office's
legal  representation of JOHN J. HOLLENBACK,
JR., in this civil rights case.

25. Note that according to the billing
records, my paralegal, Diana Thompson,
expended 11 hours on behalf of the Defendant
in the subject action billed at $95 per hour,
therefore totaling $1,045.00.

26. Associate, Alice Dostalova, expended 3.8
hours on behalf of the Defendant in the
subject action billed at $160 per hour,
therefore totaling $608.00.

27. Associate, Kurt Wendlenner at this firm
expended 12.7 hours on behalf of the
Defendant in the subject action billed at
$160 per hour, therefore totaling $2,032.00.

28. The billing rates of $195.00 for

52

partners, $160.00 for associates and $95.00
for paralegals is extremely reasonable. Based
on my experience in the legal community most
civil rights attorneys in San Francisco and
Los Angeles bill at rates closer to $300.00
to $400.00 per hours. Even in Fresno, the
average billing rate for civil rights defense
attorneys is well above the rate that I
charged in this case. In fact, other partners
within my firm bill over $250.00 per hour for
defense of similar cases. Obviously, this was
an extremely reasonable billing rate and well
below what others would charge for similar
professional services.

29. The amount of time spent defending this
case is reasonable and appropriate. Plaintiff
is extremely litigious and has filed hundreds
and hundreds of pleadings. Plaintiff's
lawsuit has been ever changing and has
continually been morphing between December
2005 and today. Thus, I was forced to
research and investigate numerous different
claims and allegations.  At first it involved
a §1981 claim, then numerous state tort
claims were added. Each of these claims were
successfully attacked by the pleadings that I
filed in this case. Plaintiff's claim that
his December 2002 Family Law
custody/visitation Order actually was a
"contract" and falls under  §1981 was a
unique argument that had never been addressed
by this (or any other) Court. Thus, new and
persuasive arguments had to be researched and
crafted to refute these claims. Ultimately,
the Court agreed with our analysis and
dismissed any such contention.

30. Later, when Plaintiff created the
§§1985/1986 claims, new work, research and
investigation was required. Furthermore,
since Plaintiff's factual claims were ever
changing additional work was needed to
investigate his new claims after they were
invested by Plaintiff.

31. Plaintiff has called my office numerous
times. On some days I would get three or four
calls from Plaintiff and he would ramble on
for lengthy conversations. For the most part
there was absolutely no reason for Plaintiff

53

to call me other than harass, annoy and
inconvenience me, to my clients expense.

32. Because Plaintiff was representing
himself additional fees and costs were
incurred in dealing with him. Typically, when
dealing with another attorney one would
expect certain professional courtesies,
conduct, etc. Here, nothing like this
existed. Plaintiff was actively trying to do
whatever he could to cause the legal fees to
increase in this case. This resulted in
numerous filings, Motions and other actions
by Plaintiff that served no legal purpose
other than to cause the fees incurred to
increase. I was unable to rely upon any
agreement or other informal arrangement ever
reached with Plaintiff. He would continue to
change his position on requests, continually
seek favors from me, all the while working as
diligently as possible to run up the fees and
costs associated with the defense of these
bogus claims.

33. One example of this wrongful,
unprofessional and costly conduct was the
fact that Plaintiff elected to NOT attend the
Court Ordered April 19, 2007 document
exchange conference.

34. My client's professional and personal
reputation was being attacked by Plaintiff.
The type of language and conduct attributed
to my client by Plaintiff was egregious,
racist in nature and, if true, substantially
undesirable. Obviously the claims were false.
However, it was imperative to my client that
his good name be cleared and that he be
exonerated of any racist or other wrongful
conduct by a jury of his peers. My client's
livelihood was premised on the fact that he
was an honest, fair, reasonable,
knowledgeable and non-racist attorney in the
Modesto legal community. Thus, his good
reputation was imperative to defend as any
smearing by Plaintiff would result in a
substantial financial drop off.

35. Plaintiff had sought millions and
millions of dollars for the alleged damages
in both general, special and punitive

54

1    damages. Thus, if Plaintiff were successful
     then my client would have likely been
2    responsible for an extremely substantial
     monetary judgment. Obviously, since we were
3    able to successfully defend these conspiracy
     claims, I was able to obtain for my client
4    the best possible result, after trial.

5    36. I have reviewed the referenced fees and
     find them to be reasonable in light of the
6    substantial amount of time and labor required
     to litigate this matter and the customary fee
7    charged
     in matters of the type involved. Furthermore,
8    as can be seen, a great deal of time has been
     "written-off" and not billed to my client. In
9    addition, there has been numerous billing
     entries at
10   1/10th of an hour increments. These billing
     practices have actually resulted in a
11   reduction of the actual amount of legal fees
     incurred, even when the work was performed.

12
        Plaintiff requests that he be allowed limited discovery
13
under "Rule 59" because the documentation provided by Defendant
14
"appears questionable":
15
16   Specifically, the copies of checks show being
     drawn on Hollenback's _now_ dissolved LAW-FIRM
17   PARTNERSHIP, which was apparently dissolved
     at/around MAY 2007 ....

18   Also, there appears to be a copy of a check
     purportedly paid to 'defense witness Don
19   Strangio' - However said 'witness' did not
     testify at trial.

20   Plaintiff requests that the Court allow Jones
21   to review satisfactory copies of all
     cancelled checks [Front and back] to support
22   Hollenback's fee claim, and that Jones be
     allowed to review satisfactory copies of all
23   fee/cost agreements and/or arrangement
     pertaining to Hollenback's purported fees,
24   and costs.

25      Plaintiff is not referring to Mr. Wainwright's declaration
26 and attached documentation in support of the motion for

attorney's fees; rather, Plaintiff is referring to Bill of Costs submitted by Defendant on May 21, 2007 (Docs. 366 & 367).  Costs were taxed by the Clerk on June 21, 2007 (Doc. 379).  Plaintiff's own exhibit establishes that Mr. Hollenback's law firm dissolved on May 31, 2007, approximately ten days after the Bill of Costs was filed.  No check drawn on Mr. Hollenback's now dissolved law firm is dated after May 31, 2007.  The Bill of Costs does request taxation of a $40.00 subsistence fee and $38.00 charge for mileage for Donald Strangio.  The sole opposition to Defendant's motion for attorney's fees upon which Plaintiff relies, Doc. 395, was not filed until November 5, 2007.  Pursuant to Rule 54-292(c), Local Rules of Practice, specific objections to items in the Bill of Costs must be filed within 10 days from service of the Bill of Costs.  Pursuant to Rule 54-292(d), if no objections are filed, "the Clerk shall proceed to tax and enter costs."  Rule 54-292(e) provides: "On motion filed and served within five (5) court days after notice of the taxing of costs has been served, the action of the Clerk may be reviewed by the Court as provided in Fed. R. Civ. P. 54(d)."  Plaintiff did not file any objections to the Bill of Costs or move the Court to review the taxed costs within the times set forth in Rule 54-292.  Plaintiff's objections to the Bill of Costs set forth in Doc. 395 are untimely.

This constitutes Plaintiff's sole objection challenging the attorney fee documentation submitted by Defendant.  Plaintiff has not submitted any evidence challenging the accuracy and

1  reasonableness of the hours charged or the facts asserted by the
2  prevailing party in its submitted affidavits.  From the Court's
3  independent review of Mr. Wainwright's billing statements,
4  this aspect of the lodestar is established.

5          ii.  <u>Reasonable Hourly Rate</u>.

6          The reasonable hourly rate corresponds to the prevailing
7  market rate in the relevant community, considering the
8  experience, skill, and reputation of the attorney in question.
9  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th
10 Cir.1985).  The community where the court sits is the relevant
11 market for determining reasonable fees.  *Gates v. Deukmejian*, 987
12 F.2d 1392, 1405 (9th Cir.1992).  "[T]he determination of a
13 reasonable hourly rate 'is not made by reference to the rates
14 actually charged the prevailing party..'  *Welch v. Metropolitan*
15 *Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir.2007).  "Rather,
16 billing rates 'should be established by reference to the fees
17 that private attorneys of an ability and reputation comparable to
18 that of prevailing counsel charge their paying clients for legal
19 work of similar complexity.'" *Id.*

20         Plaintiff poses no objection to the hourly rates set forth
21 in Mr. Wainwright's declaration and the supporting billing
22 documents.  The hourly rates of $195, $160 and $95 are reasonable
23 in this community, given that awards based on higher hourly rates
24 ($250 - $285) for attorneys and paralegals of similar competence
25 and reputation for business litigation prevailing in this legal
26 community have been affirmed.

57

D.  <u>Plaintiff's "Special Motion to Strike"</u>.

Plaintiff characterizes Defendant's motion for attorney's fees as a SLAPP claim governed by California law.  Plaintiff reaches this conclusion by selective mis-citation of case law. Plaintiff cites *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395 (1990).  In *Cooter & Gell,* the Supreme Court held that a district court could impose Rule 11 sanctions after a plaintiff voluntarily dismissed the action.  The Supreme Court stated:

> It is well established that a federal court may consider collateral issues after an action is no longer pending ... This Court has indicated that motions for costs or attorney's fees are 'independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree.

Plaintiff then refers to *Carnes v. Zamani*, 400 F.3d 1057 (9th Cir. 2007).  *Zamani* involved a diversity action arising out of a commercial real estate transaction.  The Ninth Circuit held that a motion for attorney's fees incurred in enforcing a judgment constituted a supplementary proceeding to, and in aid of, judgment, and that California's Enforcement of Judgments Law applied to the motion in federal court in California for attorney's fees incurred in enforcing the judgment in a diversity case.  Plaintiff argues that Rule 69(a), Federal Rules of Civil Procedure, pertaining to process to enforce a judgment, requires this Court to apply California law:

> Accordingly, Pro Se Plaintiff Jones, under California state law, <u>Cal. Civ. Proc. Code Section 425.16</u> [Special Motion to Strike] - respectfully requests the Honorable District

> Court to STRIKE defendendant's [sic] post-
> judgment claim for fees and costs.
>
> Here, Hollenback (is the plaintiff), and Pro
> Se Jones (is the defendant) - as to said
> SLAPP claim (post judgment claim for
> fees/costs).
>
> Simply put, Hollenback's claim is a SLAPP,
> aimed at interfering with Jones' Legitimate
> First Amendment Rights.
>
> Therefore, the Honorable District Court must
> apply section 425.16 [California anti-SLAPP
> statute - C.C.P. S. 425.16] - as mandated by
> 42 U.S.C. S. 1988(a).

Plaintiff's contention is frivolous.  Defendant is not seeking to enforce a judgment; he is seeking an award of attorney's fees pursuant to a federal statute, 42 U.S.C. § 1988, because he prevailed against Plaintiff in federal court with regard to Plaintiff's claims of civil rights violations. California law, and specifically California Code of Civil Procedure § 425.16, has no application to Defendant's motion for attorneys' fees.

Plaintiff's Special Motion to Strike is DENIED.

E.   **Plaintiff's Counter-Motion for Sanctions Under Rule 11, Federal Rules of Civil Procedure.**

In opposing Defendant's motion for attorneys' fees, Plaintiff moves for sanctions pursuant to Rule 11, Federal Rules of Civil Procedure and/or 28 U.S.C. § 1927 and/or Rule 26, Federal Rules of Civil Procedure against defense counsel Daniel

Wainwright and/or Defendant John Hollenback.[2]

Plaintiff's scenario that Defendants violated Rule 11 is complicated.  Plaintiff contends that Defendant violated Rule 11 when Defendant characterized Plaintiff's prior criminal conviction in Case No. #E9488120 as a misdemeanor offense of forgery related to documents related to Ms. Chhay in violation of California Penal Code § 476(a).

Plaintiff refers to his Motion in Limine filed on February 7, 2007 (Doc. 295), wherein Plaintiff moved to exclude evidence pertaining to three criminal cases against Plaintiff on the ground that "[a]ll three cases were misdemeanor pleas-negotiations and all are now cleared (record clearance) pursuant to 1203.4 PC."  Plaintiff's motion listed the three cases as:

> (i) #8465500 (plea date 11-01-1984) - record clearance on or about 11/1985 ....
>
> (ii) #E9488120 (plea date 12/13/95) - record clearance on or about 12/6/1996 ....
>
> (iii) #CC066134 (plea date 8/23/2000) - record clearance on or about 2/20/2004 ....

Conviction C8465500 is described in Attachment A to this Motion in Limine as a violation of California Penal Code §§ 484-487 (generally theft of property).  Conviction #E9488120 is described in  Attachment B to this Motion in Limine as a misdemeanor violation of California Penal Code § 476A (forgery and

---

[2]Although Plaintiff withdrew the motions for sanctions set forth in Docs. 397, 400, 405 and 406, Doc. 395, the sole pleading upon which Plaintiff now relies in opposing Defendant's motion for attorneys' fees, includes a counter-motion for sanctions under Rule 11.

counterfeiting).  Conviction #CC066134 is described in Attachment

C to this Motion in Limine as a violation of California Penal

Code § 273.5(a)(infliction of corporal injury on spouse).

Plaintiff then refers to the Pretrial Statement filed on March

22, 2007 (Doc. 301) as indicating Defendant's "awareness of

Jones' DOC # 295, and also indicates the defense's knowledge of

criminal case #E9488120 involving Jones."  Specifically,

Plaintiff refers to the section of Defendant's Pretrial Statement

captioned "(11) Exhibits - Schedules and Summaries", where

Defendant states he expects to offer the following

documents/exhibits at trial: "All documents from the Santa Clara

County Judicial District involving the case of The People of the

State of California vs. Melvin Jones (Case No. E9488120)."

Plaintiff refers to Defendant's opposition to his Motion in

Limine (Doc. 295) filed on April 23, 2007 (Doc. 315).  Plaintiff

states that "the defense stated that said case #E9488120 was

connected to [involved plaintiff committing a crime against Ms.

Chhay] Domestic violence re: Ms. Chhay."  Defendant's opposition

to the Motion in Limine states:

> There are three prior misdemeanor convictions
> that may potentially be used to impeach
> plaintiff during his trial testimony.
>
> The first occurred on or about November 1,
> 1984 when he plead *nolo contendere* to charges
> that he committed theft via fraud and
> wrongfully appropriated property.  (Cal.
> Penal Code §§ 484-487.)  The second, occurred
> on December 13, 1995 when plaintiff was
> convicted of the misdemeanor offense of
> forgery related to documents related to Ms.
> Chhay. (Cal. Penal Code § 476(a).)  The third

> incident took place on August 23, 2000, when
> plaintiff was convicted of the misdemeanor
> offense of willfully inflicting onto the
> mother (Ms. Chhay) of his, [sic] corporal
> injury resulting in a traumatic condition.
> (Cal. Penal Code § 273.5(a).)

Plaintiff asserts that, during the hearing on the parties'

motions in limine conducted on May 1, 2007:

> [D]efense counsel repeated/ [sic] (defended
> Jones' motion by making) statement to Court
> that Case #E9488120, was a conviction as to
> fraud upon Ms. Chhay ... [T]he District Court
> relied upon defense counsel's representations
> as to CASE #E9488120.  The District Court
> indicated that because Case #E948812, and
> case # CC066134 involve Domestic violence
> (pattern) - that both cases would be
> admissible.  Defense counsel reassured the
> Court that Case #E9488120 involved Plaintiff
> committing Fraud against Ms. Chhay.

Plaintiff then refers to the "Order of the Court Regarding the

Parties' Motions *In Limine*" filed on May 8, 2007 (Doc. 352):

> 1.  The Court GRANTS plaintiff's Motion
> regarding the exclusion of evidence of
> plaintiff's November 1, 1984 Cal. Penal Code
> §§ 488-487 conviction.
>
> 2.  The Court DENIES plaintiff's Motion
> regarding the exclusion of evidence
> pertaining to plaintiff's December 13, 1995
> fraud conviction pursuant to Cal. Penal Code
> § 476(a).  The dismissal shall be attached.
>
> 3.  The Court DENIES, in part, plaintiff's
> Motion regarding the exclusion of evidence
> pertaining to the domestic violence
> conviction of plaintiff, for the purpose of
> establishing a possible bias on the part of
> plaintiff and the victim of said domestic
> violence, Kea Chhay.  The dismissal shall be
> attached.

Plaintiff then asserts that, during the October 29, 2007 hearing

on Plaintiff's Motion for a New Trial:

62

1
2
3
4
5

                  **Relying upon Defense Counsel's previous representation as to CASE #E9488120 being Fraud against Ms. Chhay (Domestic Violence) as to 'forging a check of Ms. Chhay - as defense counsel has represented to the District Court - the district court verbally referenced said representation by defense counsel - relying upon said representation to be true [WHICH IS NOT TRUE].**

6   **Plaintiff** argues that his conviction in Case #E9488120 did

7   not involve Ms. Chhay but "involved a business dispute with an

8   automobile dealer in Sunnyvale, CA. [Larry Hopkins]." Plaintiff

9   submits documentary evidence substantiating this fact.

10   **Defendant** opposes Plaintiff's requests for sanctions,

11   contending they "are not based on fact, law or other evidence."

12   Defendant contends that these motions "are nothing more than

13   Plaintiff's continued claims that he was somehow wronged or

14   harmed during the three day jury trial [and] that the Motions are

15   nothing more than renewed arguments and claims that Plaintiff is

16   entitled to a new trial." Defendant asserts that the Court has

17   summarily rejected Plaintiff's claims in denying his motion for a

18   new trial.

19   In the Memorandum Decision and Order Denying Plaintiff's

20   Motion for New Trial filed on November 9, 2007 (Doc. 398),

21   Plaintiff's claim was rejected that he was entitled to a new

22   trial because of defense misconduct that "'defense counsel

23   attempted to use the trust of the Court during the final

24   evidentiary hearing(s) PRIOR TO TRIAL ... [by] FLAT OUT LIED to

25   the Court verbally and in written pleading regarding Jones' "no

26   contest" plea in 1994 [sic] - [which was subsequently dismissed

1   in 1995 pursuant to CA Statute] - the FLAT OUT LIE was that said

2   misdemeanor plea was related to defense witness, Ms. Chhay, which

3   is unequivocally a TOTAL LIE.'" In rejecting Plaintiff's claim

4   for a new trial on this ground, the Court ruled:

> The Court will not consider grounds for a new
> trial not raised in the initial papers in
> support of the motion.  Further, a new trial
> may only be granted when discovery misconduct
> is alleged and the movant can: (1) prove by
> clear and convincing evidence that the
> verdict was obtained through fraud,
> misrepresentation, or other misconduct; and
> (2) establish that the conduct complained of
> prevented the losing party from fully and
> fairly presenting his case or defense.  *Wharf
> v. Burlington Northern R. Co.*, 60 F.3d 631,
> 637 (9th Cir.1995); *Jones v. Aero/Chem Corp.*,
> 921 F.2d 875, 878-879 (9th Cir.1990).  The
> examples asserted by Plaintiff do not raise
> any issues that impacted the trial.
> Plaintiff has not made the showing required
> to obtain a new trial based on alleged
> discovery abuse.

15  (Doc. 398, p. 14:12-24).  The Court also rejected Plaintiff's

16  claim he was entitled to a new trial because of judicial error in

17  Jury Instruction No. 6:

> Jury Instruction No. 6 states:
>
> > The evidence that plaintiff has
> > been convicted of the crime of
> > fraudulently passing a bad check
> > may be considered only as it may
> > affect the believability of
> > plaintiff as a witness and for no
> > other purpose.
> >
> > The evidence that plaintiff has
> > been convicted of the crime of
> > domestic violence may be considered
> > only as it may affect the motive or
> > the bias of plaintiff and the
> > victim, Ms. Chhay, as it bears on
> > their believability and for no

other purpose.

Plaintiff filed motions in limine to exclude evidence of these two convictions.  In the Order resolving the motions in limine (Doc. 352), the Court ruled in pertinent part:

> 2.  The Court DENIES plaintiff's Motion regarding the exclusion of evidence pertaining to plaintiff's December 13, 1995 fraud conviction pursuant to Cal. Penal Code § 476(a).  The dismissal shall be attached.
>
> 3.  The Court DENIES, in part, plaintiff's Motion regarding the exclusion of evidence pertaining to the domestic violence conviction of plaintiff, for purpose of establishing possible bias on the part of plaintiff and the victim of said domestic violence, Kea Chhay.  The dismissal shall be attached.

Plaintiff argues that "because this information was not set forth with the FACT that both 'convictions' have been dismissed per CA law [it] is fundamentally unjust to Pro Se Plaintiff, as the Jury would be confused re: Plaintiff's direct testimony re: dismissal."  Plaintiff further asserts that Jury Instruction No. 6, when combined with Jury Instruction No. 7 (Witness Materially False), "have the force and effect of a DIRECTING A VERDICT, As Jury Instruction # 6 ... is contrary to the Courts Order on MIL, and Plaintiff's testimony as TO THE SAME."  Plaintiff contends that his 1995 fraud conviction by plea of no contest, "which has been withdrawn/dismissed per California statute, should not, and is not admissible Due to an unrebutted Presumption of Rehabilitation due to No conviction since of a crime of dishonesty/FRAUD."  Plaintiff argues that "defendant has provided NO evidence prior or during 1st trial of Plaintiff's presumption of Rehabilitation - being disproven."  Plaintiff makes similar arguments with regard to his domestic violence conviction.

65

Plaintiff is not entitled to a new trial on this ground.  As Defendant avers in his Declaration in opposition to the motion for new trial:

37.  At trial, Plaintiff chose to introduce evidence of his prior convictions for check fraud and battery against a spouse or domestic partner.  He also introduced evidence, through his testimony, that following successful completion of probation, he had been permitted to withdraw his 'nolo contendere' pleas to these charges and to enter 'not guilty' pleas with the charges being dismissed.  Plaintiff choose [sic] *not* to introduce any documentary evidence of his change of pleas.  Furthermore, it should be noted that the defense never introduced any documents regarding the convictions in the first place.

38.  Plaintiff, not the defense, raised these matters during Jury *voir dire*, in his Opening Statement, in his case-in-chief and again in his closing statements.

39.  The jury was properly instructed by this Court that it could consider the 'domestic violence' charge as possibly diminishing the credibility of Kea Chhay, since it gave her a motive for testifying against Plaintiff and vice versa.  As to the fraudulent check charge, the jury [was] properly instructed that Plaintiff being convicted of a crime involving moral turpitude could be considered as adversely affecting Plaintiff's credibility.  There had never been a factual finding of innocence on the part of Plaintiff with respect to either of his criminal convictions, notwithstanding the fact that he had been permitted to withdraw his

'nolo contendere' pleas upon
completion of his probation in each
instance.  More important,
Plaintiff did not deny committing
the underlying criminal acts
particularly the fraudulent check
offense in his testimony at trial.

Plaintiff himself introduced the subject of
his prior convictions; it was up to him
introduce the documents demonstrating that
these convictions had been dismissed.
Plaintiff's claimed errors were invited by
his introduction of these subjects without
presenting any documentary evidence of the
dismissal of these convictions.  Instruction
No. 2 [sic] correctly stated the law.

(Doc. 398, 19:19-22:7).

For purposes of this Memorandum Decision, the Court accepts

Plaintiff's assertions that Defendant stated to the Court that

Case #E9488120 involved Plaintiff's forgery relating to Ms.

Chhay.  Plaintiff does not represent and the Court has no

recollection that Plaintiff ever advised Defendant or the Court

that Case #E9488120 did not involve forgery relating to Ms. Chhay

during pretrial proceedings or the trial itself.  It was not

until August 28, 2007, when Plaintiff filed his "Objections and

Requests as to Pending Motion for Fees and Motion for New Trial"

filed on August 28, 2007 (Doc. 383), a pleading deemed by the

Court to be Plaintiff's reply brief in support of his motion for

a new trial, that Plaintiff contended that this conviction did

not involve Ms. Chhay.  Any misrepresentation to the Court was

caused by Plaintiff's lack of candor concerning the actual facts

underlying this prior conviction.  Plaintiff essentially laid in

the weeds to ambush the verdict against him based on information

67

of which he was aware from Day One.  There is no basis for imposition of sanctions against Defendant on this ground and certainly no basis to deny the motion for attorney's fees on this ground.  The error, if it be such, is nonetheless harmless as the forgery conviction, a crime adversely reflecting on truth-telling ability, was independently admissible.

Plaintiff's Counter-Motion for Sanctions Under Rule 11, Federal Rules of Civil Procedure is DENIED.

F.  **Plaintiff's Grounds for Denial of Motion for Attorney's Fees**.

Plaintiff asserts a number of grounds in opposition to Defendant's motion for attorney's fees.

1.  **Jury Trial**.

Plaintiff argues that Defendant's motion for attorney's fees is "defective" because the fee claim was not tried to the jury during trial.

Plaintiff's contention is without merit.  "It is the trial court, not the jury, that has the responsibility of determining attorney's fees awards pursuant to statute." *Bingham v. Zolt*, 66 F.3d 553, 565 (2nd Cir.1995), *cert. denied*, 517 U.S. 1134 (1996); *see also Gagne v. Town of Enfield*, 734 F.2d 902, 904 (2nd Cir.1984).

2.  **Common Nucleus of Operative Fact**.

Plaintiff argues that Defendant's motion is "defective" because the motion for attorney's fees does not arise from a common nucleus of operative fact with any of the claims tried to

68

the jury.

The cases relied upon by Plaintiff do not stand for this proposition. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966), involved pendent jurisdiction over a state law claim coupled with a federal claim:

> The federal claim must have substance sufficient to confer subject matter jurisdiction on the court ... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal ro state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.

In *Maher v. Gagne*, 448 U.S. 122 (1980), the Supreme Court ruled that Section 1988 applies to all civil rights actions, including actions based solely on Social Security Act violations; that the fact the recipient prevailed through a settlement rather than litigation did not preclude a claim for attorney's fees as the prevailing party; and, where the recipient alleged constitutional violations which were sufficiently substantial to support federal jurisdiction, and the constitutional claims remained in the case until the consent decree was entered, the award of attorney's fees was not barred by the Eleventh Amendment. In *Gerling Global Reinsurance Corp. of America v. Garamendi,* 400 F.3d 803, *opinion amended on denial of rehearing*, 410 F.3d 531 (9th Cir.), *cert. denied*, 546 U.S. 978 (2005), the Ninth Circuit held that insurance companies and a trade organization of insurance

companies doing business in California who sued the California
Commissioner of Insurance for declaratory and injunctive relief
to bar enforcement of the Holocaust Victim Insurance Relief Act,
were prevailing parties under Section 1988 due to having obtained
injunctive relief.

None of these cases stand for the proposition that a motion
for attorney's fees under Section 1988 must be denied merely
because the issues involving an award of Section 1988 fees do not
arise out of the same facts tried to the jury.  If that were the
case, no award of attorney's fees under Section 1988 could be
considered by the district court.  This is not the law.

3.   <u>Plaintiff "Prevailing Party"</u>.

Plaintiff further argues that "technically" he can be viewed
as "ostensibly the prevailing party".  Plaintiff cites *Hensley v.
Eckerhart,* 461 U.S. 424, 433 (1983):

> A plaintiff must be a 'prevailing party' to
> recover an attorney's fee under § 1988.  The
> standard for making this threshold
> determination has been framed in various
> ways.  A typical formulation is that
> 'plaintiffs may be considered "prevailing
> parties" for attorney's fees purposes if they
> succeed on any significant issue in
> litigation which achieves some of the benefit
> the parties sought in brining suit.'

Plaintiff asserts that "Hollenback testified at trial that
Jones' letter(s) to his law partner(s) as potential 'trouble' as
to the same, (i.e. law partners not happy with Hollenback's
conduct as set forth by Jones in said correspondence)."
Plaintiff submits as Exhibit L to Doc. 395 a copy of a formal

70

printed notice advising that the Law Firm of Jones, Cochrane,
Hollenback, Nelson & Zumwalt, LLP will be dissolving its
partnership on May 31, 2007.  Plaintiff contends:

> Plaintiff's Exhibit 'L' ... evidencing
> dissolution of Hollenbeck's [now previous]
> law firm partnership - significantly changes
> the legal relationship/behavior of Hollenback
> - which directly benefits Jones.  Also, very
> telling as to this issue is NONE of
> Hollenback's law partners [previous]
> testified on his behalf.
>
> ALSO, AT TRIAL THE IDENTITY OF A MAJOR-PLAYER
> ACTING AGAINST JONES AS TO HIS CIVIL RIGHTS
> (CHHAY'S SUPERVISOR) - LUCAS WAS FINALLY
> FLUSHED OUT, WHICH IS A GOAL SOUGHT BY JONES
> IN BRINGING HIS CIVIL RIGHTS ACTION.

Plaintiff's contention is utterly baseless and verges on
outrageous.  In *Hewitt v. Helms*, 482 U.S. 755, 759-760, 764
(1987), a case surprisingly cited by Plaintiff, the Supreme Court
held:

> In order to be eligible for attorney's fees
> under § 1988, a litigant must be a
> 'prevailing party.' ... Respect for ordinary
> language requires that a plaintiff receive at
> least some relief on the merits of his claim
> before he can be said to prevail ... Helms
> obtained no relief.  Because of the
> defendants' official immunity he received no
> damages award.  No injunction or declaratory
> judgment was entered in his favor.  Nor did
> Helms obtain relief without benefit of a
> formal judgment - for example, through a
> consent decree or settlement ... The most
> that he obtained was an interlocutory ruling
> that his complaint should not have been
> dismissed for failure to state a
> constitutional claim.  That is not the stuff
> of which legal victories are made.

Plaintiff was in no way a "prevailing party" in this action.  The
jury rejected his claims and returned a defense verdict for

71

Defendant.

Plaintiff argues that Defendant "has **waived** proper assertion of prevailing party rule."  Plaintiff contends that "Hollenback's fee motion (claim) is frivolous, lacks merit, and is baseless - further it has no foundation in law or fact."  Plaintiff asserts that "said conduct by defendant [frivolous filing] can be considered constructive waiver of the defendant's assertion (timely) of the prevailing party rule."

Again, Plaintiff's contention is unfounded.  Defendant timely filed a motion for attorney's fees pursuant to Section 1988, which expressly authorizes recovery of attorney's fees by a defendant upon the requisite showing.  The merits of Defendant's motion are at issue and have been determined by the Court.

4.  **Indigent Plaintiff**.

Plaintiff argues that Defendant's motion for attorney's fees "places undue burden upon Pro Se Plaintiff Jones (including undue cost) to indigent Pro Se Civil Rights Plaintiff Jones)."

"Although the district court should consider the plaintiff's ability to pay ..., a district court should not refuse to award attorney's fees solely on the ground of the plaintiff's financial situation." *Zimmerman v. Bishop Estate*, 25 F.3d 784, 790 (9th Cir.), *cert. denied,* 513 U.S. 1043 (1994), *citing Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 621 n.5 (9th Cir.1987).  "While an award of attorney's fees for a frivolous lawsuit may be necessary to fulfill the deterrent purposes of 42 U.S.C. § 1988 ..., the award should not subject the plaintiff to

72

financial ruin." *Miller*, *id.*  "We have never and do not now require a separate hearing on the question of ability to pay ... [but] a district court should consider the financial resources of the plaintiff in determining the amount of attorney's fees to award to a prevailing defendant in a § 1983 action." *Patton v. County of Kings*, 857 F.2d 1379, 1382 (9th Cir.1988).[3]

In opposing Defendant's motion for attorneys' fees, Plaintiff presented no evidence by way of declaration or other documentary evidence establishing his inability to pay any amount of attorney's fees.  However, in support of his motion for transcripts at government expense filed on November 28, 2007 (Doc. 401), Plaintiff submitted an affidavit under penalty of perjury:

> I <u>do not</u> have enough money or other assets to pay the pending Appeal FEES ($455.00) I have NO CAR, NO SAVINGS; I own NO real estate, or any other asset(s) for that matter.  I also am currently unemployed, and have no other monthly income by which to pay said FEES.

An award of $92,975.50 is substantial and Plaintiff has

---

[3]In *Kulas v. Arizona*, 156 Fed.Appx. 29 (9th Cir.2005), the Ninth Circuit affirmed an award of attorney's fees against a pro se plaintiff:

> The district court also properly considered Kulas' financial resources ..., finding that Kulas' 'lack of resources has not deterred [him] in the least.'  The district court further found that 'any "financial ruin" which may potentially befall [Kulas] is due to frivolous suits such as this, a situation entirely of [Kulas'] own making.  Thus, the district court was within its discretion in deciding to award attorney's fees to Arizona.

limited means.  An award of the total amount of attorney's fees sought by Defendant could lead to Plaintiff's financial ruin. However, Plaintiff himself requested sanctions against Defendant for his costs, which he estimated to range from $1,000.00 to $25,000.00.  Assuming the truth of Plaintiff's estimation of the expenses he paid in litigating this action, his protestations of present indigency ring hollow and clearly were caused, as in *Kulas*, by Plaintiff's compulsive penchant for continuously filing and litigating frivolous and vexations claims in more than one lawsuit.  An award of attorney's fees under Section 1988 in this action is necessary to fulfill the deterrent purposes of Section 1988.  There must be an end to this litigation.  It appears nothing else will influence Plaintiff as he continues raising meritless claims, undeterred by any court ruling.

<u>CONCLUSION</u>

For the reasons stated above:

1.  Documents No. 380, 384, 386, 387, 388, 397, 400, 405, and 406 are STRICKEN;

2.  Plaintiff's motions for sanctions (Docs. 397, 400, 405 and 406) are DENIED AS MOOT;

3.  Plaintiff's "Special Motion to Strike" is DENIED;

4.  Plaintiff's Counter-Motion for Sanctions under Rule 11, Federal Rules of Civil Procedure is DENIED;

5.  Defendant's motion for attorney's fees pursuant to 42 U.S.C. § 1988 is GRANTED and Defendant is awarded attorney's fees in the amount of $30,000.00.

**6.  Defendant's counsel shall prepare and lodge a form of order reciting the rulings set forth in this Memorandum Decision within five (5) days following the date of service of this decision.**

IT IS SO ORDERED.

**Dated:   March 18, 2008** _____  /s/ Oliver W. Wanger
UNITED STATES DISTRICT JUDGE

75